UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

3COM CORPORATION,

        Plaintiff,

-against-

CAPITAL 4, INC., F. DAVIS DAWSON, and ISH VILLA-LOBOS,

        Defendants.

Civ. No.

DECLARATION OF DEAN M. WHITEHOUSE IN SUPPORT OF 3COM CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Dean M. Whitehouse, declare under penalty of perjury that the following is true and correct:

1. I am Senior Counsel for 3Com Corporation.

2. I have held that position since May 2005.

3. Except as otherwise noted, I have personal knowledge of the facts stated herein.

4. 3Com owns Registration No. 2,541,487. A true and correct copy of this registration is attached hereto as Exhibit 1.

5. 3Com owns Registration No. 2,486,291. A true and correct copy of this registration is attached hereto as Exhibit 2.

6. 3Com owns Registration No. 2,364,947. A true and correct copy of this registration is attached hereto as Exhibit 3.

7. 3Com owns Registration No. 3,240,781. A true and correct copy of this registration is attached hereto as Exhibit 4.

8. On or about November 10, 2006, Capital 4 and 3Com entered into a License Agreement and an Operations Agreement, true and correct copies of which are attached hereto as Exhibits 5 and 6 respectively.

9. The License Agreement gave 3Com the right to "use, exploit, and commercialize" the Power of $Zero in return for a licensing fee paid to Capital 4. The License and Operations Agreements contemplated that 3Com would begin selling Public Access Services and network and telecommunications equipment directly to its customers through its network of 3Com VARs using its own Power of $Zero program. For these sales, 3Com, rather than Capital 4, would enter into an agreement with a customer to provide the Public Access Services and equipment for a fixed monthly fee (the "3Com POZ Customer Agreements"). See Lic. Agmt. § 2.1, attached as Exhibit 5.

10. Pursuant to the terms of the Operations Agreement, Capital 4 was to provide 3Com with certain services related to the processing, arranging, and payment for Public Access Services to be provided under the new 3Com POZ Customer Agreements (the "Back Office Services"). The Operations Agreement provided for the transition of these Back Office Services from Capital 4 to 3Com over a period of time (the "Transition Period"). It further contemplated that the Transition Period would end on a certain date (the "Cut Date"), after which 3Com would provide its own Back Office Services. Finally, it contemplated that Capital 4 could sell the 3Com Power of $Zero program for 3Com as a 3Com VAR, but only with 3Com's approval of each transaction. For 3Com Power of $Zero transactions in which Capital 4 acted as a 3Com VAR that were entered into during the Transition Period, Capital 4 agreed to provide Back Office Services for the life of the agreement, not merely during the Transition Period. See Op. Agmt. §§ 2.3, 2.4, 2.5, attached as Exhibit 6.

11. When 3Com began entering into 3Com POZ Customer Agreements with customers those agreements were executed on paper branded with the 3Com name and logo ("3Com Paper"), as contemplated by the License Agreement and Operations Agreement. See Lic. Agmt. §§ 3.1, 3.3.3, attached as Exhibit 5. The License and Operations Agreements also provided for branding of other 3Com Power of $Zero documentation and materials with 3Com's name and trademark. See Lic. Agmt. §§ 3.1, 3.3.3, attached as Exhibit 5.

12. The License Agreement and Operations Agreement prohibited Capital 4 from using 3Com trademarks and logos except as required to effect its responsibilities under the License Agreement, and only with 3Com's express written consent. See Lic. Agmt. §§ 3.1, 3.3.3, attached as Exhibit 5. See Op. Agmt. § 2.5.4, attached as Exhibit 6.

13. Subsequently, the License and Operations Agreements were amended by the First Contract Addendum to the License Agreement and Operation Agreement, executed April 1, 2007 ("First Contract Addendum"), a true and correct copy of which is attached as Exhibit 7.

14. The parties subsequently executed Amendment No. 1 to the First Contract Addendum on May 8, 2007, a true and correct copy of which is attached as Exhibit 8.

15. In or about late July, 2007, 3Com learned that Capital 4 was seriously delinquent on many of its outstanding payment obligations to third party Public Access Services providers. 3Com made this alarming discovery when it began receiving reports from 3Com VARs who stated that they had received inquiries from Power of $Zero customers who had been warned by their Public Access Service providers that they were in danger of having their service terminated due to non-payment.

16. Only when 3Com inquired about the delinquencies and the threatened loss of service to numerous Power of $Zero customers did Capital 4 confirm its dire financial condition and its inability to fulfill its obligations to pay for Public Access Services for its own POZ customers, as well as for 3Com POZ customers for whom Capital 4 was providing Back Office Services.

