**EXHIBIT 7**

## First Contract Addendum to the License Agreement and Operation Agreement

Capital 4, Inc. ("Capital 4") and 3Com Corporation ("3Com")[1] herby enter this First Contract Addendum (the "First Addendum") concerning their respective rights, duties, and obligations under the following agreements:

Operations Agreement dated November 10, 2006 between Capital 4 and 3Com ("Operations Agreement"); and

License Agreement dated November 10, 2006 between Capital 4 and 3Com ("License Agreement").

### Agreements

For and inconsideration of the mutual promises and consideration given and received, as states herein, the Parties agree as follows:

**1.0  Actual Cut Date Definition**

1.1  The definition of Actual Cut Date, as set forth in Section 1.17 of the Operations Agreement, is deleted in its entirety and replaced with the following:

> The Actual Cut Date is the Effective Date of this First Addendum.

1.2  The Effective Date of this First Addendum is April 1, 2007.

**2.0  Funding Program Requirement**

2.1  The 3Com/Huntington Financial Services Program Agreement satisfies the requirements of the License Agreement as a Short Term and Long-Term Funding Program.

2.2  Capital 4 and 3Com shall continue to seek additional world-class lenders with sales-oriented, automated processes, to continue building upon the Long-Term Funding Program.

**3.0  Satisfaction of Billing, Collection, and Disbursement Requirements**

3.1  Capital 4 acknowledges that 3Com shall assume all obligations relating to the billing, collection, and disbursement of Monetized Funds as of the Actual Cut Date.

3.2  Beginning on the Actual Cut Date, 3Com shall assume, either internally or outsourced to any other vendor of its choosing, the billing, collection, and disbursement of Monetized Fund responsibilities.

---

[1] The defined terms in the Operations Agreement and the License Agreement are used throughout this First Addendum.

*First Contract Addendum - Page 1 of 6*

**4.0 Pre-Funding Facility and Operational Plan**

4.1 3Com shall execute a mutually agreeable (as between 3Com and Huntington Financial Services) Pre-Funding Addendum to the 3Com/Huntington Financial Services Program Agreement, providing 3Com with a mechanism to draw funds on behalf of Capital 4 against any transaction/project (all as further set forth below). A copy of the Pre-Funding Addendum currently being negotiated is attached as Exhibit A.

4.2 The Pre-Funding Addendum applies to any transaction/project signed on a 3Com CSA, and provides for an advance on funds (the "Pre-Funding Advance") for each available transaction/project.

4.3 In consideration for the following agreements from Capital 4, 3Com shall allow Capital 4 to utilize the Pre-Funding Addendum, through 3Com, in order to obtain a Pre-Funding Advance, which shall be distributed from Huntington Financial Services to 3Com and subsequently transferred to Capital 4 as agreed between Capital 4 and 3Com.

<u>4.3.1 For each 3Com CSA executed prior to the Actual Cut Date that is also submitted under the 3Com/Huntington Financial Services Program Agreement (a complete list of which is set forth in Exhibit B attached hereto and incorporated herein):</u>

4.3.1.1 Capital 4 shall absorb all fees, including interim rent or interest expense, associated with the Pre-Funding Advance for each transaction/project for which an advance is requested. Pursuant to this First Addendum with each Pre-Funding Advance requested by Capital 4, 3Com shall retain a portion of the Pre-Funding Advance to account for repayment of the interim rent or interest expense.

4.3.1.2 In the event of default on the Pre-Funding Requirements, in order to satisfy the customer's final acceptance of the transaction/project, Capital 4 shall be unconditionally liable to 3Com for any Pre-Funding Advance received (including interim rent or interest expense), and 3Com shall be entitled to offset any amounts Pre-Funded to Capital 4 against any amounts due Capital 4, including without limitation, any subsequent License Fee, in the event Huntington Financial Services, or any other 3Com funding source, fails to achieve Final Funding of the relevant transaction/project to which Capital 4 received a Pre-Funding Advance.

