UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 3COM CORPORATION,<br><br>        Plaintiff,<br><br>-against-<br><br>CAPITAL 4, INC., F. DAVIS DAWSON, and ISH VILLA-LOBOS,<br><br>        Defendants. | Civ. No.<br><br>DECLARATION OF LAWRENCE S. LANGMORE IN SUPPORT OF 3COM CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

I, Lawrence S. Langmore, declare under penalty of perjury that the following is true and correct:

1. I am a Senior Director, Finance, for 3Com Corporation.

2. I have held that position since August 2003.

3. Except as otherwise noted, I have personal knowledge of the facts stated herein.

4. I understand that Capital 4 and 3Com executed a "Strategic Alliance Agreement" dated January 31, 2005 and that on or about March 10, 2005, Capital 4 and 3Com entered into a "Rules of Engagement Addendum to the Strategic Alliance Agreement."

5. In or about late July, 2007, 3Com learned that Capital 4 was seriously delinquent on many of its outstanding payment obligations to third party Public Access Services providers. 3Com made this alarming discovery when it began receiving reports from 3Com Value Added Resellers ("VAR") who stated that they had received inquiries from Power of

$Zero customers who had been warned by their Public Access Service providers that they were in danger of having their service terminated due to non-payment.

6. Only when 3Com inquired about the delinquencies and the threatened loss of service to numerous Power of $Zero customers did Capital 4 confirm its dire financial condition and its inability to fulfill its obligations to pay for Public Access Services for its own POZ customers, as well as for 3Com POZ Customers for whom Capital 4 was providing Back Office Services.

7. Upon acknowledging its financial crisis, Capital 4 sought an immediate infusion of cash to meet its daily obligations, which included payments to Public Access Service providers to prevent them from shutting off customers' Public Access Services. Capital 4 initially requested over $200,000 to cover two days worth of expenses. As of August 7, 2007, 3Com had loaned Capital 4 $204,690.87 pursuant to a promissory note signed by Capital 4. A true and correct copy of the Promissory Note is attached as Exhibit 1.

8. Thereafter, Capital 4 requested additional infusions of cash on an almost daily basis in order to meet its daily financial obligations, which included paying Public Access Service providers immediately in order to prevent them from shutting off customers' services. 3Com made additional cash loans to Capital 4 under promissory notes on the following dates in the following amounts:

| | |
|---|---|
| August 8, 2007 | $62,495.42 |
| August 10, 2007 | $133,546.27 |
| August 14, 2007 | $35,096.54 |
| August 15, 2007 | $63,893.02 |
| August 16, 2007 | $40,848.57 |

                August 16, 2007            $59,429.31

True and correct copies of the promissory notes are attached collectively as Exhibits 2 - 7.

        9.        Thereafter, despite 3Com's infusion of $600,000 into Capital 4 under promissory notes, as well as $5,000,000 in prepaid royalties, Capital 4 remained unable to meet its ongoing obligations under the POZ Customer Agreements and failed to make payments owed to Public Access Service providers.  Capital 4 has failed to pay for Public Access Services for 3Com POZ customers for which Capital 4 acted as a 3Com VAR and for 3Com POZ Customers for which Capital 4 was providing "Back Office Services."

        10.        Since acknowledging its inability to meet its obligations, Capital 4 has failed to provide 3Com with some information 3Com has requested which is essential to allow 3Com to evaluate the problem and determine whether it wants to exercise its right to take assignment of certain agreements under the parties' agreements.  The necessary information includes agreements with customers, Public Access Service providers, and Lenders for the accounts on which Capital 4 is delinquent.

        11.        Subsequently, 3Com learned that Capital 4 had, without 3Com's knowledge, consent or approval of the transactions, entered approximately 14 agreements with new Power of $Zero customers on 3Com Paper bearing the heading "3Com Power of $Zero Customer Agreement" (the "Unauthorized Agreements").  I have reviewed available documentation concerning the Unauthorized Agreements.

        12.        3Com's approval process for proposed Power of $Zero agreements includes a review by 3Com of a "Reconciliation Report," provided by Capital 4 which discloses the monetization level for the transaction and analyzes the profitability of the transaction.

13. Capital 4 failed to provide a Reconciliation Report for any of the Unauthorized Agreements.

14. Capital 4 failed and refused to cooperate with 3Com in promptly providing information necessary to evaluate the extent of the problem, identify the customers, Public Access Service Providers, and Lenders involved, and work with the various entities to avert the looming crisis occasioned by Capital 4's failure to meet its obligations under the parties' agreements.

15. Capital 4 has repeatedly delayed providing information to 3Com and continually demanded that 3Com provide Capital 4 with large infusions of cash to enable it to pay the delinquent amounts due to Public Access service providers.

16. The information Capital 4 has provided to 3Com is incomplete, delinquent and sometimes inaccurate.

17. Capital 4 continues to assert that it is unable to pay for Public Access Services for POZ customers. In addition, Capital 4 owes 3Com approximately $400,000 for equipment 3Com sold and delivered to Capital 4 and for which 3Com has not received payment from Capital 4.

18. Capital 4 has also failed to pay the buyout costs for certain 3Com Power of $Zero customers' leases of existing equipment, even though 3Com gave Capital 4 funds for this specific purpose and directed Capital 4 to use the funds to do so, and Capital 4 specifically represented that such funds would be used for this specific purpose.

19. Based on facts recently disclosed by Capital 4, the information 3Com has gleaned to date about the state of Capital 4's finances and the decisions and circumstances that brought Capital 4 to this state suggests that Capital 4's early representations about its

profitability and ability to manage its liabilities were inaccurate. There are significant discrepancies between the data provided during the negotiation of the License Agreement and data recently provided by Capital 4.

20. Based on a review of available documentation, I have come to suspect that Dawson materially and knowingly misrepresented Capital 4's financial condition. More particularly, I learned that the aggregate financial information provided during the course of the negotiation of the License Agreement appears to be incomplete and inconsistent with corresponding data provided to 3Com more recently, so as to suggest that, at the time it was provided it was deliberately misleading.

21. The detailed financial information provided during the negotiations for a sample of supposedly representative customers is materially different from recently obtained information for those same customers, particularly with regard to the costs for Public Access Services for those customers.

22. 3Com has compared the sample customer data provided at the time of the negotiations with recently obtained data about the same customers, and found that the costs for Public Access Services are actually significantly higher than what Capital 4 previously represented.

23. Of the $5,000,000 in prepaid royalties paid by 3Com, Capital 4 retains approximately $4,900,000 in prepaid royalties which it is not entitled to retain, and Capital 4's Chief Financial Officer, Tony Wilson, indicated to me that Dawson and Villa-Lobos have misappropriated portions of the prepaid royalties by increasing the compensation paid to them by Capital 4.

24. Dawson admitted to me that Capital 4 has in its possession 3Com equipment valued between $150,000 and $200,000.

*[signature follows on next page]*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of October, 2007.

*Lawrence S. Langmore*