# EXHIBIT 1

PROMISSORY NOTE

**$204,690.87**

**August 6, 2007**

FOR VALUE RECEIVED, Capital4, Inc., a Texas corporation (the "Borrower"), hereby promises to pay 3Com Corporation (the "Lender"), on December 31, 2007 (the "Maturity Date"), the principal sum of TWO HUNDRED FOUR THOUSAND SIX HUNDRED NINETY DOLLARS AND EIGHTY SEVEN CENTS ($204,690.87) or such part thereof as remains then outstanding, whichever is less; together with interest on the balance of principal remaining unpaid from time to time accruing on and from the date hereof at an annual rate equal to (8.25%). Interest shall be calculated based on a 360-day year of twelve 30-day months, but in no event shall the rate of interest exceed the maximum rate, if any, allowable under applicable law. Principal and all accrued interest thereon shall be payable on the Maturity Date, or earlier as set forth in this Note. If an Events of Default shall occur, the interest rate payable hereunder shall increase by five percent (5%) per annum over the rate otherwise payable hereunder, provided that in no event shall the rate of interest exceed the maximum rate, if any, allowable under applicable law.

1. <u>Payment</u>. All payments on account of principal and interest shall be made in lawful money of the United States of America at the principal office of the Lender, or such other place as the holder hereof may from time to time designate in writing to the Borrower. The above notwithstanding, Lender and Borrower both agree that any and all monies owed to Borrower by Lender for license fees under the existing License Agreement between the parties, or any VAR commissions or other amounts due Borrower under any other agreement shall automatically and without any further agreement between the parties, be used by Lender on a weekly or monthly basis as the case may be, to pay down any outstanding principal and/or interest under this note until such time as this note has been paid in full.

2. <u>Transfer and Exchange</u>. The holder of this note (the "Note") may, prior to maturity thereof, surrender such Note at the principal office of the Borrower for transfer or exchange. Within a reasonable time after notice to the Borrower from such holder of its intention to make such exchange and without expense to such holder, except for any transfer or similar tax which may be imposed on the transfer or exchange, the Borrower shall issue in exchange therefor another note or notes (each a "Note") for the same aggregate principal amount as the unpaid principal amount of the Note so surrendered, having the same maturity and rate of interest, containing the same provisions and subject to the same terms and conditions as the Note so surrendered. Each new Note shall be made payable to such person or persons, or transferees, as the holder of such surrendered Note may designate, and such transfer or exchange shall be made in such a manner that no gain or loss of principal or interest shall result therefrom.

3. <u>New Note</u>. Upon receipt of evidence reasonably satisfactory to the Borrower of the loss, theft, destruction or mutilation of the Note, the Borrower will issue a new Note, of like tenor and amount and dated the date to which interest has been paid, in lieu of such lost, stolen,

destroyed or mutilated Note, and in such event the Lender agrees to indemnify and hold harmless the Borrower in respect of any such lost, stolen, destroyed or mutilated Note.

4. <u>Prepayment</u>. Borrower may repay this Note, without premium or penalty, in whole or in part, with accrued interest to the date of such prepayment on the amount prepaid.

5. <u>Events of Default</u>. Any of the following shall constitute an event of default under this Note ("Event of Default"):

    (a) The dissolution or termination of business of Borrower;

    (b) Any petition in bankruptcy being filed by or against Borrower or any proceedings in bankruptcy, insolvency or under any other laws relating to the relief of debtors, being commenced for the relief or readjustment of any indebtedness of Borrower, either through reorganization, composition, extension or otherwise;

    (c) The making by Borrower of an assignment for the benefit of creditors or the insolvency of Borrower;

    (d) The appointment of a receiver of any property of Borrower;

    (e) Any seizure, vesting of rights of or intervention by or under any authority of any government;

    (f) Default shall be made with respect to the payment of any principal or interest on this Note when the same shall become due and payable, whether at maturity or any other date fixed for payment, and/or default shall be made with respect to any agreement or other evidence of material indebtedness or liability for borrowed money or any lease of the Borrower or any subsidiary thereof if (i) such default relates to the failure to pay the principal amount of any such indebtedness on its stated maturity date, or (ii) otherwise the effect of such default is to accelerate the maturity of such indebtedness, liability or lease obligation or require the prepayment thereof or the holder thereof (or a trustee on behalf of the holder or holders thereof) causes such indebtedness or lease obligation to become due prior to the stated maturity or payment date thereof;

    (g) The sale of the Borrower, whether by merger, sale, or transfer of more than fifty percent (50%) of its capital stock, or sale of substantially all of its assets; or

    (h) Any of the representations or warranties of the Borrower contained in this Note shall prove to have not been true in any material respect when made or the Borrower breaches any covenants or agreements contained herein.

