**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

3COM CORPORATION,

             **Plaintiff,**

        **-against-**

CAPITAL 4, INC., F. DAVIS
DAWSON, and ISH VILLA-LOBOS,

           **Defendants.**

**Civ. No.**

**DECLARATION OF CHRISTOPHER
JODOIN IN SUPPORT OF 3COM
CORPORATION'S MOTION FOR
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

I, Christopher Jodoin, declare under penalty of perjury that the following is true and correct:

1.     I am a Vice President of Finance for 3Com Corporation.

2.     I have held that position for about four years, and prior to that time I held a series of other positions in finance for about eight years.

3.     Except as otherwise noted, I have personal knowledge of the facts stated herein.

4.     Following Infinitel's merger with Capital 4 in or about 2000, 3Com became a network and telecommunications equipment supplier for Capital 4, selling equipment to Capital 4 for use in Capital 4's "Power of $Zero" program through which Capital 4 provided network and telecommunications services and new equipment to customers.

5.     I learned in the course of performing my duties at 3Com that Capital 4 and 3Com executed a "Strategic Alliance Agreement" dated January 31, 2005, and that on or about

BOS-1129938 v2

March 10, 2005, Capital 4 and 3Com entered into a "Rules of Engagement Addendum to the Strategic Alliance Agreement."

6.    In the second half of 2005, 3Com and Capital 4 entered into negotiations to modify the terms of their strategic alliance. As result of those negotiations, 3Com and Capital 4 began to consider a new agreement under which 3Com would develop and implement its own Power of $Zero program.

7.    Because 3Com was aware that Capital 4 had had cash flow problems based on Capital 4's prior need to have 3Com extend it credit, 3Com requested that Capital 4 provide financial data showing aggregate income and expenses associated with Capital 4's Power of $Zero program as a whole, as well as detailed data for a representative sample of Power of $Zero customers to enable 3Com to undertake a due diligence review of the financial aspects of Capital 4's Power of $Zero program.

8.    In or about late 2005 or early 2006 Dawson provided 3Com with aggregate financial data on the Power of $Zero program and detailed financial data on a sample of seven customers. Dawson specifically represented to 3Com's management that the aggregate financial data was accurate and that the sample data also demonstrated the financial viability of Capital 4's Power of $Zero portfolio.

9.    In the course of the negotiations, which extended and continued into 2006, Dawson repeatedly asserted that, notwithstanding Capital 4's cash flow issues, the Power of $Zero program overall was profitable. They acknowledged that while some individual transactions were "underwater", *i.e.*, losing money for Capital 4, others were sufficiently profitable to make the entire portfolio of Capital 4 Power of $Zero transactions profitable.

10.    In reliance on Dawson's representations regarding Capital 4's financial condition and the accuracy of the financial data Capital 4 had provided, 3Com decided to go forward with a new agreement with Capital 4.

11.    On or about November 10, 2006, Capital 4 and 3Com entered into a License Agreement and an Operations Agreement, and partly based on Dawson's representations regarding Capital 4's finances, 3Com agreed to make a $5,000,000 prepayment of the licensing fees or royalties that 3Com would be paying Capital 4 under the License Agreement.

12.    Upon information and belief, based on 3Com's review of financial data that 3Com has recently received from Capital 4, Dawson materially misrepresented Capital 4's financial condition.  The inconsistencies between the data originally provided and that provided recently reveals the apparent misrepresentations alleged herein.

13.    Upon information and belief, Dawson also apparently materially misrepresented the detailed financial information provided for the sample of customers.  This apparent misrepresentation is evidenced by the discrepancy between the costs for Public Access Services reported for the sample of customers during the negotiation of the License Agreement and the cost of those Services for the same customers as recently reported to 3Com.

*[signature follows on next page]*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on this 8th day of October, 2007.

Christopher Jodoin