UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
3COM CORPORATION,                              :
                                               :
                    Plaintiff,                 :        Index No. 07 Civ. 8707 (JSR)(JDF)
                                               :
            -against-                          :        **DEFENDANTS' ANSWER**
                                               :        **AND CAPITAL 4, INC.'S**
CAPITAL 4, INC., F. DAVIS                       :        **COUNTERCLAIMS AGAINST**
DAWSON, and ISH VILLA-LOBOS,                    :        **3COM CORPORATION**
                                               :
                    Defendants.                :
-------------------------------------------------------------x

Defendants Capital 4, Inc. ("Capital 4"), F. Davis Dawson ("Dawson"), and Ish

Villa-Lobos ("Villa-Lobos"), by and through their attorneys, Winget, Spadafora &

Schwartzberg, LLP, as and for their Answer to the Complaint of plaintiff 3Com

Corporation ("3Com"), allege as follows:


1.      The allegations contained in paragraph 1 of the Complaint are legal

conclusions to which no response is required.  To the extent a response is required, the

allegations are denied.

2.      Deny having knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 2 of the Complaint.

3.      Deny the allegations in paragraph 3 of the Complaint, except admit that

Capital 4 is a Texas corporation with its principal place of business in Houston, Texas.

4.      Admit the allegations in paragraph 4 of the Complaint, except deny that

defendant Dawson has a one half ownership interest in Capital 4.

5.      Admit the allegations in paragraph 5 of the Complaint, except deny that

defendant Villa-Lobos has a one half ownership interest in Capital 4.

6.      The allegations in paragraph 6 of the Complaint are legal conclusions to which no response is required.

7.      Admit the allegations in paragraph 7 of the Complaint.

8.      The allegations in paragraph 8 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegation that Capital 4 and 3Com are parties to an Operations Agreement that contains a New York choice of law and forum provision is admitted, and defendants respectfully refer the Court to the Operations Agreement, which speaks for itself.

9.      The allegations in paragraph 9 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

10.     The allegations in paragraph 10 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, the allegations are admitted as to the claims against Capital 4, but denied as to the claims against Dawson and Villa-Lobos.

11.     Admit the allegations in paragraph 11 of the Complaint.

12.     Deny the allegations in paragraph 12 of the Complaint, except admit that Dawson and Villa-Lobos are shareholders of Capital 4.

13.     Deny the allegations in paragraph 13 of the Complaint, except admit that 3Com supplied network and telecommunications equipment to Capital 4 in connection with the "Power of $Zero" program.

14.     Admit the allegations in paragraph 14 of the Complaint to the extent they provide a general description of the "Power of $Zero" program, and respectfully refer the

Court to the customer service agreements and related documents, which speak for themselves.

15.     Admit the allegations in paragraph 15 of the Complaint.

16.     Admit the allegations in paragraph 16 of the Complaint to the extent they provide a general description of the "Power of $Zero" program, and respectfully refer the Court to the customer service agreements and related documents, which speak for themselves.

17.     Deny the allegations in paragraph 17 of the Complaint.

18.     Deny the allegations in paragraph 18 of the Complaint.

19.     Deny the allegations in paragraph 19 of the Complaint.

20.     Deny the allegations in paragraph 20 of the Complaint.

21.     Deny the allegations in paragraph 21 of the Complaint.

22.     Admit the allegations in paragraph 22 of the Complaint.

23.     Admit the allegations in paragraph 23 of the Complaint.

24.     Deny the allegations in paragraph 24 of the Complaint, and respectfully refer the Court to the Strategic Alliance Agreement and Rules of Engagement Addendum, which speak for themselves.

25.     Paragraph 25 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, defendants deny the allegations, except admit that 3Com and Capital 4 operated under the Strategic Alliance Agreement and Rules of Engagement Addendum until the fall of 2006, and refer the Court to the agreements, which speak for themselves.

26.    In response to paragraph 26 of the Complaint, admit that under the Strategic Alliance Agreement and Rules of Engagement Addendum, the customer agreements were executed on papers bearing the Capital 4 logo, and refer the Court to the Strategic Alliance Agreement and Rules of Engagement Addendum, which speak for themselves

27.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint.

30.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint.

31.    Deny the allegations in paragraph 31 of the Complaint.

32.    Deny the allegations in paragraph 32 of the Complaint, except admit that 3Com was aware that Capital 4 was having cash flow problems.

33.    Deny the allegations in paragraph 33 of the Complaint, except admit that Capital 4 provided 3Com with financial data regarding the "Power of $Zero" program.

34.    Deny the allegations in paragraph 34 of the Complaint.

35.    Deny the allegations in paragraph 35 of the Complaint.

36.    Deny the allegations in paragraph 36 of the Complaint.

37.    Admit the allegations in paragraph 37 of the Complaint.

38.    Deny the allegations in paragraph 38 of the Complaint, and respectfully refer the Court to the License Agreement and the Operations Agreement, which speak for themselves.

39.    Deny the allegations in paragraph 39 of the Complaint, and respectfully refer the Court to the Operations Agreement, which speaks for itself.

40.    Deny the allegations in paragraph 40 of the Complaint, and respectfully refer the Court to the License Agreement, which speaks for itself.

41.    Deny the allegations in paragraph 41 of the Complaint, except admit that 3Com made the $5,000,000 payment to Capital 4 in two installments.

42.    Admit the allegations in paragraph 42 of the Complaint, and respectfully refer the Court to the License Agreement and Operations Agreement, which speak for themselves.

43.    Paragraph 43 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, defendants respectfully refer the Court to the License Agreement and Operations Agreement, which speak for themselves.

44.    Paragraph 44 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, defendants respectfully refer the Court to the First Contract Addendum to the License Agreement and Operations Agreement, which speaks for itself.

45.    Admit the allegations in paragraph 45 of the Complaint.

46.    Deny the allegations in paragraph 46 of the Complaint.

47.    Deny the allegations in paragraph 47 of the Complaint.

48.    Deny the allegations in paragraph 48 of the Complaint, except admit that Capital 4 called upon 3Com to honor its obligations under the License Agreement and Operations Agreement in order to protect Power of $Zero customers.

49.    In response to paragraph 49 of the Complaint, defendants respectfully refer the Court to the First Contract Amendment, which speaks for itself.

50.    Deny the allegations in paragraph 50 of the Complaint, except admit that 3Com made a series of payments to Capital 4, which are evidenced by the promissory notes attached as Exhibits 13-18 to the Complaint.

51.    Deny the allegations in paragraph 51 of the Complaint.

52.    Paragraph 52 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

53.    Deny the allegations in paragraph 53 of the Complaint.

54.    Deny the allegations in paragraph 54 of the Complaint.

55.    Deny the allegations in paragraph 55 of the Complaint.

56.    Deny the allegations in paragraph 56 of the Complaint.

57.    Deny the allegations in paragraph 57 of the Complaint.

58.    Deny the allegations in paragraph 58 of the Complaint.

59.    Deny the allegations in paragraph 59 of the Complaint.

60.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Complaint.

61.    Deny the allegations in paragraph 61 of the Complaint.

62.    Deny the allegations in paragraph 62 of the Complaint.

63.    Deny the allegations in paragraph 63 of the Complaint.

64.    Deny the allegations in paragraph 64 of the Complaint.

65.    Deny the allegations in paragraph 65 of the Complaint.

66.    Deny the allegations in paragraph 66 of the Complaint.

67.    Deny the allegations in paragraph 67 of the Complaint.

68.    Deny the allegations in paragraph 68 of the Complaint.

69.    Deny the allegations in paragraph 69 of the Complaint, except admit that, on or about September 18, 2007, Capital 4 transmitted a letter to certain 3Com Value Added Resellers, and respectfully refer the Court to the letter, which speaks for itself.

70.    Admit the allegations in paragraph 70 of the Complaint.

71.    Deny the allegations in paragraph 71 of the Complaint, and respectfully refer the Court to the September 25, 2007 correspondence, which speaks for itself.

72.    Deny the allegations in paragraph 72 of the Complaint, except admit that Capital 4 is unable to pay for Public Access Services for some of its "Power of $Zero" customers.

73.    Deny the allegations in paragraph 73 of the Complaint.

74.    Deny the allegations in paragraph 74 of the Complaint.

75.    Deny the allegations in paragraph 75 of the Complaint.

76.    Deny the allegations in paragraph 76 of the Complaint.

77.    Deny the allegations in paragraph 77 of the Complaint.

78.    Deny the allegations in paragraph 78 of the Complaint.

79.    Deny the allegations in paragraph 79 of the Complaint.

80.    Deny the allegations in paragraph 80 of the Complaint.

## COUNT I

81.    In response to paragraph 81 of the Complaint, defendants repeat and reallage the responses to paragraphs 1-80, *supra*, as though fully set forth in this paragraph.

82.    Admit the allegations in paragraph 82 of the Complaint.

83.    Deny the allegations in paragraph 83 of the Complaint.

84.    Deny the allegations in paragraph 84 of the Complaint.

85.    In response to the allegations in paragraph 85 of the Complaint, defendants respectfully refer the Court to the License Agreement, which speaks for itself.

86.    In response to the allegations in paragraph 86 of the Complaint, defendants respectfully refer the Court to the License Agreement, which speaks for itself.

87.    Deny the allegations in paragraph 87 of the Complaint.

88.    In response to the allegations in paragraph 88 of the Complaint, defendants respectfully refer the Court to the License Agreement, which speaks for itself.

89.    In response to the allegations in paragraph 89 of the Complaint, defendants respectfully refer the Court to the License Agreement, which speaks for itself.

90.    Deny the allegations in paragraph 90 of the Complaint.

91.    In response to the allegations in paragraph 91 of the Complaint, defendants respectfully refer the Court to the License Agreement, which speaks for itself.

92.    Deny the allegations in paragraph 92 of the Complaint.

93.    In response to the allegations in paragraph 93 of the Complaint, defendants respectfully refer the Court to the License Agreement, which speaks for itself.

94.    Deny the allegations in paragraph 94 of the Complaint.

95.    In response to the allegations in paragraph 95 of the Complaint, defendants respectfully refer the Court to the September 18, 2007 letter, which speaks for itself.

96.    Deny the allegations in paragraph 96 of the Complaint.

97.    Admit the allegations in paragraph 97 of the Complaint.

98.    Deny the allegations in paragraph 98 of the Complaint.

99.    Deny the allegations in paragraph 99 of the Complaint.

100.    In response to paragraph 100 of the Complaint, defendants refer the Court to the Operations Agreement, which speaks for itself.

101.    Deny the allegations in paragraph 101 of the Complaint.

102.    In response to paragraph 102 of the Complaint, defendants respectfully refer the Court to the Operations Agreement, which speaks for itself.

103.    Deny the allegations in paragraph 103 of the Complaint.

104.    In response to paragraph 104 of the Complaint, defendants respectfully refer the Court to the Operations Agreement, which speaks for itself.

105.    Deny the allegations in paragraph 105 of the Complaint.

106.    In response to paragraph 106 of the Complaint, defendants respectfully refer the Court to the Operations Agreement, which speaks for itself.

107.    Deny the allegations in paragraph 107 of the Complaint.

108.    In response to paragraph 108 of the Complaint, defendants respectfully refer the Court to the August 20, 2007 letter from 3Com, which speaks for itself.

109.    Deny the allegations in paragraph 109 of the Complaint.

110.    Deny the allegations in paragraph 110 of the Complaint.

111.    Deny the allegations in paragraph 111 of the Complaint.


## COUNT II

112.    In response to paragraph 112 of the Complaint, defendants repeat and reallage the responses to paragraphs 1-111, *supra*, as though fully set forth in this paragraph.

113.    Paragraph 113 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

114.    Paragraph 114 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

115.    Paragraph 115 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

116.    Paragraph 116 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.


## COUNT III

117.    In response to paragraph 117 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-116, *supra*, as though fully set forth in this paragraph.

118.    Admit the allegations in paragraph 118 of the Complaint, but deny that a copy of the letter was sent to all 3Com Value Added Resellers.

119.    Deny the allegations in paragraph 119 of the Complaint.

120.    Deny the allegations in paragraph 120 of the Complaint.

121.    Deny the allegations in paragraph 121 of the Complaint.

122.    Deny the allegations in paragraph 122 of the Complaint.

123.    Deny the allegations in paragraph 123 of the Complaint.

124.    Deny the allegations in paragraph 124 of the Complaint, except admit that Capital 4 sent a correspondence to its customer on September 25, 2007, and respectfully refer the Court to that correspondence, which speaks for itself.

125.    Paragraph 125 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

126.    Paragraph 126 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

127.    Paragraph 127 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

128.    Paragraph 128 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

129.    Paragraph 129 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.


## COUNT IV

130.    In response to paragraph 130 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-129, *supra*, as though fully set forth in this paragraph.

131.    Paragraph 131 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, defendants admit that Capital 4 and 3Com have had a longstanding relationship.

132.    Paragraph 132 of the Complaint contains legal conclusions to which no response is required.

133.    Deny the allegations in paragraph 133 of the Complaint, except admit that Capital 4 provided 3Com with financial and other data regarding the Power of $Zero program.

134.    Deny the allegations in paragraph 134 of the Complaint.

135.    Deny the allegations in paragraph 135 of the Complaint.

136.    Deny the allegations in paragraph 136 of the Complaint.

137.    Deny the allegations in paragraph 137 of the Complaint.

138.    Deny the allegations in paragraph 138 of the Complaint.

139.    Deny the allegations in paragraph 139 of the Complaint.

140.    Paragraph 140 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, such allegations are denied.


## COUNT V

141.    In response to paragraph 141 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-140, *supra*, as though fully set forth in this paragraph.

142.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 142 of the Complaint.

143.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 143 of the Complaint.

144.    Paragraph 144 of the Complaint contains legal conclusion to which no response is required.   To the extent a response is required, defendants deny having knowledge or information sufficient to form a belief as to the truth of such allegations.

145.    Paragraph 145 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, defendants deny having knowledge or information sufficient to form a belief as to the truth of such allegations.

146.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 146 of the Complaint.

147.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 of the Complaint.

148.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 of the Complaint.

149.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 149 of the Complaint.

150.    Paragraph 150 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, defendants deny having knowledge or information sufficient to form a belief as to the truth of such allegations.

151.    Paragraph 151 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, defendants deny having knowledge or information sufficient to form a belief as to the truth of such allegations.

152.    Deny the allegations in paragraph 152 of the Complaint.

153.    Deny the allegations in paragraph 153 of the Complaint.

154.    Paragraph 154 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

155.    Deny the allegations in paragraph 155 of the Complaint.

156.    Paragraph 156 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

157.    Paragraph 157 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.


## COUNT VI

158.    In response to paragraph 158 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-157, *supra*, as though fully set forth in this paragraph.

159.    Paragraph 159 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

160.    Paragraph 160 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

161.    Paragraph 161 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

162.    Deny the allegations in paragraph 162 of the Complaint.

163.    Paragraph 163 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

164.    Paragraph 164 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.


## COUNT VII

165.    In response to paragraph 165 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-164, *supra*, as though fully set forth in this paragraph.

166.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 166 of the Complaint.

167.    Deny the allegations in paragraph 167 of the Complaint.

168.    Deny the allegations in paragraph 168 of the Complaint.

169.    Deny the allegations in paragraph 169 of the Complaint.

170.    Deny the allegations in paragraph 170 of the Complaint.

171.    Deny the allegations in paragraph 171 of the Complaint.


## COUNT VIII

172.    In response to paragraph 172 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-171, *supra*, as though fully set forth in this paragraph.

173.    Deny the allegations in paragraph 173 of the Complaint.

174.    Deny the allegations in paragraph 174 of the Complaint.

175.    Deny the allegations in paragraph 175 of the Complaint.

176.    Deny the allegations in paragraph 176 of the Complaint.

177.    Deny the allegations in paragraph 177 of the Complaint.

## COUNT IX

178.    In response to paragraph 178 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-177, *supra*, as though fully set forth in this paragraph.

179.    Paragraph 179 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

180.    Deny the allegations in paragraph 180 of the Complaint, and respectfully refer the Court to the August 20, 2007 letter from 3Com to Capital 4, which speaks for itself.

181.    In response to the allegations in paragraph 181 of the Complaint, defendants refer the Court to the September 25, 2007 correspondence, which speak for itself.

182.    Paragraph 182 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied, and defendants respectfully refer the Court to the License Agreement and the Operations Agreement, which speak for themselves.

183.    Paragraph 183 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied, except Capital 4 admits that it believes 3Com remains obliged to remit license fees to Capital 4 in connection with the License Agreement.

184.     Paragraph 184 of the Complaint contains legal conclusions to which no response is required.

## COUNT X

185.     In response to paragraph 185 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-184, *supra*, as though fully set forth in this paragraph.

186.     Paragraph 186 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, defendants admit that Capital 4 and 3Com have had a longstanding relationship.

187.     Deny the allegations in paragraph 187 of the Complaint, except admit that 3Com made payments to Capital 4 in excess of $5,600,000.

188.     Paragraph 188 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

189.     Deny the allegations in paragraph 189 of the Complaint.

190.     Paragraph 190 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## COUNT XI

191.     In response to paragraph 191 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-190, *supra*, as though fully set forth in this paragraph.

192.    Paragraph 192 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

193.    Deny the allegations in paragraph 193 of the Complaint.

194.    Deny the allegations in paragraph 194 of the Complaint.

195.    Deny the allegations in paragraph 195 of the Complaint.

196.    Paragraph 196 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.


## COUNT XII

197.    In response to paragraph 197 of the Complaint, defendants repeat and reallege the responses to paragraphs 1-196, *supra*, as though fully set forth in this paragraph.

198.    Paragraph 198 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

199.    Paragraph 199 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

200.    Paragraph 200 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

201.    Paragraph 201 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were proximately caused or were the consequences of the conduct, actions, omissions, negligence or intentional acts of plaintiff.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, laches and estoppel.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by events over which defendants had no control and for which they are not responsible.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its own material breach of the License Agreement and Operations Agreement.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its failure to mitigation its damages, if any.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over defendants Dawson and Villa-Lobos.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

All uses by Capital 4 of 3Com's trademark were authorized by 3Com

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to amend this answer by asserting defenses which future investigation or discovery may reveal to be appropriate.

WHEREFORE, Defendants respectfully request that a judgment be entered in favor of Defendants dismissing the Complaint with prejudice, denying all relief sought in the Complaint, awarding Defendants their costs and attorneys' fees, and for such other and further relief as the Court deems just and appropriate.

## CAPITAL 4, INC.S COUNTERCLAIMS AGAINST 3COM CORPORATION

Defendant and Counter-Plaintiff Capital 4, Inc. ("Capital 4"), by and through its attorneys, Winget, Spadafora & Schwartzberg, LLP, as and for its counterclaims against 3Com Corporation ("3Com"), alleges as follows:

1.    Counter-Plaintiff Capital 4 is a Texas corporation with its principal place of business located in Houston, Texas.

2.    Counter-Defendant 3Com is a Delaware corporation with its principal place of business located in Marlboro, Massachusetts.

3.      This Court has jurisdiction over the subject of the Counterclaims pursuant to 28 U.S.C. §§ 1332 and 1367, in that there is complete diversity of citizenship between Capital 4 and 3Com, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the Counterclaims are related to the claims by 3Com in this action.

4.      Capital 4 was formed in or about January 2004 through a merger of Infinitel, Inc. ("Infinitel") and Capital 4 Outsourcing, Inc. ("Capital 4 Outsourcing").

5.      Prior to the merger, Infinitel had been a 3Com Value Added Reseller ("VAR") since in or about 1999; and subsequent to the merger, Capital 4 was a 3Com VAR.

6.      As licensed 3Com VARs, Infinitel and Capital 4 were authorized to sell 3Com branded network and telecommunications equipment to customers located within their designated geographic region.

## The Power of $Zero Model

7.      In or about January 2004, Capital 4 commercialized a proprietary sales model it named "Power of $Zero," through which Capital 4 sold network and telecommunications equipment manufactured by 3Com bundled together with telecommunications services such as local and long distance calling, internet access and repair services ("Public Access Services").

8.      Under the Power of $Zero model, Capital 4 entered into long-term contracts with customers under which Capital 4 agreed to provide Public Access Services to a customer at essentially the same price that the customer was paying for its existing

telecommunications services (the "Customer Service Agreement"). In addition, the customer was offered the option of leasing new 3Com equipment (the "Equipment Option") and/or receiving a cash rebate (the "Cash Rebate Option") at no additional cost.

9.    The cost of the Equipment Option and/or the Cash Rebate Option was financed through the monetization of future revenues generated by Customer Service Agreements. In this regard, a financial institution (the "Funding Source") would make a payment to Capital 4 in an amount equal to the discounted present value of a portion of the future revenue stream generated by a Customer Service Agreement, and simultaneously entered into a rental or lease agreement with the customer that required the customer to make equal monthly payments to the Funding Source.

10.    The funds provided by the Funding Source were repaid through the monthly rental or lease payments. To the extent the monthly rental or lease payment exceeded the monthly repayment obligation, the excess funds (the "Residual Funds") were passed through to Capital 4.

11.    The proceeds from the monetization of the Customer Service Agreements were used for various purposes, including but not limited to the payment of the cost of the Equipment Option or the Cash Rebate Option, operating expenses and the cost of providing Public Access Services. The amount received from the Funding Source varied from transaction to transaction, and was dependant upon various factors, including the value of the equipment and the credit worthiness of the customer.

12.    The long-term success of the Power of $Zero model was dependent on Capital 4's ability to purchase from telecommunications carriers and then deliver to its customers the same level of Public Access Services its customers were receiving from

their existing service providers, but at a lower cost to Capital 4. The Power of $Zero model anticipated achieving substantial cost savings in regard to the telecommunications services by, among other things, transitioning customers off of high-cost retail telecommunications platforms offered by incumbent telecommunications carriers such as Verizon Communications and AT&T and onto low-cost Voice over Internet Protocol ("VoIP") platforms being offered by companies such as Level 3 Communications ("Level 3").

## 3Com Agrees to Partner with Capital 4 in the
## Development and Marketing of the Power of $Zero Program

13.    The Power of $Zero model immediately became popular with customers, leading to substantial sales of 3Com equipment. Although Capital 4 was a relatively small 3Com VAR, 3Com took notice of the increased equipment sales and became interested in the Power of $Zero model.

14.    Capital 4 explained to 3Com the details of the Power of $Zero model. Capital 4 further explained that, although it has invested substantial funds to develop and implement the program, Capital 4 would eventually require additional funding, which it was in the process of obtaining, in order to continue developing the technology behind the program and to achieve the scale that was necessary for the long-term success and profitability of the program.

15.    One of Capital 4's substantial outlays was in the development of the technology it needed in order to transition its customers onto a VoIP platform. These investments, included, but were not limited to, the purchase from 3Com of a device

known as a Soft Switch, which was intended to interface with the VoIP service provider's network, thereby allowing Capital 4's customers to be moved onto the VoIP platform.

16.     Recognizing the potential commercial benefits to 3Com of the Power of $Zero program, and in order to induce Capital 4 to rely solely upon 3Com in further developing and rolling-out the Power of $Zero program, 3Com represented to Capital 4 that it would partner with Capital 4 to further develop and grow the Power of $Zero program.

17.     In furtherance of its partnership with Capital 4, on January 31, 2005, 3Com and Capital 4 entered into the Strategic Alliance Agreement. Pursuant to the Strategic Alliance Agreement, Capital 4 agreed to use 3Com products on an exclusive basis, and 3Com agreed to assist Capital 4 in establishing relationships with other 3Com VARs to promote the Power of $Zero program.

18.     3Com represented to Capital 4 that the Strategic Alliance Agreement would be the first step in its partnership with Capital 4 to develop and expand globally the Power of $Zero program.

19.     The recitals in the Strategic Alliance Agreement explain that "the Parties see the benefit of working together to utilize the Power of $Zero model of selling in marketing 3Com's telephony systems to displace equipment sourced from 3Com competitors in the market, and to increase (by and through the use of other Re-sellers) sales and leasing of 3Com's telephony systems on a global basis."

20.     To further cement Capital 4's trust and reliance in 3Com, and to advance their partnership, on March 10, 2005, 3Com and Capital 4 entered into the Rules of Engagement Addendum to Strategic Alliance Agreement (the "ROE Addendum").

21.     The general purpose of the ROE Addendum was to outline how 3Com and Capital 4 would work together to:

> (1) market the Public Access Services offered by Capital 4 through the Power of $Zero Solution and development of the 'Capital 4 System,' which shall be designed to provide all administrative responsibilities in order to implement the Power of $Zero Solution in marketing 3Com products nationally through the 3Com Selected Partner/Resellers, including reporting requirements and data summaries; (2) allow Capital 4 to establish direct relationship[s] with 3Com Selected Partners/Resellers, allowing each 3Com Selected Partner/Reseller to utilize the Power of $Zero Solution in marketing 3Com products; and (3) allow 3Com to utilize the Power of $Zero Solution in marketing 3Com Products directly.

22.     The ROE Addendum furthered the partnership between 3Com and Capital 4, and imposed additional obligations on both parties. For example, in addition to its obligations under the Strategic Alliance Agreement, Capital 4 agreed, among other things, to deposit its Source Code into escrow, train a 3Com Power of $Zero Program Representative and the Representative's designees to effectively teach the Power of $Zero program to others, and develop an online portal to explain all aspects of the Power of $Zero program.

23.     3Com, in turn, agreed, among other things, to fund the development of the Capital 4 Source Code, to "assume primary responsibility for rolling out the 3Com Power of $Zero Solution, through its network of Partners/Resellers," and to sponsor marketing programs to further sales of the Power of $Zero program.

24.     3Com also agreed to establish a pace for the rollout of the Power of $Zero program that would ultimately result in at least one 3Com VAR marketing the program in thirty-five separate markets in the United States.

25.    As discussed below, 3Com failed to rollout the Power of $Zero program as represented and promised to Capital 4.

### The VoIP Platform Fails

26.    Beginning in or about May 2005, Capital 4's customers began experiencing service disruptions and malfunctions in connection with the Public Access Services being provided through Level 3's VoIP platform.

27.    Upon discovering these service problems, Capital 4 investigated the source of the problem and eventually discovered that the problems were caused by failures of Level 3's network and the Soft Switch it purchased from 3Com.

28.    In order to maintain the quality and reliability of Power of $Zero customers' telecommunications services, Capital 4 arranged for the Public Access Services to be provided by retail and, where available, wholesale telecommunications carriers, resulting in a significant and unexpected increase in the cost to Capital 4 for Public Access Services.  The VoIP failure also resulted in substantial expenses to Capital 4 in connection with transitioning the customers off of the VoIP platform and back onto the retail or wholesale carriers' platforms.

29.    Although Capital 4 knew that transferring Power of $Zero customers off of the VoIP network and onto the wholesale and retail carriers' networks would result in a significant increase in costs to Capital 4, leading to temporary operating losses, the reliability and integrity of Power of $Zero customers' Public Access Services was of paramount importance.

30.    As a result, Capital 4's costs began to exceed the revenues being generated through the Power of $Zero program, and Capital 4 eventually experienced cash flow problems.

31.    At all relevant times, 3Com was fully aware of the VoIP system failures and Capital 4's cash flow problems, which were partially caused by the defective Soft Switch solution it designed, engineered, and sold to Capital 4.

32.    3Com worked extensively with Capital 4 to address the VoIP system failures and to help develop an optimized VoIP platform by continually bringing to Capital 4 new solution providers to test and implement. Capital 4 relied on the expertise of 3Com to stabilize and further develop and scale the VoIp solution that it had designed, engineered, and sold to Capital 4.

### 3Com Agrees to Acquire the Power of $Zero Program

33.    Notwithstanding the fact that 3Com was intimately aware of the VoIP platform failures and resulting cash flow problems for Capital 4, 3Com represented to Capital 4 that it was interested in expanding its relationship with Capital 4 and the Power of $Zero Program, and that it desired to eventually take full control of all aspects of the Power of $Zero program.

34.    On or about March 21, 2006, 3Com and Capital 4 entered into a Letter of Intent outlining its desire to extend the Strategic Alliance Agreement and the ROE Addendum so as to enable 3Com to market a "3Com Branded Power of $Zero Solution."

35.    On or about November 10, 2006, 3Com and Capital 4 simultaneously entered into two separate agreements -- the License Agreement and the Operations

Agreement -- which, taken together, were designed to allow 3Com to take full control of all aspects of the Power of $Zero program, including providing Public Access Services, for all Customer Agreements executed after a predetermined "Cut Date."

36.     The Cut Date was initially set for February 1, 2007, but was extended at the request of 3Com to April 1, 2007.

37.     In consideration for receiving full control of the Power of $Zero program, 3Com promised to rollout the Power of $Zero program on a national and international basis and to pay a license fee to Capital 4 for each customer agreement that 3Com entered into after the Cut Date.

38.     In light of Capital 4's cash flow problems, which 3Com was aware of, 3Com also agreed to make a $5,000,000 prepayment of license fees to Capital 4, which would be repaid to 3Com through a reduction of the license fee until the prepayment was fully repaid.

39.     Use of the proceeds of the $5,000,000 prepayment was left solely to Capital 4's discretion, except that Capital 4 was obliged to use a portion of the proceeds to (i) pay all undisputed past due amounts to underlying wholesale service providers and retail service providers, and (ii) pay 3Com the balance due in regard to Capital 4's previous equipment purchases from 3Com.

40.     Pursuant to the License Agreement and Operating Agreement, and in various other representations and projections made by 3Com to Capital 4, 3Com promised to ramp up the Power of $Zero program to cut costs and substantially increase sales through its vast network of VARs.

41.     In this regard, section 3.3 of the Operations Agreement expressly requires 3Com to use commercially reasonable efforts to actively recruit one or more 3Com VARs to sell the Power of $Zero program in each of at least eighteen major markets, with the goal of attaining 3Com VAR participation in at least eighteen active markets by May 31, 2007.

42.     Similarly, section 4.1.2 of the License Agreement states that "[t]here is an absolute expectation that 3Com will use its market power to fully develop and deploy the POZ Program, including the establishment of processes to facilitate scalability."

43.     Based on 3Com's representations to Capital regarding the rollout of the Power of $Zero program, Capital 4 was led to believe that it would receive a minimum of $12,000,000 in license fees in calendar year 2007, which would allow Capital 4 to reverse its cash flow problem and become profitable.

44.     At all relevant times, 3Com was aware that Capital 4 was continuing to experience cash flow problems and that its ability to turn cash flow positive was completely dependant on 3Com's execution of its obligations under the License Agreement and Operations Agreement.

45.     To address Capital 4's cash flow problems and to protect Power of $Zero customers from the interruption, temporary suspension or cancellation of Public Access Services in the event 3Com did not generated the license fees everyone expected, the parties inserted a provision into the Operations Agreement that required 3Com to assume Capital 4's obligations under Power of $Zero Customer Agreements if Capital 4 was temporarily unable to perform those obligations.

46.    Accordingly, 3Com and Capital 4 agreed to include in the Operations Agreement section 4.3, known as the "'Go Dark' Solution," which requires 3Com to assume responsibility for the payment of Public Access Services for Power of $Zero customers under certain circumstances.

47.    Due to 3Com's failure to rollout the Power of $Zero program as promised, Capital 4 did not receive license fees in an amount anywhere near what it anticipated based on the representations and sales forecasts by 3Com.

48.    As a result of 3Com's failure to perform as promised, Capital 4's cash flow problems continued to deteriorate.

49.    3Com was at all times aware of Capital 4's cash flow problems.

50.    In early August 2007, Capital 4 requested from 3Com additional advances against future license fees so that it can continue to make the necessary payments to the telecommunications' carriers on behalf of Power of $Zero customers.

51.    3Com provided Capital 4 with a cash infusion in early August 2007. However, due to 3Com's continued failure to rollout the Power of $Zero Program as promised and to generate license fees as promised, the August 2007 cash infusion would prove to be a temporary fix. As Capital 4 explained to 3Com, a more holistic solution -- one that would provide Capital 4 with additional time to complete its ongoing efforts to reduce its costs by migrating existing Power of $Zero customers onto a working VoIP platform while 3Com addressed its failure to generate license fees -- was necessary.

52.    When Capital 4 approached 3Com with a request for another cash infusion in September 2007, 3Com flat out refused to provide Capital 4 with any further license fee advances or any other form of capital.

53.     3Com also refused to honor its obligations under the "Go Dark" provision, even though 3Com had previously purported to invoke the provision.

54.     In September 25, 2007, after exhausting all efforts to find a solution to its cash flow problems, and in order to prevent the interruption of the Power of $Zero customers' Public Access Services, Capital 4 sent a correspondence to Power of $Zero customers informing them of the situation and advising them to contact their telecommunications carriers and/or 3Com.

## AS AND FOR A FIRST COUNTERCLAIM
### (Breach of Contract)

55.     Capital 4 repeats and realleges the allegations in paragraphs 1 through 54, *supra*, as though fully ser forth herein.

56.     Section 3.3 of the Operations Agreement expressly requires 3Com to use commercially reasonable efforts to actively recruit one or more 3Com VARs to sell the Power of $Zero program in each of its major markets, with the goal of attaining 3Com VAR participation in at least eighteen active markets by May 31, 2007.

57.     Section 4.1.2 of the License Agreement states that "[t]here is an absolute expectation that 3Com will use its market power to fully develop and deploy the POZ Program, including the establishment of processes to facilitate scalability."

58.     3Com breached the above referenced terms of the License Agreement and Operations Agreement by failing to ramp up a single new VAR to participate in the Power of $Zero program, and by failing to develop and deploy the Power of the $Zero program in a timely manner.

59.    Section 4.3 of the Operations Agreement required 3Com to assume Capital 4's obligations under the Power of Zero Customer Agreements in the event Capital 4 was temporarily unable to honor its obligations under existing Power of $Zero Customer Agreements.

60.    Capital 4 informed 3Com that, as a result of 3Com's failure to deploy the Power of $Zero program, Capital 4 was temporarily unable to honor its obligations under existing Power of $Zero Customer Agreements.

61.    3Com materially breached the Operations Agreement by refusing to assume Capital 4's obligations under the Power of $Zero Customer Agreements

62.    Capital 4 has sustained significant damages as a result of 3Com's material breaches of the License Agreement and Operations Agreement, including but not limited to the loss of value of its business, loss of goodwill, loss of revenues, and other monetary damages in an amount to be determined at trial.

## AS AND FOR A SECOND COUNTERCLAIM
### (Breach of the Duty of Good Faith and Fair Dealing)

63.    Capital 4 repeats and realleges the allegations in paragraphs 1 through 62, *supra*, as though fully ser forth herein.

64.    3Com breached the implied covenant of good faith and fair dealing by, among other things, failing to develop and deploy the Power of $Zero program in good faith, providing Capital 4 with false and misleading sales promises regarding the revenues and license fees that would be generated in connection with the Power of $Zero program, failing to prevent Power of $Zero customers from experiencing the loss and/or

32

disruption of their Public Access Services, and by essentially abandoning the Power of $Zero program.

65.    Capital 4 has sustained significant damages as a result of 3Com's breach of the covenant of good faith and fair dealing, including but not limited to the loss of its business, loss of goodwill, loss of revenues, and other monetary damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fraud)

66.    Capital 4 repeats and realleges the allegations in paragraphs 1 through 65, *supra*, as though fully ser forth herein.

67.    3Com falsely represented to Capital 4 that it would use its market power and financial strength to reduce the costs associated with the Power of $Zero program and to grow the Power of $Zero customer base.

68.    3Com further falsely represented to Capital 4 that it would achieve revenues through the Power of $Zero program in an amount sufficient to generate at least $12,000,000 in license fees to Capital 4 in calendar year 2007.

69.    3Com made these representations with the knowledge that Capital 4 was experiencing temporary cash flow problems, and that Capital 4 would rely on 3Com's representations and promises.

70.    3Com's representations were intentionally false and misleading, and were made for the purpose of inducing Capital 4 to license to 3Com the valuable intellectual property it had developed in connection with the Power of $Zero program.

71.     In reality, 3Com had no intention of living up to its promises to scale and grow the Power of $Zero program, but instead was interested only in generating short-term revenue gains through the sale of 3Com equipment as part of the Power of $Zero program.

72.     Capital 4 reasonably relied to its detriment on 3Com's misrepresentations and/or omissions.

73.     Capital 4 has sustained significant damages as a result of 3Com's fraudulent behavior, including but not limited to the loss of its business, loss of goodwill, loss of revenues, and other monetary damages in an amount to be determined at trial.

## AS AND FOR A FOURTH COUNTERCLAIM
### (Declaratory Judgment)

74.     Capital 4 repeats and realleges the allegations in paragraphs 1 through 73, *supra*, as though fully ser forth herein.

75.     3Com has materially breached the terms of the License Agreement and the Operations Agreement.

76.     Notwithstanding 3Com's breach of the agreements, 3Com contends that it is no longer bound by the terms of the agreements, including its obligation to pay Capital 4 a license fee on future transactions in which it utilizes the Power of $Zero program.

77.     Therefore, an actual controversy exists in regard to 3Com's duties and obligations under the License Agreement and Operations Agreement.

78.     Capital 4 seeks a declaration that 3Com remains bound by the terms of the License Agreement and Operations Agreement, including the obligations to remit license fees to Capital 4 and to rollout the Power of $Zero program as promised.

WHEREFORE, Capital 4 respectfully requests that this Court enter judgment on its counterclaims as follows:

      (1)    Awarding Capital 4 monetary damages in an amount to be determined at trial;

      (2)    Declaring that 3Com remains bound by the terms of the License Agreement and Operations Agreement and that Capital 4 is entitled to receive a license fee on any and all future sales utilizing the Power of $Zero program; or in the alternative, declaring that Capital 4 is relieved of its obligation to repay any and all advances and loans it has received from 3Com;

      (3)    Awarding Capital 4 monetary damages in an amount to be determined at trial as equitable relief in relations to 3Com's unjust enrichment;

      (4)    Awarding Capital 4 punitive and/or exemplary damages in an amount to be determined at trial

      (5)    Awarding Capital 4 reasonable attorneys' fees, costs and expenses in this action; and

      (6)    Awarding Capital 4 such other and further relief as this Court deems just and proper.

## JURY DEMAND

Capital 4 hereby demands a jury trial as to all issues so triable.

Dated: November 23, 2007
      New York, New York

                      WINGET, SPADAFORA &
                      SCHWARTZBERG, LLP

By: /s/ Luigi Spadafora
     Luigi Spadafora (LS-8471)
     Thomas Vays (TV-2112)
     45 Broadway, 19th Floor
     New York, New York 10006
     (212) 221-6900

     *Attorneys for the defendants Captial*
     *4, Inc, F. Davis Dawson and Ish*
     *Villa-Lobos.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

3COM CORPORATION,                          :
                                           :
                    Plaintiff,             :          Index No. 07 Civ. 8707 (JSR)(JDF)
                                           :
        -against-                          :
                                           :
CAPITAL 4, INC., F. DAVIS                   :
DAWSON, and ISH VILLA-LOBOS,               :
                                           :
                    Defendants.            :

-----------------------------------------------------------------x

## STATEMENT REGARDING DELAYED FILING

As a result of an ECF service interruption from November 21, 2007 at 4 pm est.

until November 26, 2007 at 8:30 am est., the filing of the attached answer and

counterclaim was delayed from the due date of November 23, 2007 until November 26,

2007. The attached answer and counterclaim was served on counsel for the plaintiff via

electronic mail on November 23, 2007.


Dated: November 26, 2007
       New York, New York


                              WINGET, SPADAFORA &
                              SCHWARTZBERG, LLP


                              By:/s/ Thomas Vays
                                 Thomas Vays (TV-2112)
                                 45 Broadway, 19th Floor
                                 New York, New York 10006
                                 (212) 221-6900