UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

3COM CORPORATION,

    Plaintiff,

v.

CAPITAL 4, INC., et al.,

    Defendants.

Civ. No. 07-Civ.-8707(JSR) (JDF)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR CONTEMPT AND FOR A DETERMINATION
THAT CAPITAL 4 HAS WAIVED ATTORNEY-CLIENT PRIVILEGE**

Daniel E. Rosenfeld (DR 4624)
Eileen E. Pott (admitted *pro hac vice*)
DLA Piper US LLP
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6100
*Counsel for Plaintiff 3Com Corporation*

**TABLE OF CONTENTS**

I. STATEMENT OF RELEVANT FACTS ................................................................................ 1

    A. The Parties, the Power of $Zero Program and Capital 4's Unraveling .............................. 1

    B. 3Com's Claims Against Capital 4 and 3Com's Request for Injunctive Relief................... 2

    C. Capital 4's Defamation of 3Com and 3Com's Request for Injunctive Relief .................... 3

    D. The Stipulated Injunction Prohibits Further Defamation of 3Com .................................... 4

    E. Capital 4 and Hughes Violated the Stipulated Injunction by Defaming 3Com................... 4

    F. Hughes' Solicitation of Former Capital 4 Customers.......................................................... 4

    G. Hughes' Defamatory Statements Concerning 3Com........................................................... 6

    H. Capital 4 and Hughes Cooperate in Filing a Lawsuit Against 3Com................................. 7

    I. Hughes' Continued Representation of Capital 4's Former Customers is Consistent with Capital 4's Initial Consent ................................................................................................... 8

II. ARGUMENT.............................................................................................................................. 9

    A. Legal Standard for Contempt............................................................................................... 9

    B. Hughes is in Contempt of the Stipulated Injunction......................................................... 10

    C. Capital 4 is in Contempt of the Stipulated Injunction by Virtue of its Voluntary Waiver of its Attorney-Client Privilege in Aid of Hughes' Further Defamation of 3Com ............... 10

    D. Capital 4's and Hughes' Bad Faith Weigh in Favor of a Finding of Contempt ............... 12

III. CONCLUSION……………………………………………………………………………..13

# TABLE OF AUTHORITIES

## FEDERAL CASES

A.V. By Versace, Inc. v. Gianni Versace S.p.A., 446 F.Supp.2d 252, 257 (S.D.N.Y. 2006)...................................................................................................................9

Apex Municipal Fund v. N-Group Securities, 841 F.Supp. 1423, 1426 (S.D. Tex. 1993)............10

Securities & Exchange Commission v. Brady, 238 F.R.D. 429, 439 (S.D. Tex. 2006) ................11

## DOCKETED CASES

De Lage Landen Financial Services, Inc. v. Capital4, Inc., No. 07-3262 (E.D. Pa.) .......................5

Technology Warranty Sys. v. Capital 4 Outsourcing, Inc., et al., (C.A. No. MICV2006-02259-D, Middlesex Superior Court, Massachusetts)…..………………………………………5

Texas Network of Youth Services v. 3Com Corp., No. 2008-14915 (11th Judicial District Court, Harris County, Texas)......................................................................................7

Plaintiff, 3Com Corporation ("3Com") moves the Court for an order finding: (1) that Defendant Capital 4, Inc. ("Capital 4")[1], its (former) counsel Simon H. Hughes and The Hughes Law Firm, P.C. (collectively, "Hughes") are in contempt of the Stipulated Temporary Restraining Order and Preliminary Injunction issued by the Court on November 2, 2007 in connection with the above-captioned action ("Stipulated Injunction"); and (2) that Capital 4 has waived the attorney-client privilege in connection with its business involving the Power of $Zero program.

I. **STATEMENT OF RELEVANT FACTS**

　　A. **The Parties, the Power of $Zero Program and Capital 4's Unraveling**

3Com manufactures telecommunications equipment, which it sells through value added resellers ("VARs") which typically provide additional "value added" services to purchasers of the equipment, such as installation and maintenance services. Capital 4 was a 3Com VAR which sold 3Com telecommunications equipment under a program called the "Power of $Zero."[2]

Under the Power of $Zero program, in exchange for one monthly payment, Capital 4 agreed to provide customers with: (1) 3Com telephones; and (2) telecommunications services. Complaint ¶¶ 14-17. Specifically, Capital 4 entered into agreements with customers, and in order to finance the cost of new equipment, Capital 4 monetized the value of the Power of $Zero contracts it entered into with customers by arranging with a financial institution for a loan to the

---

[1] 3Com notes that further factual discovery concerning whether F. Davis Dawson and Ishmael Villa-Lobos' individual conduct pertaining to the issues raised in this motion may be required in order to determine whether either of the individual defendants is in contempt of the Stipulated Temporary Restraining Order and Preliminary Injunction issued by the Court on November 2, 2007 and/or has waived the attorney-client privilege.

[2] 3Com and Capital 4 co-marketed the Power of $Zero program.

customer (in the form of an equipment lease executed by the customer).[3]  Complaint ¶¶ 18, 25-26.

Capital 4 also entered into an agreement with 3Com in which Capital 4 promised, among other things, to be solely responsible for the provision of telecommunications services to the customers.  See, e.g., Operations Agreement, attached as Exhibit A to the Affidavit of Counsel in support of Plaintiff's Motion for Contempt and for a Determination that Capital 4 has Waived Attorney-Client Privilege and in support of Plaintiff's Motion to Disqualify Simon H. Hughes and Ronald P. Gossett, filed herewith (hereinafter "Counsel Aff.") at § 2.5.1; see also Complaint ¶ 100.

Capital 4 became insolvent in the fall of 2007 and failed to provide telecommunications services to a number of Power of $Zero customers.  See September 25, 2007 "Important Notice" from Capital 4 to customers, attached as Exhibit B to Counsel Aff.  As Capital 4's financial situation deteriorated, Capital 4 falsely stated to customers and to other 3Com business partners that 3Com had breached contractual and/or other obligations to Power of $Zero customers.  See Complaint ¶¶ 68-71; 117-129; see also Exhibit B to Counsel Aff. and September 18, 2007 correspondence from S. Hughes to D. Whitehouse and all 3Com Value Added Resellers, attached as Exhibit C to Counsel Aff.

B. **3Com's Claims Against Capital 4 and 3Com's Request for Injunctive Relief**

3Com initiated this action against Capital 4 and its principals, F. Davis Dawson and Ishmael Villa-Lobos, advancing a number of claims including breach of contract, defamation and trademark infringement.  Specifically, 3Com stated a claim for damages arising out of Capital

---

[3] After 3Com and Capital 4 executed a License Agreement, 3Com ultimately began entering into Power of $Zero customer agreements with customers on its own behalf; however, the conduct forming the basis for the instant motion, upon information and belief, involves customers who entered into customer agreements with Capital 4, and not 3Com.

4's breach of its agreements with 3Com occasioned by Capital 4's failure to provide public access services to Power of $Zero customers. See, e.g., Complaint ¶¶100-101, 110-111. 3Com also sought preliminary injunctive relief as a partial remedy for Capital 4's unlawful conduct.

### C.  Capital 4's Defamation of 3Com and 3Com's Request for Injunctive Relief

3Com's motion for preliminary injunctive relief was in part based upon Capital 4's defamation of 3Com to Capital 4's customers. The specific allegations in 3Com's Memorandum in Support of its Motion for Temporary Restraining Order and Preliminary Injunction included allegations that Capital 4 unlawfully defamed 3Com to Capital 4's customers by falsely stating that 3Com was responsible for the customers' telecommunications services:

> In a [ ] defamatory letter which was addressed to Capital 4's customers who had contracts involving 3Com products, Capital 4 falsely and misleadingly stated, among other things, that "all aspects of the [POZ] solution were turned over to 3Com [as of] November 10, 2006" and that "3Com's unwillingness to continue to support Capital 4 has resulted in [Capital 4's] inability to pay the underlying dial tone service providers and its business future is in jeopardy."

See 3Com's Memorandum in Support of its Motion for Temporary Restraining Order and Preliminary Injunction (DKT No. 5) at p. 21. In addition, 3Com alleged that Capital 4 defamed 3Com to 3Com's value added resellers ("VARs"):

> Capital 4's September 18 letter was transmitted to 3Com and was sent by copy to all 3Com VARs. Not only did the September 18 letter contain an inaccurate history of the dealings between Capital 4 and 3Com, it contained patently false, misleading and defamatory statements concerning 3Com and its business dealings with Capital 4 as well as 3Com's business dealings with its customers and VARs. For instance, within the September 18 letter Capital 4 falsely published to 3Com's VARs that "3Com abandoned its customers and VARs," that "3Com wanted to force Capital 4 into bankruptcy" and that 3Com was "denying its contractual obligations." Each of these statements is patently untrue.

Id.

### D. The Stipulated Injunction Prohibits Further Defamation of 3Com

In connection with 3Com's specific defamation claims, Capital 4 and its principals, stipulated to the entry of the Stipulated Injunction,[4] which provides, in pertinent part, that:

> Capital 4, including its principals, officers, directors, employees, agents, servants, successors and assigns, are hereby ENJOINED and RESTRAINED from making defamatory statements concerning 3Com.

Stipulated Injunction, ¶ 1.

### E. Capital 4 and Hughes Violated the Stipulated Injunction by Defaming 3Com

Notwithstanding their agreement to be enjoined from making defamatory statements concerning 3Com, Capital 4 and Hughes have joined in an effort to continue to publicly blame 3Com for Capital 4's failures to provide customers with telecommunications services. Notably, this is virtually the same conduct that 3Com moved to enjoin in this case. Indeed, the only difference is that Hughes, one of Capital 4's counsel at the time the Stipulated Injunction issued, purports to have terminated his relationship with Capital 4. But, even Hughes admits that his efforts to blame 3Com for Capital 4's failure to provide services to Capital 4's customers was undertaken with Capital 4's consent, and it is beyond dispute that Hughes solicited former Capital 4 customers as clients and, at least on behalf of two of them, made defamatory statements concerning 3Com to the effect that 3Com breached contractual and other obligations to former Capital 4 customers.

### F. Hughes' Solicitation of Former Capital 4 Customers

The non-party discovery 3Com has taken reveals that Hughes actively solicited former Capital 4 customers to engage him to bring claims against 3Com, which claims are predicated on

---

[4] The Stipulated Injunction issued while Capital 4's counsel of record in this action was Winget, Spadafora & Schwartzberg, LLP. Upon information and belief, Mr. Hughes, a Texas lawyer, continued as counsel to Capital 4 through the period in which the Stipulated Injunction was negotiated and participated in arriving at its contents.

substantially similar theories to those defamatory assertions made by Capital 4 and which resulted in 3Com's request for injunctive relief.

In the (so far) most blatantly documented example, Hughes solicited former Capital 4 customer, Evans Ewan & Brady Insurance Agency, Inc. ("Evans Ewan"). Upon information and belief, Hughes' first contact with Evans Ewan arose out of Evans Ewan's dispute with Capital 4 concerning the telecommunications system that Evans Ewan purchased through Capital 4 and leased through De Lage Landen Financial Services ("DLL"). In 2006, Evans Ewan sought to return the telecommunications system and rescind its agreement with Capital 4 and Evans Ewan and Capital 4 entered into a Settlement Agreement and Release. See Settlement Agreement and Release, attached as Exhibit D to Counsel Aff. Hughes negotiated the Settlement Agreement and Release on behalf of Capital 4. The agreement Capital 4 and Evans Ewan entered into apparently called for Capital 4 to make payments to DLL through Hughes in satisfaction of the terms of Evans Ewan's equipment lease with DLL. See Exhibit D.

In the fall of 2007, Capital 4 failed to meet its obligations to make payments in satisfaction of Evans Ewan's equipment lease, and Hughes informed Evans Ewan of Capital 4's failure and suggested that Evans Ewan contact 3Com. See October 4, 2007 e-mail from S. Hughes to P. Kamrath, attached as Exhibit E to Counsel Aff. Thereafter, on November 27, 2007 (a date following entry of the Stipulated Injunction), Hughes wrote to Evans Ewan stating that he "may have a way to assist you with this matter." See November 27, 2007 e-mail from S. Hughes to P. Kamrath, attached as Exhibit F to Counsel Aff.[5] By December 4, 2007, Hughes transmitted

---

[5] Notably, Mr. Hughes did not withdraw as counsel for Capital 4 in a Massachusetts state court proceeding styled Technology Warranty Systems v. Capital 4 Outsourcing, Inc. et al., (C.A. No. MICV2006-02259-D, Middlesex Superior Court, Massachusetts) until December 12, 2007. Mr. Hughes did not withdraw from the Pennsylvania federal court proceeding styled De Lage Landen Financial Services, Inc. v. Capital4, Inc., No. 07-3262 (E.D. Pa.) until December 21, 2007.

another communication to Evans Ewan opining that "the circumstances under which your company purchased the 3Com Power of $Zero Solution provides a sufficient basis for asserting claims against 3Com," that he was "quite familiar with the relevant players in this matter," that he was "still in the process of identifying the core group of Plaintiffs," and that it was his "opinion that once we are ready to file suit, the results should come very quickly."  See December 4, 2007 e-mail from S. Hughes to P. Kamrath, attached as Exhibit G to Counsel Aff.

### G.     Hughes' Defamatory Statements Concerning 3Com

After having solicited Capital 4's former customers, in February of 2008, Hughes sent three demand letters ("Demands") on behalf of three former Capital 4 Power of $Zero customers,[6] including statements on behalf of two of Capital 4's former customers that: "…3Com[ ] deci[ded] to cease providing telecom and data services (as required by the 3Com POZ Agreement)…."

Hughes authored the Demands on behalf of The Bank & Trust Company ("Bank & Trust"), Litchfield Family Practice Center ("LFPC") and Evans Ewan.  See Demands, attached as Exhibits H, I and J to Counsel Aff., respectively.  The Bank & Trust and LFPC Demands purport to advance claims against 3Com and against Main Street National Bank ("MSNB") under the Texas Deceptive Trade Practices Act ("DTPA").  See Exhibits H and I.  Specifically, the Bank & Trust and LFPC Demands assert that Bank & Trust and LFPC relied to their detriment on false representations made by 3Com and by MSNB and that Bank & Trust and LFPC were damaged when Capital 4 (which the Demands refers to as "3Com's provisioning partner") failed to provide telecommunications services.  The Bank & Trust and LFPC Demands seek payment of amounts equal to the difference between the amounts they would have paid

---

[6] The two Demands in which this statement appeared were also transmitted to Main Street National Bank ("MSNB"), the financial institution through which Capital 4 monetized the underlying Power of $Zero agreements.

Capital 4 for their telecommunications services and the amount that they actually are paying for those services as well as Hughes' attorneys' fees. See Exhibits H and I.

### H. Capital 4 and Hughes Cooperate in Filing a Lawsuit Against 3Com

In partial response to the Demands, on March 7, 2008, 3Com told Hughes by a facsimile-transmitted letter, that his representation of former Capital 4 Power of $Zero customers is improper. On Monday, March 10, 2008, before acknowledging receipt of 3Com's letter requesting that he withdraw, Hughes filed an Original Petition, and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Original Petition") against 3Com in Harris County District Court in Texas ("Texas Action")[7] on behalf of eleven (11) plaintiffs ("Texas Plaintiffs"),[8] each of whom is a Capital 4 Power of $Zero customer who has brought claims against 3Com seeking damages allegedly associated with the interruption of their telecommunications services.[9] See, e.g., Original Petition, attached as Exhibit K to Counsel Aff. at ¶¶ 4.3-4.10. Footnote 1 in the Original Petition asserts that:

> Between 2004 and 2007, Plaintiff's counsel, Simon Hughes, represented Capital 4 in various matters. Capital 4 ceased doing business in the fall of 2007. At that time, Hughes terminated his representation of Capital 4, and, with each Court's approval, withdrew from each case in which he had represented Capital 4. While not a conflict, the existence of this prior representation has been fully-disclosed to all Plaintiffs. Similarly, Capital 4 is fully aware of, and does not object to Hughes' representation of Plaintiffs in this litigation against 3Com and other parties.
>
> Exhibit K at n.1 (emphasis supplied).

---

[7] The Texas Action is styled Texas Network of Youth Services v. 3Com Corp., No. 2008-14915 (11th Judicial District Court, Harris County Texas). Neither a Summons nor the Original Petition in the Texas Action was ever served upon 3Com. The Texas Action has been dismissed without prejudice.
[8] The plaintiffs in the Texas Action include the three Power of $Zero customers on behalf of whom Hughes transmitted the Demands to 3Com.
[9] The Original Petition has never been served on 3Com.

On March 11, 2008, in an apparent but belated response to 3Com's March 7 demand, Hughes claimed in writing that he was withdrawing from the representation of the Texas Plaintiffs.[10] See March 11, 2008 e-mail from S. Hughes to D. Rosenfeld, attached as Exhibit L to Counsel Aff.

Also, in response to 3Com's correspondence to Capital 4's New York counsel concerning Capital 4's waiver, Capital 4's New York counsel forwarded to 3Com a copy of an unsigned letter, dated March 10, which purports to have been sent from F. Davis Dawson to Hughes via e-mail but does not attach the e-mail. The body of the letter reads as follows:

> This is to memorialize our recent conversation in which I informed you that Capital 4 does not consent to your representation of Power of $Zero customers in connection with any claims filed against 3Com, De Lage Landen, or any other person or entity affiliated with the Power of $Zero Program. Please be guided accordingly.

See March 10, 2008 correspondence from F. Davis Dawson to Hughes, attached as Exhibit M to Counsel Aff. Notably, the letter does not reflect that Capital 4 never consented to Hughes' representation of Capital 4's former customers.

### I. Hughes' Continued Representation of Capital 4's Former Customers is Consistent with Capital 4's Initial Consent

After Capital 4 provided counsel for 3Com with a copy of Capital 4's unsigned letter, Mr. Hughes and Capital 4 (through its counsel, Mr. Vays) told 3Com's counsel and this Court that

---

[10] Hughes' improper representation of such parties, and improper solicitation of at least one such party, is also the subject of 3Com's Motion to Disqualify Simon H. Hughes and Ronald P. Gossett. On March 31, 2008, Gossett sent 3Com's counsel a letter noting that Mr. Gossett was counsel for Hughes in response to 3Com's subpoenae of Hughes in this action. Later, Gossett also stated that he represents the Texas Plaintiffs, also subpoenaed by 3Com. After 3Com complained that Mr. Gossett's simultaneous representation of the Texas Plaintiffs and Hughes was improper, Hughes informed 3Com's counsel that he had terminated Gossett as his lawyer and while Gossett did not confirm his withdrawal as Hughes' counsel, he confirmed to 3Com's counsel in writing that he could communicate directly with Hughes. Gossett continues as counsel for the plaintiffs in the Texas Action. Upon information and belief, Gossett and Hughes are parties to a fee-splitting arrangement in connection with the representation of the plaintiffs in the Texas Action.

Mr. Hughes had withdrawn as counsel for the former Capital 4 customers.[11] Subsequent to those representations, however, Mr. Hughes served on counsel for 3Com a pleading that Hughes filed in connection with the Texas Action on behalf of the Texas Plaintiffs. See Plaintiff's Notice of Nonsuit, attached as Exhibit N to Counsel Aff. Thus, at a minimum, Hughes' representation to this Court that he had withdrawn was knowingly false. As to Capital 4, Hughes' continued representation of the Texas Plaintiffs demonstrates, at a minimum, that Capital 4 was not reasonably diligent when it purported to revoke its consent to Hughes' representation of the Texas Plaintiffs on March 10, 2008. Capital 4 could have requested that Hughes furnish Capital 4 with a copy of the Texas docket demonstrating his withdrawal from the Texas Action—which request would have demonstrated that the withdrawal had never occurred.

## II. ARGUMENT

### A. Legal Standard for Contempt

A court may impose civil contempt sanctions if: (1) the order violated by the contemnor is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor was not reasonably diligent in attempting to comply. A.V. By Versace, Inc. v. Gianni Versace S.p.A., 446 F.Supp.2d 252, 257 (2006) (internal quotations omitted). In this case, each of these elements is satisfied: the Stipulated Injunction is clear and unambiguous in its prohibition of "defamatory statements concerning 3Com," the proof of non-compliance is demonstrated by documentary evidence, and that documentary evidence establishes that neither Hughes nor Capital 4 was "reasonably diligent" in attempting to avoid making defamatory statements concerning 3Com.

---

[11] In opposing 3Com's application for leave to file this Motion, both Mr. Vays, Capital 4's counsel of record, and Hughes made this representation.

**B.    Hughes is in Contempt of the Stipulated Injunction**

The Stipulated Injunction binds Hughes: Hughes was counsel for and therefore an agent of Capital 4 at the time the Stipulated Injunction issued. As such, and upon information and belief, Mr. Hughes had actual knowledge of the terms of the Stipulated Injunction and their applicability to him personally. As noted, the Stipulated Injunction expressly prohibits "defamatory statements concerning 3Com."

The statement in the Bank & Trust and LFPC Demands that "…3Com[ ] deci[ded] to cease providing telecom and data services (as required by the 3Com POZ Agreement)…" is defamatory: it is false and damaging to 3Com's reputation and goodwill: Capital 4, not 3Com, was responsible for providing Power of $Zero customers with telecommunications services pursuant to the terms of the Power of $Zero customer agreements and pursuant to the terms of Capital 4's agreements with 3Com. See Exhibit A to Counsel Aff. at § 2.5.1; see also Complaint ¶ 100.

**C.    Capital 4 is in Contempt of the Stipulated Injunction by Virtue of its Voluntary Waiver of its Attorney-Client Privilege in Aid of Hughes' Further Defamation of 3Com**

Capital 4's consent to Hughes' scheme to blame 3Com, including his defamatory statements concerning 3Com on behalf of former Capital 4 customers violates the Stipulated Injunction and, under the circumstances, amounts to a voluntary waiver of the attorney-client privilege concerning Capital 4's Power of $Zero business. The burden to establish the applicability of the attorney-client privilege rests on the party invoking it. Apex Mun. Fund v. N-Group Securities, 841 F.Supp. 1423, 1426 (S.D. Tex. 1993) (internal quotation and citation omitted). Further, the proponent of the privilege must establish that the privilege has not been waived. Id. (internal quotations and citation omitted).

Waiver of the attorney-client privilege can occur through disclosure of attorney-client communications to a third party lacking a common legal interest. Securities & Exchange Comm'n v. Brady, 238 F.R.D. 429, 439 (S.D. Tex. 2006). "Moreover, the confidentiality of a client's communications may be compromised either through the publication of evidence of the communications themselves or through the publication of evidence of attorney statements or documents that discloses the client's confidential communications." Id. Capital 4 and Hughes have indicated that they intend to invoke the attorney-client privilege at 3Com's noticed deposition of Hughes, and Hughes has asserted that he will not produce his written communications with Capital 4 in compliance with 3Com's subpoena because he asserts they are all privileged. Accordingly, it is Capital 4's burden to demonstrate that it has not waived that privilege. It cannot do so here.

When Capital 4 consented to Hughes' representation of its former customers, the Texas Plaintiffs, Capital 4 knew that the matter would be substantially related to this action. Consequently, Capital 4 must be charged with knowledge that the Texas Action would implicate Capital 4's confidences held by Mr. Hughes. Capital 4 cannot reasonably claim that its consent would unknowingly result in Hughes' use of Capital 4's privileged and confidential information in connection with Hughes' zealous and diligent representation of the Texas Plaintiffs. In providing its unqualified consent for Hughes to represent the Texas Plaintiffs in the advancement of their claims relating to the Power of $Zero program, Capital 4 necessarily consented to Hughes' use of its privileged and confidential information for the benefit of those customers. Likewise, Hughes' written offer to represent Evans Ewan specifically pledged Hughes' "familiar[ity] with the relevant players in this matter" as an inducement to Evans Ewan to retain Hughes and to become part of Hughes' "core group of Plaintiffs." See Exhibit G.

That privileged information and confidences would necessarily be revealed to the Texas Plaintiffs as the result of Hughes' representation is not merely theoretical. For example, the allegations set forth in the Original Petition filed in Texas state court purport to describe in significant detail Capital 4's business concerning the Power of $Zero program, which knowledge Hughes must have acquired in his capacity as counsel for Capital 4. See Exhibit K at ¶¶ 4.17, 4.20-4.26, 4.3. In addition, Hughes must have determined that the information he obtained concerning Capital 4's business while he was counsel for Capital 4 was necessary to the effective advancement of the Texas Plaintiffs' claims. To that end, the Original Petition itself puts Capital 4's confidential information in issue, an act by Hughes to which Hughes admits Capital 4 consented. See Exhibit K at n. 1.

Capital 4's active participation in or consent to a scheme to further defame 3Com violates the Stipulated Injunction's prohibition of "defamatory statements concerning 3Com." Capital 4 cannot be permitted to continue to defame 3Com by having knowingly armed Hughes with the tools to do so despite the express terms of the Stipulated Injunction. Capital 4 had notice of the factual basis for 3Com's defamation claim, and the relief granted for such defamation, to which Capital 4 consented in the Stipulated Injunction, i.e., Capital 4's and Hughes' baseless claims that 3Com neglected obligations to Power of $Zero customers. Capital 4's transparent attempt to aid the publication of further defamatory statements concerning 3Com damages 3Com and violates the Stipulated Injunction.

### D. Capital 4's and Hughes' Bad Faith Weigh in Favor of a Finding of Contempt

Capital 4's and Hughes' bad faith and malice in participating in this scheme are evident: Capital 4 and Hughes are certainly aware that defamatory statements such as those contained in the Bank & Trust and LFPC Demands are precisely the types of defamatory statements intended

to be prohibited by the Stipulated Injunction.  Each knew that the factual basis for including a provision enjoining further defamatory statements concerning 3Com involved, among other things, letters from Hughes to Capital 4 customers and 3Com business partners which contained false and defamatory statements to the effect that 3Com bore contractual and/or other obligations to Power of $Zero customers that 3Com did not bear, such as: "3Com abandoned its customers…"  See Exhibit C to Counsel Aff.  Capital 4's consent to Hughes' reprise of this concept on behalf of former Capital 4 customers is contemptuous of the Stipulated Injunction.

### III.     CONCLUSION

For the foregoing reasons, 3Com respectfully requests that this Court enter an order finding that Capital 4 and Simon Hughes are in contempt of the Stipulated Injunction, and that Capital 4 has waived the attorney-client privilege with regard to Capital 4's Power of $Zero business.  3Com respectfully requests further that the Court and grant such other and further relief as justice requires.

Respectfully submitted,

___/s/ Daniel E. Rosenfeld_____
Daniel E. Rosenfeld (DR 4624)
Eileen E. Pott (admitted *pro hac vice*)
DLA Piper US LLP
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6100
*Counsel for Plaintiff 3Com Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May, 2008, a true and correct copy of the foregoing document was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

I also certify that on this date the foregoing was served, via electronic mail and via United Parcel Service, on the following:

Ronald P. Gossett, Esq.
Gossett & Gossett, P.A.
4700 Sheridan Street, Building I
Hollywood, FL 33021
RonGossett@gossettlaw.com

Simon H. Hughes, Esq.
The Hughes Law Firm, P.C.
13280 Northwest Freeway, No. F-400
Houston, TX 77040
Simon@hugheslegal.com

Thomas Vays, Esq.
Winget, Spadafora & Schwartzberg, LLP
45 Broadway, 19th Floor
New York, NY 10006
Vays.T@wssllp.com

_____*/s/ Eileen E. Pott*_____
Eileen E. Pott