reconciliations, and reconciliation and remittance of payments from funded projects, including payments to Customers (if applicable) or others, in connection with any 3Com POZ Program Customer Agreements submitted. The department shall also include the ability to provide adequate technical, billing, and service support to the 3Com POZ Program and to the 3Com POZ VARs.

3.8  3Com POZ Program VAR Support Center

3Com shall provide a commercially reasonable VAR Support Center to provide technical, billing, and service support to the 3Com POZ Program and to the 3Com POZ VARs.

3.9  3Com POZ Program Partner Express Extended Warranty

3Com shall offer 3Com POZ Partner Express Services to the 3Com POZ VAR, under the terms and conditions similar to those set forth in the current POZ Partner Express Service Agreement.

3.10  CRM Development

3Com shall provide for or contribute to the development of CRM platforms that will fully support the reporting, visibility, and production goals of the 3Com POZ Program. Pursuant to the terms and conditions set forth in the License Agreement, Program Abandonment, as contemplated in Section 4.3 of the License Agreement and expiration of the License Agreement, are conditions precedent to continued access to the CRM by Capital 4.

3.11  Deal Approval

For all Customer POZ™ Agreements entered into prior to 3Com outsourcing all POZ™ Back Office Services, 3Com and Capital 4 must approve each POZ™ transaction prior to execution by the Customer. As such, 3Com will ensure that an approval process is developed that automates and streamlines this requirement. Capital 4 and 3Com will designate authorized approval authorities to fulfill this purpose.

3.12  VAR Reconciliation Report Process

Until such time as all POZ™ Back Office Services have been outsourced by 3Com, Capital 4 shall have the right to review the VAR Reconciliation Report before it becomes the basis of the funding disbursement instructions to the funding source. 3Com will provide for a mutually acceptable and automated solution to this requirement, developed collaboratively with Capital 4, allowing Capital 4 review of such VAR Reconciliation Reports in accordance with Section 2.7 of the License Agreement, prior to and after the completion of 3Com's outsourcing of all POZ Back Office Services. Capital 4 shall respond to 3Com, in writing, with any objections or requested changes within two (2) business days of receiving a VAR Reconciliation Report for review. Failure to respond within two (2) business days shall constitute a waiver by Capital 4 to raise any further objections to the VAR Reconciliation Report in question.

## Section IV.  Termination and "Go Dark" Solution

### 4.1  Term

The term of this Operations Agreement expires upon successful completion of all, but not less than all, outsourcing of Back Office Services and the establishment of the Long Term Funding Solution.

### 4.2  Termination for Cause

Either Party may terminate this Agreement: (i) upon written notice to the other Party if such Party fails to perform or otherwise breaches any of its material obligations under this Operations Agreement (after thirty (30) calendar days written notice of such breach and opportunity to cure, if curable); (ii) except for the terms and conditions set forth in Section 4.3 below, if either Party files a petition in bankruptcy, is unable to pay its debts when due, becomes insolvent, or dissolves; or (iii) if the other Party undergoes a material change of ownership that in the terminating Party's reasonable discretion, may have an adverse impact on the terminating Party's business or rights under this Operations Agreement. Within ten (10) days of the expiration or termination of this Agreement, each Party shall promptly notify the other Party of all of such other Party's Confidential Information in its possession, and shall promptly return all such Confidential Information, or provide written certification (by affidavit) as to its destruction.

### 4.3  "Go Dark" Solution

4.3.1  In order to further protect the POZ™ Program by preventing the interruption, temporary suspension or cancellation of services provided by Public Access Assets Service providers to POZ™ Customers under the POZ™ Customer Agreements, existing prior to and during the term of this Operations Agreement, and until the expiration of all POZ™ Customer Agreements, prior to and during the term of this Operations Agreement, and only in connection with Capital 4's obligations as set forth in these POZ™ Customer Agreements, Capital 4 will make commercially reasonable efforts to (a) timely fulfill its obligations as contemplated in the POZ™ Customer Agreements, unless and only to the extent that the same shall be contested in good faith due to alleged breaches of covenants by Customers, or any other circumstances beyond the control of Capital 4; (b) do all things necessary to preserve and maintain its rights, under the POZ™ Customer Agreements in which failure to do so could reasonably be expected to have a Material Adverse Effect on either Capital 4 or 3Com; and (c) cause the POZ™ Property to be protected, maintained and kept in good standing as may be reasonably necessary to conduct its business properly and efficiently. For purposes of this Agreement, "Material Adverse Effect" shall mean (a) any material adverse effect on the business, condition (financial or otherwise), operations, or properties of Capital 4 or 3Com, or (b) any material adverse effect on the ability of Capital 4 to perform its obligations under this Operations Agreement or the License Agreement.

4.3.2  Should Capital 4 become insolvent, declare bankruptcy, or otherwise fail to comply with any of the covenants set forth in Sections 4.3.1 above and 2.5.1, 2.5.2, and 2.5.3 of this Operations Agreement, Capital 4 shall provide immediate written notice and/or allow notice to be provided by Public Access Assets Service providers, as the case may be, (collectively the

"Notice") to 3Com asserting the occurrence of any such event or eminent event. Capital 4 shall immediately commence negotiations in an effort to demonstrate to 3Com that it has negotiated acceptable terms with any affected Public Access Asset Service provider to ensure the uninterrupted service to the POZ™ Customers, under the terms and conditions of the existing POZ™ Customer Agreements. If an event of eminent interruption of service is not remedied by Capital 4 through negotiation of acceptable terms with the Public Access Asset Service provider(s), or, in the event that Capital 4 is unable to secure a reasonable cure period from the underlying service provider(s), 3Com, at its sole discretion, may assist Capital 4, financially or otherwise, under terms and conditions agreed upon by the Parties, to remedy or cure any such default under the Public Access Assets Service agreements.

    4.3.3    3Com and Capital 4 shall cooperate with one another to implement the following actions immediately following commercially reasonable indications: (i) of Capital 4's intent to declare itself insolvent; or (ii) that Capital 4 is otherwise temporarily unable to honor its obligations under the existing POZ™ Customer Agreements:

    (a)    Capital 4 shall produce a residual analysis and portfolio report (the "Report") to 3Com. The Report will identify:

1. All existing Public Access Asset Service Providers;

2. All existing POZ™ Customers;

3. All Residual Funds associated with the existing POZ™ Customer Agreements and the source of the funds;

4. All required payments to the Public Access Asset Service Providers associated with the existing POZ™ Customer Agreements;

5. For any projects in process, current carrying costs and estimated post-conversion costs;

6. Net Contract Value as calculated by: (Total POZ™ Customer Agreement Remaining Payments) minus (Total Funding Source Remaining Payments) minus (Total estimated Public Access Asset Service Provider Payments) for each POZ™ Customer Agreement; and

7. Total 3Com Exposure is calculated as: Total Net Contract Value of the affected POZ Customer Agreements. If the Total 3Com Exposure is a deficit, 3Com shall have the right to an additional administrative fee not to exceed 5% of such deficit..

    (b)    Capital 4 shall assign any and all services performed by Capital 4 in accordance with the terms of this Operations Agreement,

          including but not limited to, functionality of the POZ™ Property and POZ™ Back Office Services, to 3Com or any person or entity designated in writing by 3Com; and

(c)  Capital 4 shall assign all rights to all Residual Funds associated with the existing Capital 4 POZ™ Portfolio to 3Com, directing all funding sources or customers, as the case may be, to remit the Residual Funds payments directly to 3Com until the expiration of each POZ™ Customer Agreement term.

(d)  3Com shall assume all of the obligations of any and all Public Access Assets Service agreements entered into by Capital 4 in connection with 3Com Power of $Zero Customer Agreements. 3Com shall satisfy payment of such obligations with the Residual Funds associated with Capital 4's POZ portfolio; provided, however, that the Total 3Com Exposure, as identified in the 3Com Report, shall remain Capital 4's obligation to 3Com and 3Com shall be entitled to withhold from the Licensor's Fees an amount sufficient to satisfy the deficit, if any, on a monthly basis, equal to the Net Contract Value of each 3Com Power of $Zero Customer Agreement divided by the number of months remaining for each such agreement (the "Hold Back"). Notwithstanding the foregoing, the Hold Back shall not exceed fifty (50%) percent of the Licensor's Fees for any given month, net of any prepayment facility allocation as contemplated in the License Agreement. Capital 4 may elect to satisfy the Total 3Com Exposure (if a deficit) through a mutually acceptable alternate proposal.

(e)  For projects in process, 3Com agrees to use the estimated post conversion costs in calculating the Total 3Com Exposure, after an additional grace period of ninety (90) days from the date of the Notice under to complete any outstanding projects in progress.

4.4 Effect of Termination by 3Com for Cause.
In addition to any other rights to which 3Com may be entitled as set forth in this Agreement or in law, in the event that this Agreement is terminated by 3Com pursuant to Section 4.2 or 4.3 above, Capital 4 shall cooperate with 3Com in facilitating the assignment to 3Com of the following: (a) all affected POZ™ VAR and 3Com Customer Agreements in the possession of Capital 4 and which Capital 4 is a Party, and (b) all rights to the Residual Funds associated with the affected POZ Customer Agreements, and (c) cease direct communications with all 3Com POZ™ VARs even if prior written authorization was granted.

4.5 Survival. In addition to those rights and responsibilities that by their very nature survive expiration or termination of this Agreement, the following provisions of this Agreement shall survive expiration or termination: Section 2.5.1, 2.5.2, 2.5.3, 2.5.4, 3.4, 3.5, 3.6, 3.7, 3.8, 3.9, 3.10, 4.3, 5, 6 and 7.

## Section V.   Indemnification

5.1   Mutual Indemnification

Each Party, (the "Indemnifying Party") shall defend, indemnify and hold harmless the other Party and all of its directors, officers, employees, shareholders, principals, partners, representatives, and agents (each an "Indemnified Party") from and against any third party claims, losses, judgments, costs, or expenses (collectively the "Claims") in connection with any Claim by a third party arising out of or resulting from: (a) the gross negligence or willful misconduct of the Indemnifying Party; or (b) a material breach of the terms or conditions of this Agreement. Neither Party's indemnification obligation shall extend to claims to the extent resulting from the negligence or willful misconduct of the Indemnified Party.

In all cases, the Indemnified Party shall provide prompt written notice of a Claim to the Indemnifying Party. The Indemnifying Party shall have sole control of the defense and settlement of such Claim, provided that the Indemnifying Party shall not settle any such Claim without the prior written consent of the Indemnified Party, which shall not be unreasonably withheld, delayed, or conditioned. The Indemnified Party shall reasonably cooperate with the Indemnifying Party in the defense and settlement of such claim.

5.2   Limitation of Liability.

EXCEPT FOR THE PARTIES' INDEMNIFICATION OBLIGATIONS SET FORTH IN SECTION 5, NEITHER PARTY SHALL BE LIABLE FOR CONSEQUENTIAL, EXEMPLARY, SPECIAL, INDIRECT, INCIDENTAL, OR PUNITIVE DAMAGES OF ANY KIND, ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, INCLUDING LOSS OF PROFIT, OR LOSS OF BUSINESS OPPORTUNITY, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## Section VI.   Warranties

6.1   Warranty.

The Parties represent and warrant that the services each performs pursuant to this Agreement shall be completed in a professional, workmanlike manner, with the degree of skill and care that is required by current, good and sound professional procedures and practices, and in conformance with the highest industry standards for the completion of such services prevailing at the time.

6.2   Each Party represents that (a) it has full right and power to enter into and perform according to the terms of this Agreement; (b) its performance of activities pursuant to this Agreement shall not violate any agreement or obligation between it and a third Party; (c) it shall comply with all applicable local, state and federal laws, statutes and regulations; (d) its products or services (including any related Intellectual Property), when used in accordance with the terms of this Agreement, do not infringe any copyright, trademark, or to the best of its knowledge, any

U.S. patent issued as of the Effective Date, held by any third Party; and (e) it has all government licenses, permits, or other authorizations necessary to conduct its business.

6.3   EACH PARTY DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT.

**Section VII.   Miscellaneous**

7.1   No Assignment.

Neither Party may transfer or assign this Operations Agreement, or any rights or obligations hereunder, without the prior written consent of the other Party; provided, however, that either Party may, without the consent of the other Party, assign its rights and obligations hereunder to a successor in interest in connection with the transfer of all or substantially all of its assets to such successor corporation through sale of assets, merger, or otherwise.

In addition, and subject to the restrictions set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective, heirs, legal representatives, successors and assigns.

7.2   Governing Law; Submission to Jurisdiction.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereby irrevocably submits to the exclusive jurisdiction and venue of any state court or United States federal court located in New York, New York and any appellate court from any thereof, and waives any immunity from the jurisdiction of such courts over any action, suit or proceeding (a "Proceeding") arising out of or relating to this Agreement. So long as either Party has any obligation under this Agreement, each Party shall maintain a duly appointed agent in New York, New York for the service of process or other legal summons for purposes of any Proceeding and, if it fails to maintain such an agent, any such process or summons may be served on it by mailing a copy thereof by registered mail, or a form of mail substantially equivalent thereto, addressed to such Party at its address as provided for notices hereunder.

7.3   Independent Contractor.

3Com is an independent contractor, and nothing in this License Agreement shall be deemed to create a joint venture, partnership, or agency relationship between the Parties. Except as otherwise contemplated in this Agreement, either Party has the right or authority to assume or create any obligation or responsibility on behalf of the other.

7.4   Force Majeure.

Neither Party shall be liable hereunder by reason of any failure or delay in the performance of its obligations hereunder on account of strikes, shortages, riots, insurrection, fires, floods, storms, earthquakes, acts of God, war, governmental action, labor conditions, or any other cause which is beyond the reasonable control of such Party.

7.5    Amendments.

This Agreement may be modified or amended only by a written instrument duly signed by the Parties hereto.

7.6    Severability.

If any provision contained in this Operations Agreement is determined to be void, illegal, or unenforceable, in whole or in part, then the other provisions contained herein shall remain in full force and effect as if the provision which was determined to be void, illegal, or unenforceable had not been contained herein.

7.7    Notices.

All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally or by facsimile transmission or mailed by registered or certified mail (return receipt requested), postage prepaid, to the Parties at the following addresses (or at such other address for a Party as shall be specified by like notice; provided, that notices of a change of address shall be effective only upon receipt thereof):

    (a)    To Capital 4, as follows:

        Capital 4, Inc.
        1010 N. San Jacinto
        Houston, Texas 77002
        Facsimile: 713-237-1118
        Attn. Dave Dawson, President

    (b)    To 3Com, as follows:

        3Com Corporation
        350 Campus Drive Marlboro
        Massachusetts 01752-3064
        Facsimile:
        Attn.

7.8    Entire Agreement.

This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and, expect for the License Agreement of even date therewith between the Parties,

supersedes and annuls all previous communications, agreements or understandings between them with respect to the subject matter hereof.

7.9    Waiver.

No failure by either Party to take any action or assert any rights arising from any breach or default of this Agreement shall be deemed to be a waiver of such right in the event of the continuation or repetition of the circumstances giving rise to such right.

7.10    Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which together shall be deemed to be one and the same instrument.

IN WITNESS WHEROF, Capital 4 and 3Com have executed this Operations Agreement through their respective duly authorized officers as of the Effective Date.

**Capital 4:**

By: _____
Dave Dawson, President

**3Com Corporation:**

By: _____

_Senior Vice President_.
(Print)