which 3Com sought to license the sales program known as the Power of $Zero™ Solution, including all related intellectual property, for which Capital 4 would receive a licensing fee. In November of 2006, 3Com and Capital 4 executed agreements to that effect.

4.29   Under the agreements, there existed contract provisions to address the entire customer base which had already signed 3Com Power of $Zero™ Solution Customer Agreements. These provisions were intended to assure that 3Com Power of $Zero™ Solution customers would avoid any interruption to telecom and data services, in the event that the Capital 4 was unable to continue to providing telecom and data service.

4.30   By the summer of 2007, insufficient revenues were generated, as expected and anticipated in 3Com's sales projections. When Capital 4 became effectively insolvent, it sought *additional financial assistance* from 3Com, in order to assure that the telecom and data services being provided to the 3Com Power of $Zero™ Solution customers (including Plaintiffs) would not be interrupted. As a condition of interim lending to Capital 4, 3Com mandated modifications to the parties' agreements. Those modifications affected 3Com's obligations concerning the telecom and data services provided to all 3Com Power of $Zero™ Customers (including Plaintiffs) – to assure those services would not be interrupted by reason of Capital 4's financial condition.

4.31   Ultimately, Capital 4 became unable to continue delivering the telecom and data services required by the 3Com Power of $Zero™ Customers (including Plaintiffs), and on September 27, 2007, provided notice to all customers that because of Capital 4's insolvency, each customer would need to acquire telecom and data services through other vendors.

4.32   3Com continues to promote and market the 3Com Power of $Zero™ Solution. 3Com has instituted legal action against Capital 4 in connection with the parties agreements, relationship, and the 3Com Power of $Zero™ Solution.

### The Financing Companies – DLL and Main Street

#### De Lage Landen Financial Services

4.33   Defendant DLL began providing financing for the 3Com Power of $Zero™ Solution in early 2005. 3Com had just begun marketing the program through its "VAR Channel", potentially creating significant financing opportunities for Financing Companies, such as DLL. Intimately familiar with all types of financing programs, DLL, by and through its local authorized

representatives, had ample opportunity to evaluate the 3Com Power of $Zero™ Solution. The marketing model was fully demonstrated and explained to DLL's local representatives, and both demonstrated and explained to his superiors within DLL. In determining whether and how it would participate in the program, DLL and 3Com exchanged information in order to evaluate the level and terms of financing that could be provided in connection with the 3Com Power of $Zero™ Solution.

4.34    At all times, DLL knew, or with the exercise of reasonable care should have known, that the predominant feature of the 3Com Power of $Zero™ Solution was the delivery of telecom and data services. In fact, the terms telecom and data "services" and "Public Access Services" are used dozens of times throughout the 3Com Power of $Zero™ Solution Customer Agreement, in the documents posted under the web portal, and in the promotional materials developed by 3Com and provided to potential customers.

4.35    Upon executing a Program Agreement (which is now the subject of litigation between DLL and Capital 4), DLL embarked upon a path of providing financing for 3Com Power of $Zero™ Solution customers (including Plaintiffs). The mechanism which DLL established facilitated the generation, authorization, approval, and execution of Financing Agreements on a moment's notice. Utilizing this mechanism, DLL funded dozens of 3Com Power of $Zero™ Solution transactions each month, advancing sums paid to Capital 4 and 3Com, and establishing residual income streams based upon the services and equipment delivered and to be delivered under the 3Com Power of $Zero™ Solution.

4.36    From the program's inception, DLL allowed each 3Com Power of $Zero™ Solution customer (including Plaintiffs) to perceive that the payments being remitted to "Capital 4 Financial Services – A Program of De Lage Landen Financial Services" were for both the services and equipment being provided under the 3Com Power of $Zero™ Solution. For each customer (including Plaintiffs), the portion of the monthly payment attributable to equipment, as compared to services, was never distinguished, and each customer (including Plaintiffs) was directed to remit the entire monthly payment directly to DLL. As can be seen, the monthly payment each Plaintiff was instructed to remit to DLL was in almost all cases, identical to the monthly payment due under the 3Com Power of $Zero™ Solution Customer Agreement.

| Plaintiff | 3Com POZ Pmt. | DLL Pmt. |
|---|---|---|
| Texas Network of Youth Services | $450.96 | $450.96 |
| Grace Products, Inc. | $1,971.34 | $1,971.34 |

| | | |
|---|---|---|
| Temsco, Inc. | $4,914.62 | $4,785.14 |
| Evans, Ewan & Brady Insurance Agency, Inc. | $947.13 | $947.13 |
| Comport Network Services and Solutions | $1,706.58 | $1738.08 |
| North Central Communications, Inc. | $3,733.13 | $1,728.19 |
| Zepplin, Inc. d/b/a All Import Auto Parts | $2,021.37 | $2,021.37 |
| Cornerstone Land Surveying | $877.67 | $877.67 |
| SolutionPros | $939.13 | $939.13 |

**Exs. C-1 to C-9 and D-1 to D-9.** Although DLL now claims that it was collecting only a small portion of the payment for services to be provided under the 3Com Power of $Zero™ Solution Customer Agreement, as a pass through, this was certainly not the perception of the customers (including Plaintiffs). Moreover, following Capital 4's insolvency in the fall of 2007, DLL provided notice to each customer (including Plaintiffs) that it would now be reducing the customer's monthly payment under the Financing Agreement because the telecom and data services to be delivered under the 3Com Power of $Zero™ Agreement were no longer being provided. *See, e.g.* **Ex. F-1.**

4.37   Even assuming that the Financing Agreements were only for equipment, as DLL contends, DLL's actions demonstrate a pattern and practice of significantly overvaluing that equipment, potentially rendering those agreements usurious. In addition, because the Financing Agreements between each Plaintiff and DLL are for both services and goods, the agreements are not subject to the Uniform Commercial Code, and the agreements can be cancelled by reason of the breach of the 3Com Power of $Zero™ Solution Customer Agreement.

4.38   Each Plaintiff's Financing Agreement with DLL is not a "Finance Lease" as defined in Article 2A of the Uniform Commercial Code: It is part-and-parcel of the 3Com Power of $Zero™ Solution, and it is clearly with Plaintiffs' right to litigate all claims arising out of or related to the 3Com Power of $Zero™ Solution Customer Agreements, including the claims based upon the DLL Financing Agreements, here in Texas.

Main Street National Bank

4.39   Defendant Main Street began providing financing for the 3Com Power of $Zero™ Solution in 2006. By this time, 3Com and DLL had demonstrated the significance of the opportunity for financing companies, such as Main Street. Intimately familiar with all types of financing programs, Main Street, by and through its officers, was afforded ample opportunity to evaluate the 3Com Power of $Zero™ Solution. The program, under which potential customers were encouraged "to entrust your *telecom services* to the 3Com Power of $Zero program", constitutes a services and

equipment offering. The marketing model was fully demonstrated and explained to Main Street's executives.

4.40  At all times, Main Street knew, or with the exercise of reasonable care should have known, that the predominant feature of the 3Com Power of $Zero™ Solution was the delivery of telecom and data services. In fact, the terms telecom and data "services" and "Public Access Services" are used dozens of times throughout the 3Com Power of $Zero™ Solution Customer Agreement, in the documents posted under the web portal, and in the promotional materials developed by 3Com and provided to potential customers.

4.41  Upon executing the Program Agreement, Main Street embarked upon a path of providing financing for 3Com Power of $Zero™ Solution customers (including Plaintiffs). The mechanism which Main Street established facilitated the generation, authorization, approval, and execution of Financing Agreements. Utilizing this mechanism, Main Street funded dozens of 3Com Power of $Zero™ Solution transactions each month, advancing sums paid to Capital 4 and 3Com, and establishing residual income streams based upon the services and equipment to be delivered under the 3Com Power of $Zero™ Solution.

4.42  From the program's inception, Main Street allowed each 3Com Power of $Zero™ Solution customer (including Plaintiffs) to perceive that the payments being remitted to Main Street were for both the services and equipment being provided under the 3Com Power of $Zero™ Solution. For each customer (including Plaintiffs), the portion of the monthly payment attributable to equipment, as compared to services, was never distinguished, and each customer (including Plaintiffs) was directed to remit the entire monthly payment directly to Main Street. As can be seen, the monthly payment each Plaintiff was instructed to remit to Main Street was identical to the monthly payment due under the 3Com Power of $Zero™ Solution Customer Agreement.

| Plaintiff | 3Com POZ Pmt. | MS Pmt. |
|---|---|---|
| Litchfield Family Practice Center | $3,117.57 | $3,117.57 |
| Bank and Trust Company. | $6,736.45 | $6,736.45 |

**Exs. C-10 to C-11 and D-10 to D-11.** Although Main Street now claims that it was collecting only a small portion of the payment for services to be provided under the 3Com Power of $Zero™ Solution Customer Agreement, as a pass through, this was certainly not the perception of the customers (including Plaintiffs). Moreover, following Capital 4's insolvency in the fall of 2007,

Main Street provided notice to each customer (including Plaintiffs) that it would now be reducing the customer's monthly payment under the Financing Agreement because the telecom and data services to be delivered under the 3Com Power of $Zero Agreement were no longer being provided. *See, e.g.*, **Ex. F-2**.

4.43   Even assuming that the Financing Agreements were only for equipment, as Main Street contends, Main Street's actions demonstrate a pattern and practice of significantly overvaluing that equipment, potentially rendering those agreements usurious. In addition, because the Financing Agreements between each Plaintiff and Main Street are for both services and goods, the agreements are not subject to the Uniform Commercial Code, and the agreements can be cancelled by reason of the breach of the 3Com Power of $Zero™ Solution Customer Agreement.

4.44   Each Plaintiff's Financing Agreement with Main Street is not a "Finance Lease" as defined in Article 2A of the Uniform Commercial Code: It is part-and-parcel of the 3Com Power of $Zero™ Solution.

V.    Claims and Causes of Action

5.1   Plaintiffs' complaints against Defendants include:

- 3Com represented that the 3Com® Power of $Zero™ Solution was a 3Com program, and that 3Com would stand behind the goods and services to be provided under the program, making certain they were delivered in accordance with the express and implied representations.

- 3Com represented that Plaintiffs *could rely upon certain 3Com "solutions"* including, the 3Com Power of $Zero™ Solution – which was described as an "innovative, new financial program."

- 3Com represented that by purchasing the 3Com® Power of $Zero™ Solution, Plaintiffs could reap the benefits of 3Com's Nationwide Intelligent Private Network (IPN).

- 3Com represented the vendors it selected to provide equipment and services under the 3Com® Power of $Zero™ Solution were competent and qualified to provide that equipment and services, and would provide such equipment and services in accordance with industry standards.

- 3Com represented that by purchasing the 3Com® Power of $Zero™ Solution, Plaintiffs could transform its recurring expenses into a profit center, and *help reduce its telecom and 3Com equipment expenses to zero.*

*Plaintiffs' Original Petition – Page 18 of 28*

- 3Com represented that in accordance with the 3Com® Power of $Zero™ Solution, 3Com would provide "innovative, secure communications solutions and simplify administering them with single monthly invoices from one provider."

- 3Com represented that the 3Com® Power of $Zero™ Solution, included a $Zero Cost Warranty, providing for the administration and delivery of telecom and data services in the event that 3Com's selected provisioning partner became insolvent.

- 3Com represented that by purchasing the 3Com® Power of $Zero™ Solution, each Plaintiff's monthly payment for telecom and data equipment and services would not change.

- 3Com represented that the 3Com® Power of $Zero™ Solution, included a provision that if Good Cause was established, each Plaintiff could cancel the 3Com POZ Agreement, in which case any remaining obligations under the 3Com POZ Rental Agreement would be discharged.

- Defendants represented that the 3Com® Power of $Zero™ Solution was a 3Com program, indicating that 3Com would stand behind the goods and services to be provided under the program, making certain they were delivered in accordance with the express and implied representations.

- Defendants represented that in accordance with the 3Com® Power of $Zero™ Solution, 3Com would provide "innovative, secure communications solutions and simplify administering them with single monthly invoices from one provider."

- Defendants represented that the 3Com® Power of $Zero™ Solution, included a $Zero Cost Warranty, providing for the administration and delivery of telecom and data services in the event that 3Com's selected provisioning partner became insolvent.

- Defendants represented that by purchasing the 3Com® Power of $Zero™ Solution, each Plaintiff's monthly payment for telecom and data equipment and services would not change.

- Defendants represented that the 3Com® Power of $Zero™ Solution, included a provision that if Good Cause was established, each Plaintiff could cancel the 3Com POZ Agreement, in which case any remaining obligations under the 3Com POZ Rental Agreement would be discharged.

Texas Deceptive Trade Practices - Consumer Protection Act

5.2   Plaintiffs' claims against Defendants stem from the following statutory duties.
- Tex. Bus. & Com. Code §17.50(a)(1);
- Tex. Bus. & Com. Code §17.46(b), subparts (2), (3), (4) (5), (7), (12), (14) and (20);
- Tex. Bus. & Com. Code §17.50(a)(2); and
- Tex. Bus. & Com. Code §17.50(a)(3).

*Negligence Per Se*

5.3   Defendants' violations of the statutes listed above constitute *negligence per se*, in that: (1) Plaintiffs belong to the class of persons the statute was designed to protect, and Plaintiffs' injuries are the type the statute was designed to protect; (2) the statute is one for which tort liability may be imposed when violated; (3) Defendants violated the statute without excuse; and (4) Defendants' acts or omissions proximately caused Plaintiffs' injuries.

Negligent Misrepresentation

5.4   In the course of Defendants' business, and in one or more transactions in which Defendants had an interest, Defendants made or participated in the making of, representations to Plaintiffs regarding the 3Com Power of $Zero™ Solution. Defendants failed to use reasonable care in communicating this information. Plaintiffs justifiably relied upon these representations, which proximately caused Plaintiffs' damages.

Conditions Precedent

5.5   Prior to filing this lawsuit, some, though not all conditions precedent have occurred, including those required by the Texas Deceptive Trade Practices - Consumer Protection Act. Three Plaintiffs have provided statutory notice to Defendants 3Com and Main Street, but the remaining Plaintiffs have not yet provided such notice. However, the filing of the Pennsylvania lawsuits by Defendant DLL has necessitated the immediate filing of this case, including the request for injunctive relief. TEX. BUS. & COM. CODE §17.505(b). The required statutory notice shall be provided to all Defendants immediately.

Request for Declaratory Judgment

5.6   Plaintiffs seek a judicial declaration that each Financing Agreement between each Plaintiff and each of the Defendant Financing Companies does not constitute a "Finance Lease" subject to Article 2A of the Uniform Commercial Code. Rather, these are contracts for services and