equipment. Because Capital 4, 3Com's selected "PAS Provider", ceased providing the telecom and data services, thereby breaching the 3Com Power of $Zero™ Solution Customer Agreement, including the Financing Agreement, Plaintiffs are excused from any further obligation under the Financing Agreements. TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 et. seq.

## VI. Damages

6.1   As a consequence of Defendants' acts and omissions, Plaintiffs have sustained, and will sustain, substantial economic damages.

6.2   Plaintiffs seek the following damages:

- All actual damages incurred by reason of Defendants' acts or omissions;
- (If applicable) Statutory penalties, trebling of damages, and punitive damages for knowing violations of the DTPA;
- Attorneys' fees and related costs and expenses in pursuing this action. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 et. seq.; TEX. BUS. & COM. CODE § 17.50(d); TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 et. seq.;
- Pre-judgment and post-judgment interest; and
- Taxable costs of court.

## VII. Jury Demand

7.1   Plaintiff demands a trial by jury. A jury fee has been paid.

### VIII. Plaintiffs' Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

Additional Facts Relevant to Request for Request for Injunctive Relief

8.1     The facts alleged in Section IV are incorporated by reference.

8.2     Plaintiffs are a group of companies and organizations that each purchased the 3Com Power of $Zero™ Solution. Most, but not all Plaintiffs, are located here in Texas.[5] Plaintiffs have filed this lawsuit seeking compensation for the damages each has incurred and will incur as a direct result of the purchase of the 3Com Power of $Zero™ Solution, specifically including damages associated with the Financing Agreements provided by Defendants DLL, Main Street, and other Financing Companies.

8.3     As set forth in paragraphs 4.3 to 4.14, when each Plaintiff entered the 3Com Power of $Zero™ Solution, each Plaintiff had to execute a Financing Agreement. Relevant to this Application for Temporary Restraining Order and Injunctive Relief, the following Plaintiffs executed a Financing Agreement with Defendant DLL

- Plaintiff Texas Network of Youth Services, located in Austin, Texas.
- Plaintiff Grace Products, Inc., located in Richardson, Texas.
- Plaintiff Temsco, Inc., located in Lewisville, Texas.
- Plaintiff Evans, Ewan & Brady Insurance Agency, Inc., located in Georgetown, Texas
- Plaintiff Comport Network Services and Solutions, located in Fort Worth, Texas.
- Plaintiff North Central Communications, Inc., located in Dallas, Texas.
- Plaintiff Zepplin, Inc. d/b/a All Import Auto Parts, located in Dallas, Texas.
- Plaintiff Cornerstone Land Surveying, located in St. Louis, Missouri.
- Plaintiff SolutionPros, located in Kansas City, Missouri.

(collectively, the "Plaintiffs sued by Defendant DLL").

8.4     Attached is a copy of each Complaint that Defendant DLL has filed against each of the Plaintiffs sued by Defendant DLL in the Court of Common Pleas in Chester County, Pennsylvania (the "DLL Pennsylvania Lawsuits"). **Exs. G-1 to G-9.** The claims encompassed in the DLL Pennsylvania Lawsuits are based upon the Financing Agreements which each Plaintiff was required to sign as part of the 3Com Power of $Zero™ Solution. *Id.*

---

[5]     The overwhelming majority of all potential Plaintiffs are located in Texas.

8.5     Each Plaintiff retained Plaintiffs' Counsel, Simon Hughes, to represent them in connection with all claims arising out of the 3Com Power of $Zero™ Solution, including the Financing Agreements. Upon receipt of the Complaints filed in the DLL Pennsylvania Lawsuits, Hughes contacted DLL's counsel and requested proper documentation explaining and substantiating the amounts alleged as due and owing, in order to determine the appropriateness of negotiating a settlement. *See* Hughes Affidavit, **Exs. H, H-1 and H-2.** In the course of doing so, Hughes requested and obtained an extension to the Answer date in the DLL Pennsylvania Lawsuits for four of the cases. **Ex. H-3.** On March 5th, 2008, when Hughes sought the *same background information and same extension to the Answer date* for Plaintiffs Grace Products, North Central Communications, and Cornerstone Land Surveying, Hughes was told by DLL's counsel that: (1) the requested extension of the Answer date would not be provided; and (2) the information Hughes had requested for each of his clients, as to the basis for, and amount of each claim, would not be provided. **Exs. H-4 and H-5.** To date, and for each of the Plaintiffs sued by Defendant DLL, despite Hughes' repeated request, DLL has failed and refused to provide an accounting of all invoices, payments, debits, credits and adjustments in connection with DLL's claims.

8.6     By refusing to provide an accounting of all invoices, payments, debits, credits and adjustments in connection with DLL's claims, it is clearly DLL's intention not to work towards negotiating a reasonable settlement of claims arising from the Financing Agreements. Instead, Defendant DLL appears intent on coercing Plaintiffs into incurring immediate out-of-pocket expense in retaining counsel to enter an appearance in the DLL Pennsylvania Lawsuits, taking advantage of Plaintiffs, in order to extort a more favorable settlement for DLL. The Answer date for the DLL Pennsylvania Lawsuits is fast approaching, and DLL will not budge. The Courts of this State have a strong public interest in protecting Texas residents from this type of vexatious and harassing litigation, particularly when based upon transactions which occurred here in the State of Texas.

Application for Temporary Restraining Order

8.7     Plaintiffs seek a Temporary Restraining Order to prevent Defendant DLL from prosecuting the DLL Pennsylvania Lawsuits. This Application for Temporary Restraining Order is authorized if:

- the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;
- a party performs or is about to perform or is procuring or allowing the

performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, an act that would tend to render the judgment in that litigation ineffectual;

- the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions;

- irreparable injury to real or personal property is threatened, irrespective of any remedy at law.

TEX. CIV. PRAC & REM. CODE § 65.011. Plaintiffs are also entitled to the requested injunctive relief to stay a proceeding at law to the extent that a litigant shows himself equitably entitled to such relief. TEX. CIV. PRAC & REM. CODE § 65.013.

8.8  The requested injunctive relief is intended to preserve the status quo. Plaintiffs have a probable right to the relief sought, and there is a probable, imminent, and irreparable injury if the relief is not granted. Such relief is clearly appropriate in this case.

8.9  Plaintiffs ask this Court to enjoin Defendant DLL from prosecuting each of the DLL Pennsylvania Lawsuits; except to respond to Orders issued by the Courts in the DLL Pennsylvania Lawsuits, and to immediately file documents necessary to dismiss those cases.[6] Plaintiffs further requests that this Court enjoin Defendant DLL from taking any further action against the Plaintiffs sued by Defendant DLL in connection with the DLL Financing Agreements, specifically including

- filing in any other jurisdiction a lawsuit similar to the DLL Pennsylvania Lawsuits;

- foreclosing or attempting foreclose upon any alleged security interest on the equipment alleged to collateralize the Financing Agreements; or

- taking any action in collecting sums alleged due under the DLL Financing Agreements, including providing any adverse credit reporting, as the defense to the obligation constitutes a legitimate dispute, and such adverse credit reporting would severely and negatively affect the Plaintiffs sued by Defendant DLL.[7]

8.10  Plaintiff need not show a probable right to the requested relief with absolute certainty. A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief. In this case, it is probable that Plaintiffs will recover from Defendant DLL at a trial on the merits. *See,* ¶¶ 4.3 – 4.14.

8.11  If Plaintiffs' application for injunctive relief is not granted, harm is imminent because

---

6   If it elects to do so, Defendant DLL may assert the claims encompassed in the DLL Pennsylvania Lawsuits as counterclaims in the Texas Lawsuit.
7   As evidenced by the allegations set forth above, a legitimate dispute exists as to Defendant DLL's claim

Plaintiffs, and each individual Plaintiff, will be forced to incur considerable expense in order to litigate their claims against Defendant DLL (and the defenses to DLL's claims against them) in a foreign jurisdiction. Plaintiffs include a non-profit company, and several small business, which do not have the vast financial resources (as compared to DLL) to take on these matters in a far-away jurisdiction, having absolutely nothing to do with the transaction. *See* Affidavits of Plaintiffs sued by Defendant DLL, **Exs. I-1 to I-9**. Moreover, if forced to litigate in the DLL Pennsylvania Lawsuits, the Plaintiffs sued by Defendant DLL will forever be denied the right to select the forum of their choice in which to litigate their claims against 3Com, DLL, and the other Defendants. Alternatively, the Plaintiffs sued by Defendant DLL will incur additional unnecessary expenses as the result of a multiplicity of lawsuits –in Texas, in Pennsylvania, or potentially in other jurisdictions.

  8.12 Thus, the harm that will result if this Temporary Restraining Order is not issued is irreparable. There are four instances where issuance of an anti-suit injunction may be determined appropriate:

  1) to address a threat to the court's jurisdiction;
  2) to prevent the evasion of an important public policy;
  3) to prevent a multiplicity of suits; or
  4) to protect a party from vexatious or harassing litigation.

*Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 650-51 (Tex. 1996). In the instant case, the injunctive relief is warranted on all four grounds. Texas Courts have an inherent interest in addressing and resolving injuries incurred by Texas Plaintiffs within the State of Texas. To allow the DLL Pennsylvania Lawsuits to proceed would essentially negate Plaintiffs' ability to prosecute their claims against Defendants in the forum of Plaintiffs' choice. From a public policy perspective, and to avoid a threat to this Court's jurisdiction, the injunctive relief should issue. Moreover, an injunction is required to avoid a multiplicity of suits in Pennsylvania, Texas, and possibly elsewhere. Plaintiffs fully intend to prosecute their claims against 3Com and the other Defendants here in Texas. However, if the DLL Pennsylvania lawsuits are allowed to proceed, Plaintiffs will be forced to handle the matter piece-meal, in multiple jurisdictions, at considerable additional expense. The requested injunctive relief is necessary in order to protect Plaintiffs from what can only be

---

regarding amounts alleged as due and owing under the Financing Agreements.

characterized as vexatious and harassing litigation, particularly given DLL's refusal to provide essential information in order to negotiate settlement. DLL's claims (which, ordinarily, would be deemed routine collection matters delegated to a first-year associate) are being handled by Mr. Maneri, a Partner with more than 20 years experience, specializing in "complex litigation". It appears that DLL has already anticipated a fight because of its prior involvement in the 3Com Power of $Zero™ Solution.

8.13   In this case, "clear equity" favors the issuance of an anti-suit injunction – to protect multiple parties against the potential of a multiplicity of lawsuit, the result of which would clearly be vexatious or harassing. *Gonzales v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005).

8.14   The harm that will result if this Temporary Restraining Order is not issued is irreparable, and Plaintiffs do not have an adequate remedy at law. The very reason for the anti-suit injunction is to prevent a "multiplicity of lawsuits", which emphasizes that there is no other remedy available to prevent DLL from pursuing the DLL Pennsylvania Lawsuits, or a similar action in another forum. *Forum Ins. Co. v. Bristol Myers Squibb Co.*, 929 S.W.2d at 120, *citing, Golden Rule Ins. Co. v. Harper*, 925 S.W.2d at 651 (Tex. 1996). If the DLL Pennsylvania Lawsuits are allowed to proceed, then: (1) Plaintiff will incur considerable additional expense retaining local counsel to file answers and responsive pleadings, with some likelihood that those cases will ultimately be dismissed or stayed so that the issues and claims can properly be tried within this lawsuit; or (2) if Plaintiffs are unable to retain counsel, DLL will obtain a default judgment against Plaintiffs as to the full amount of the alleged debt under the Financing Agreement, without regard to the real defenses and counterclaims applicable. Plaintiffs cannot be adequately compensated for the irreparable harm that will occur if the TRO does not issue. To allow the DLL Pennsylvania Lawsuits to proceed will forever change the procedural structure of this case because the Plaintiffs' claims against 3Com, DLL, and the other Financing Companies, all arising out of the 3Com Power of $Zero™ Solution, are inextricably intertwined.

8.15   Plaintiffs are willing to post bond.

8.16   Defendant DLL's counsel has been provided with a copy of Plaintiffs' Original Petition, and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and advised that Plaintiffs' counsel intend to present the matter to the Court as soon as possible.

### Request for Temporary Injunction

8.17    Plaintiffs ask the Court to set their Application for Temporary Injunction for hearing, and after the hearing, issue a Temporary Injunction against Defendant DLL based on the foregoing information, as well as any additional information or evidence as may be properly submitted to the Court for consideration. Plaintiffs request that the Temporary Injunction enjoin Defendant DLL from the acts set forth above.

### Request for Permanent Injunction

8.18    Plaintiffs ask this Court to set their Application for a Permanent Injunction for a full trial on the merits, and after the trial, issue a permanent injunction against Defendant DLL, based on the foregoing information, as well as any additional information or evidence as may be properly submitted to the Court for consideration. Plaintiffs request that the Permanent Injunction enjoin Defendant DLL from the acts set forth above.

### IX. Prayer

9.1 For these reasons, Plaintiffs pray that Defendants be cited to appear and answer, and on final trial there be an adjudication of liability against Defendants, and that Plaintiffs have judgment against Defendants for the following:

- Declaratory Relief as set forth in Section V;
- Injunctive Relief as set forth in Section VIII, including a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction;
- All actual damages incurred by reason of Defendants' acts or omissions;
- (If applicable) Statutory penalties, trebling of damages, and punitive damages for knowing violations of the DTPA;
- Attorneys' fees and related costs and expenses in pursuing this action. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 et seq.; TEX. BUS. & COM. CODE § 17.50(d); TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 et. seq.;
- Pre-judgment and post-judgment interest;
- Taxable costs of court; and
- All other relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

THE HUGHES LAW FIRM

By: _____
Simon H. Hughes
State Bar No. 10230295
13280 Northwest Freeway
No. F-400
Houston, Texas 77040
Tel: 713-621-4500
Fax: 713-896-8450

ATTORNEYS FOR PLAINTIFFS