17. Upon acknowledging its financial crisis, Capital 4 sought an immediate infusion of cash to meet its daily obligations, which included payments to Public Access Service providers to prevent them from shutting off customers' Public Access Services. Capital 4 initially requested over $200,000 to cover two days worth of expenses. As of August 7, 2007, 3Com had loaned Capital 4 $204,690.87 pursuant to a promissory note signed by Capital 4. A true and correct copy of the Promissory Note is attached as Exhibit 9.

18. Capital 4 had failed to provide 3Com with timely notice that Capital 4 had become insolvent as required by the Operations Agreement § 4.2.

19. On or about August 7, 2007, the parties executed the First Contract Amendment, a true and correct copy of which is attached as Exhibit 10. The First Contract Amendment amended the Operations Agreement by deleting and replacing sections 4.3 and 4.4 of the Operations Agreement.

20. Thereafter, Capital 4 requested additional infusions of cash on an almost daily basis in order to meet its daily financial obligations, which included paying Public Access Service providers immediately in order to prevent them from shutting off customers' services. 3Com made additional cash loans to Capital 4 under promissory notes on the following dates in the following amounts:

August 8, 2007         $62,495.42

| | |
|---|---|
| August 10, 2007 | $133,546.27 |
| August 14, 2007 | $35,096.54 |
| August 15, 2007 | $63,893.02 |
| August 16, 2007 | $40,848.57 |
| August 16, 2007 | $59,429.31 |

True and correct copies of the promissory notes are attached collectively as Exhibits 11 - 16.

21. Thereafter, despite 3Com's infusion of $600,000 into Capital 4 under promissory notes, as well as $5,000,000 in prepaid royalties, Capital 4 remained unable to meet its ongoing obligations under the POZ Customer Agreements and failed to make payments owed to Public Access Service providers. Capital 4 has failed to pay for Public Access Services for 3Com POZ customers for which Capital 4 acted as a 3Com VAR and for 3Com POZ Customers for which Capital 4 was providing "Back Office Services."

22. Numerous Power of $Zero customers were being threatened with shut off of their Public Access Services.

23. Based on Capital 4's admitted financial crisis, its failure to meet its obligations to customers and to 3Com to pay for Public Access Services, and the consequent likelihood of a Material Adverse Effect on 3Com, 3Com POZ Customers, and the Power of $Zero program, on or about August 20, 2007, 3Com invoked the "Go Dark" provision of the Operations Agreement as amended by the First Contract Amendment, and demanded that Capital 4 immediately comply with the provisions thereof. See First Contract Amendment § 4.3, "Go Dark" Solution, attached as Exhibit 10.

24. Capital 4 did not dispute the appropriateness of 3Com's invoking the "Go Dark" provision.

25. Despite Capital 4's agreement to proceed under the "Go Dark" provision and the express requirements of that provision, Capital 4 has failed to provide 3Com with information it has requested which is essential to allow 3Com to evaluate the problem and determine whether it wants to exercise its right to take assignment of certain agreements under the parties' agreements. See First Contract Amendment § 4.3, "Go Dark" Solution, attached as Exhibit 10. The necessary information includes agreements with customers, Public Access Service providers, and Lenders for the accounts on which Capital 4 is delinquent.

26. Subsequent to invoking the "Go Dark" provision, 3Com learned that Capital 4 had, without 3Com's knowledge, consent or approval of the transactions, entered additional agreements with new Power of $Zero customers on 3Com Paper bearing the heading "3Com Power of $Zero Customer Agreement" (the "Unauthorized Agreements").

27. Specifically, as identified in the Declaration of Glenn Ewing 3Com has become aware of the following Unauthorized Agreements which were entered into by Capital 4 on 3Com Paper without 3Com's approval:

    (a) An April 26, 2007 agreement with Arkay Packaging Corporation, a true and correct copy of which is attached as Exhibit 17;

    (b) A February 20, 2007 agreement with Individual Assurance Co., d/b/a Life, Health & Accident, a true and correct copy of which is attached as Exhibit 18;

    (c) A June 20, 2007 agreement with Words Mail Service of Texas, a true and correct copy of which is attached as Exhibit 19;

    (d) A March 6, 2007 agreement with USA Brokerage, Inc., a true and correct copy of which is attached as Exhibit 20;

    (e) A June 28, 2007 agreement with Lord of the Streets Episcopal Church, a true and correct copy of which is attached as Exhibit 21;

    (f) A November 30, 2007 agreement with Tara Energy, a true and correct copy of which is attached as Exhibit 22;

(g)  A February 9, 2007 agreement with West Georgia Family Medicine, a true and correct copy of which is attached as Exhibit 23;

(h)  A February 27, 2007 agreement with Lake Windcrest Golf, a true and correct copy of which is attached as Exhibit 24;

(i)  A March 27, 2007 agreement with Absolute Best Care Home Health, a true and correct copy of which is attached as Exhibit 25;

(j)  A March 2, 2007 agreement with Southern Patio, a true and correct copy of which is attached as Exhibit 26;

(k)  A February 21, 2007 agreement with Greater Birmingham Association of Builders, a true and correct copy of which is attached as Exhibit 27;

(l)  A March 8, 2007 agreement with Hawkeye Insurance, a true and correct copy of which is attached as Exhibit 28;

(m)  A February 27, 2007 agreement with Drake Interiors, a true and correct copy of which is attached as Exhibit 29;

(n)  A March 1, 2007 agreement with KCOH Radio CP4INF0123, a true and correct copy of which is attached as Exhibit 30.

28.  3Com further learned that Capital 4 had also entered into POZ agreements with customers in which Capital 4 executed agreements on its own behalf using 3Com's logos and trademarks (the "Misbranded Agreements"). Such agreements had not been disclosed to 3Com and 3Com had never authorized the use of 3Com's logos and trademarks in this manner for deals to which 3Com was not even purported to be a party.

29.  Some customers who entered into Unauthorized Agreements have contacted 3Com to complain that they have been informed that their Public Access Services are going to be terminated due to non-payment. See, e.g., September 28, 2007 e-mail from J. Tipton to R. Ardolino et al., a true and correct copy of which is attached as Exhibit 31.

30.  Some customers who entered into Misbranded Agreements have been confused by the use of 3Com's logos and trademarks, leading them to believe that 3Com was the

contracting party, and have complained that they have been informed that their Public Access Services are going to be terminated due to non-payment.

31.     Upon learning of the existence of Unauthorized and Misbranded Agreements, 3Com immediately requested that Capital 4 provide it with detailed information identifying all customers with whom it had entered into Unauthorized Agreements, including providing copies of the Unauthorized Agreements and all related agreements with Public Access Service Providers and Lenders.

32.     Despite the fact that 3Com is not liable for the Public Access Services promised by Capital 4 under any Unauthorized Agreements (nor under any Misbranded Agreements), 3Com desires to avoid situations in which customers who signed Unauthorized Agreements lose Public Access Services and suffer consequent interruption of and irreparable damage to their businesses.

33.     Capital 4 failed and refused to cooperate with 3Com in promptly providing information necessary to evaluate the extent of the problem, identify the customers, Public Access Service Providers, and Lenders involved, and work with the various entities to avert the looming crisis occasioned by Capital 4's failure to meet its obligations under the parties' agreements.

34.     Instead of working to solve the problem, Capital 4 has repeatedly delayed providing information to 3Com and continually demanded that 3Com provide Capital 4 with large infusions of cash to enable it to pay the delinquent amounts due to Public Access service providers.

35.     The information Capital 4 has provided to 3Com is incomplete, delinquent and sometimes inaccurate.

36.    In addition to refusing to cooperate with 3Com to address and resolve the crisis facing Power of $Zero customers whose Public Access Services were to be (or had been) shut off, Capital 4 sought instead to stonewall while simultaneously publicly blaming 3Com for Capital 4's own financial downfall.

37.    On or about September 18, 2007, Capital 4 transmitted a letter to all 3Com Value Added Resellers, setting forth an inaccurate history of the dealings between Capital 4 and 3Com and falsely stating that:

(1)    "3Com claimed it had not invoked the Go Dark"

(2)    "3Com abandoned its customers and VARs…"

(3)    "[a]pparently 3Com wanted to force Capital 4 into bankruptcy, and was surprised when Capital 4 did not file…"

(4)    3Com was "denying its contractual obligations" and that "3Com has done absolutely nothing...to remedy the situation."

A true and correct copy of the September 18, 2007 letter is attached as Exhibit 32.

38.    Capital 4 did not seek, and did not receive, 3Com's written or other consent prior to making the false disclosures concerning the contractual relationship between the parties.

39.    On or about September 25, 2007, Capital 4 sent a document entitled "Important Notice" to customers. A true and correct copy of the September 25, 2007 "Important Notice" is attached as Exhibit 33.

40.    In the "Important Notice," Capital 4 admits it can no longer meet its financial obligations, but asserts that such failure is 3Com's fault and falsely claims that 3Com's refusal to bail out Capital 4 constitutes a breach of the parties' agreements. Id.

41.    Capital 4 continues to assert that it is unable to pay for Public Access Services for POZ customers.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of October, 2007.

*[signature]*

Dean M. Whitehouse

BOS-1129594 v1