4.3.1.3 3Com shall be responsible for disbursement of the monetized funds for each transaction/project funded through the 3Com/Huntington Financial Services Program Agreement. Following ordinary disbursements including, without limitation, disbursement to the VAR, third party service provider and to 3Com for Equipment, Capital 4 and 3Com hereby agree that all remaining monetized funds shall be transferred to Capital 4 in consideration for the License Fee, sales and marketing efforts and administrative services provided. The parties agree that this amount represents fair and equitable consideration for Capital 4's

efforts relative to the 3Com CSA's executed prior to the Actual Cut Date (as evidenced on Exhibit B).

4.3.2 For each 3Com CSA executed after the Actual Cut Date that is submitted under the 3Com/Huntington Financial Services Program Agreement:

4.3.2.1 3Com shall, upon written request of Capital 4, agree to Pre-Funding of any transaction/project on behalf of Capital 4 an amount not to exceed the License Fee due Capital 4 under any transaction/project.

4.3.2.2 Capital 4 shall absorb all fees, including interim rent or interest expense, associated with the Pre-Funding Advance for each transaction/project for which an advance is requested. 3Com shall retain a portion of the Pre-Funding Advance to account for repayment of the interim rent or interest expense.

4.3.2.3 In the event of default on the Pre-Funding Requirements, in order to satisfy the customer's final acceptance of the transaction, Capital 4 shall be unconditionally liable to 3Com for any Pre-Funding Advance received (including interim rent or interest expense), and 3Com shall be entitled to offset any amounts Pre-Funded to Capital 4 against any amounts due Capital 4, including without limitation, any subsequent License Fee, in the event Huntington Financial Services, or any other 3Com funding source, fails to achieve Final Funding of the relevant transaction/project to which Capital 4 received a Pre-Funding Advance.

4.3.2.4 For each Pre-Funding Advance or for the remittance of any License Fee, 3Com and Capital 4 shall execute an Assignment of Proceeds, providing Huntington Financial Services with complete disbursement instructions for the Pre-Funding Advance.

4.3.2.5 The Pre-Funding Advance to Capital 4 shall not exceed the calculated License Fee associated with the individual transaction/project.

4.4 Capital 4 retains the right to control the Available Funds for any transaction/project that is: (a) based on a CSA that was executed prior to the Actual Cut Date (if it was a non-3Com CSA), or (b) based on a 3Com CSA executed prior to the Actual Cut Date, but is not being submitted under the 3Com/Huntington Financial Services Program Agreement (and, therefore, is not listed in Exhibit B).

**5.0  Outsourcing of Additional Services**
5.1 For each 3Com CSA executed prior to the Actual Cut Date:

5.1.1 Capital 4 shall be entitled to the Residual Funds associated with the transaction/project and shall provide the Public Access Services to the customer, pursuant to the agreement for such services between Capital 4 and the third-party provider.

5.2 For each 3Com CSA executed on or after the Actual Cut Date:

5.2.1   For any transaction/project, 3Com may elect to outsource to Capital 4 the responsibility to provide Public Access Services. In order to do so, the Parties would be required to enter a written agreement, defining their respective rights, duties, and obligations.

5.2.2   For each such transaction/project, in which 3Com elects to outsource to Capital 4 the responsibility to provide Public Access Services, 3Com will be responsible to pay Capital 4 for the Public Access Services provided by Capital 4 (or instruct the Funding Source to direct the pass-through service payments to Capital 4).

5.3   It is understood that after the Actual Cut Date, 3Com shall directly purchase Public Access Services from Bandwidth.com.

**6.0   Back Office Fee**

6.1   3Com shall pay Capital 4 the Back Office Fee for February.

6.2   3Com is not required to pay Capital 4 the Back Office Fee for March.

6.3   The Parties hereby agree that as of the Actual Cut Date, 3Com shall take over all services previously covered under the Back Office Fee, and Capital 4 shall not be entitled to any further Back Office Fee.

This First Addendum has an Effective Date of April 1, 2007.

Executed on this 1st day of April 2007.

Capital 4, Inc.

By: _____
Name: Dave Dawson
Title:  President

3Com Corporation

By: _____
Name  Robert Dechant
Title:  Senior Vice President

# EXHIBIT A

### ADDENDUM 1

TO VENDOR PROGRAM AGREEMENT DATED _____ BETWEEN        , HAVING BUSINESS OFFICES LOCATED AT        ("ORIGINATOR") AND THE HUNTINGTON NATIONAL BANK ("HUNTINGTON")

### INTERIM INTEREST AGREEMENT

**Recitals**:
Huntington agrees at its sole discretion to provide financing for Customers under a Finance Program and to enter into Contracts with Customers.

Originator has requested that Huntington fund certain progress payments to Originator prior to the delivery and acceptance of all Equipment under the Contract.

Huntington is willing to fund such payments subject to the terms and conditions of this Interim Interest Agreement.

THEREFORE, in consideration of the mutual covenants and agreements contained in this Interim Interest Agreement, and for other valuable consideration received by Originator, and intending to be legally bound, the parties hereby agree as follows:

1. Originator hereby agrees to pay interest monthly ("Interim Interest"), on a calendar month basis, commencing on the date when Huntington advances funds for a progress payment and continuing until the delivery and acceptance of all Equipment under the Contract, at a daily rate of .00033 per dollar of advance funding then expended by Huntington. Huntington shall deduct such Interim Interest from the final funding owed to Originator and apply such funds to the Interim Interest owed at time of Contract commencement.

2. If the Equipment has not been delivered to and accepted by Customer within (90) ninety days after the date the Customer executed the Contract, or if there has been a material adverse change in the condition, business or operation of Customer, or Customer elects to cancel the Contract prior to delivery and acceptance, Huntington has no obligation under the Contract to lease, finance, or rent such Equipment to Customer. Originator shall immediately pay all accrued Interim Interest and reimburse Huntington for all sums Huntington may have paid for or with respect to the Equipment and for all Huntington's costs and expenses with respect thereto.

3. Originator shall indemnify and defend Huntington against and hold Huntington harmless from any and all cost, expense, loss, liability and damage that Huntington may suffer or that may be asserted against Huntington by reason of Huntington's failure or refusal to purchase such Equipment. Originator shall not be liable to Huntington for loss of potential unbilled income from the respective underlying contract nor shall it be liable for loss of potential future business opportunities with the respective underlying contract or customer.


ORIGINATOR:                                THE HUNTINGTON NATIONAL BANK

BY: _____        BY: _____

PRINT NAME _____         PRINT NAME: _____

TITLE: _____        TITLE: _____

## EXHIBIT B

| name | VAR | Actual Funding Amount | Funding Date | Anticipate Close Date | Days 'til Funding | Deal Type | Lender | # of Phones | Total Schedule A | Resp | Comments | Equip Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ENT of Georgia | DJJ Atlanta | $840,000.00 | 30-Mar-07 | 19-Dec-06 | 0 | System | HEF - 3Com | 300 | $23,192.16 | 3Com | C4 docs signed w/ contingencies 12/21. Credit app submitted to MSNB 12/21 for $842,400. Declined initially at MSNB. Sent to HEF on 12/22. Requested additional tax return (2003) and interim FS 2006. Awaiting for client to return week of 1/5/07. Working on agent agreement for Digital Agents. Still working on obtaining underlying entity financials for credit review. | $124,246.90 |
| SNC - Lavalin GDS | Capital 4, Inc | $800,000.00 | 30-Apr-07 | 14-Mar-07 | 31 | System | HEF - 3Com | 625 | $16,402.30 | 3Com | Approved 3/15. Docs being prepared by HEF | $152,375.28 |
| Progressive Lighting Corporate | DJJ Atlanta | $559,108.44 | 30-Apr-07 | 30-Mar-07 | 31 | System | HEF - 3Com | 190 | $16,572.42 | 3Com | Docs out to Client 3/21 for signature. 8 Locations to be installed | $112,911.38 |

Total 389,534