At the earlier of (i) the occurrence of any Event of Default and (ii) the Maturity Date, all obligations outstanding from the Borrower to the Lender, including obligations pursuant to this Note, shall immediately become due and payable without demand, presentment, protest or other

notice of any kind, all of which are hereby expressly waived. In such event, the Lender may proceed to enforce the payment of all obligations of Borrower to Lender and to exercise any and all of the rights and remedies afforded to Lender by law or under the terms of this Note or otherwise.

6. <u>Miscellaneous</u>. No failure or delay on the part of any party to this Note in exercising any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder. The remedies herein provided are cumulative and not exclusive of any remedies provided by law. Any provision in this Note to the contrary notwithstanding, changes in or additions to this Notes may be made, and compliance with any covenant or provision herein may be omitted or waived, if the Company shall obtain consent thereto in writing from the holder of this Note. This Note shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective heirs, successors and assigns. All representations and warranties made in this Notes or any other instrument or document delivered in connection herewith, shall survive the execution and delivery hereof. This Note constitutes the entire agreement between the parties and supersedes any other prior understandings or agreements concerning the subject matter hereof, including, without limitation, any electronic, verbal, oral or written agreements. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision. This Note shall be governed by, and construed in accordance with, the law of the Commonwealth of Massachusetts, without regard to its conflicts of laws provisions.

7. <u>Collection Expenses</u>. The Borrower further agrees, subject only to any limitation imposed by applicable law, to pay all expenses, including reasonable attorneys' fees, incurred by the holder of this Note in endeavoring to collect any amounts payable hereunder which are not paid when due.

8. <u>Representations</u>. Borrower represents and warrants that (a):

 (i) the borrowing hereunder, taken together with any previous borrowing, if any, from Lender, will not have a material adverse effect upon the validity, performance or enforceability of any of the transactions contemplated hereby, a material adverse effect upon the properties, business, or condition (financial or otherwise) of the Borrower, which will or may reasonably likely cause the Borrower to default under any this Note or any prior notes, if any, with the Lender, or a material adverse effect upon the ability of Borrower to fulfill any obligation under this Note; and

 (ii) there are no Events of Default continuing under any existing indebtedness of Borrower to Lender, if any, or any third party lender; and

(b) all corporate and other action required for this Note to be the valid and enforceable obligation of the Borrower has been taken, and this Note represents the valid and enforceable obligation of the Borrower.

9. <u>Covenants</u>.

(a) Borrower shall furnish to the Lender, from time to time, such information as to the financial condition of the Borrower as the Lender may reasonably request, including, without limitation, the following (collectively, the "Financial Information"):

  (i) within ninety (90) days after the end of each fiscal year of Borrower, annual financial statements for Borrower reviewed by a certified public accountant reasonably acceptable to Lender;

  (ii) within thirty (30) days after the end of each calendar month, management prepared interim financial statements for Borrower; and

  (iii) such other financial information regarding the Borrower as the Lender may from time to time reasonably request.

(b) Until the principal and all other amounts that may from time to time be due and owing under this Note are paid in cash in full to Lender, Borrower may not incur any indebtedness for borrowed money unless such debt is expressly subordinate in right of payment to the indebtedness represented by this Note.

10. <u>Use of Proceeds</u>. Borrower has informed Lender that it intends to use the proceeds of this Note to pay the dial-tone connection fees it owes to third party providers on behalf of its customers.

11. <u>No Obligations.</u> Borrower acknowledges that under no circumstances shall Lender have any obligation to lend additional amounts to Borrower or make any investments in Borrower.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officers as of the date first above written.

CAPITAL4, INC.

By: _____
Name:
Title: C.E.O.

Attest:

By: _Barbara A. Hennessy_
Name: _Barbara Hennessy_
Title: _Notary Public_

Barbara A Hennessy
My Commission Expires
07/18/2011

Agreed and accepted:

3COM CORPORATION

By: _____
Name:
Title: