UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
3COM CORPORATION,                              :
                                               :
                    Plaintiff,                 :        Index No. 07 Civ. 8707 (JSR)(JDF)
                                               :
         -against-                             :        ECF CASE
                                               :
CAPITAL 4, INC., et. al.,                      :        Honorable Jed. S. Rakoff
                                               :
                    Defendants.                :
------------------------------------------------------------x


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A FINDING OF CONTEMPT AND A DETERMINATION THAT CAPITAL 4 HAS WAIVED ITS ATTORNEY-CLIENT PRIVILEGE


WINGET, SPADAFORA &
SCHWARTZBERG, LLP
45 Broadway, 19th Floor
New York, New York 10006
Telephone: (212) 221-6900
Facsimile: (212) 221-6989

*Attorneys for the defendants Captial
4, Inc, F. Davis Dawson and Ish
Villa-Lobos.*


Of Counsel: Luigi Spadafora (LG 8471)
            Thomas Vays (TV 2112)

TABLE OF CONTENTS

I. STATEMENT OF FACTS.................................................................................1

    3Com abandons Power of Zero Customers...........................................2

    3Com's Claim for Defamation and the Stipulated Preliminary Injunction..........3

    The Attorney Client Relationship Between Hughes and Capital 4...................4

    Capital 4 Did Not Consent to Hughes' Representation of Power of $Zero
    Customers.........................................................................................4

    3Com Files its Frivolous Motion Seeking a Finding of Contempt and a
    Declaration that Capital 4 Waived the Attorney-Client Privilege................…..6

II. ARGUMENT.............................................................................................7

  A. Capital 4 Did Not Violate the Stipulated Preliminary Injunction........................7

      i.   The Actions of Hughes Following the Termination of his
         Representation of Capital 4 Cannot be Imputed to Capital 4.....................8

      ii.  Capital 4 did not Consent to Hughes' Representation of the
         Plaintiffs in the Texas Action.......................................................10

      iii. The Allegations in the Demand Letters and the Texas Petition
         are not Defamatory...................................................................11

  B. Capital 4 did not Waive the Attorney Client Privilege...................................13

      i.   The Attorney-Client Privilege May Only be Waived by the Client........14

      ii.  3Com's Waiver Argument is Without Merit.................................14

III. CONCLUSION.........................................................................................16

i

TABLE OF AUTHORITIES

Bridge C.A.T. Scam Assoc. v. Ohio-Nuclear Inc., 608 F. Supp. 1187
 (S.D.N.Y. 1985)…………………………………………………………....12

Derrick Mfg. Corp. v. Southwestern Wire Cloth Inc., 934 F. Supp. 813
(S. D. Tex. 1996)…………………………………………………………….14

Evans v. Waldo, No. 04-cv-566, 2006 U.S. Dist. LEXIS 66586
(Sept. 18, 2006)……………………………………………………………..12

Hammer v. Amazon.com, 392 F. Supp. 2d 423 (E.D.N.Y. 2005)…………………………….7

Hart Schaffner & Marx v. Alexander's Dept. Stores, Inc.,
341 F.2d 101 (2d Cir. 1965)………………………………………………....7

Kjar v. Jordan, 217 A.D.2d 981, 982, 630 N.Y.S.2d 825 (App. Div. 1995)………………….9

Kraus v. Brandsetter, 202 A.D.2d 396, 397, 610 N.Y.S.2d 527
(App. Div. 1994)………………………………………………………….9, 10

Mahoney v. Staffa, 256 A.D.2d 827, 828, 681 N.Y.S. 2d 816
(App. Div. 1998)……………………………………………………………..9

In re Michael Hicks, No. 07-cv-0590, 2008 Tex. App. LEXIS 2990
(Tex. App. Houston Apr. 24, 2008)………………………………………....14

Microsoft Corp v. Computer, Inc. No. 00-cv-7550, 2001 U.S. Dist. LEXIS 3928
(S.D.N.Y. Apr. 4, 2001)…………………………………………………….12

Perez v. Danbury Hosp., 347 F.3d 419 (2d Cir. 2003)………………………………….7, 8

Russell v. Curtin Matheson Scientific, Inc., No. 76-cv-881,
1980 U.S. Dist. LEXIS 17051 (S.D. Tex. Apr. 15, 1980)………………………...14

Sacks v. Stecker, 60 F.2d 73 (2d Cir. 1932)……………………………………….12

Treppel v. Biovail. Corp., No. 03-cv-3002, 2005 U.S. Dist. LEXIS 18511
(S.D.N.Y. Aug. 30, 2005)……………………………………………………9

Upjohn Co. v. United States, 449 U.S. 383 (1981)…………………………………….13

STATE STATUTES

Texas Business & Commercial Code §17.505……………………………………………………12

Texas Rules of Evidence, Rule 503……………………………………………………………..14

# I.  **STATEMENT OF FACTS**

Capital 4, Inc. ("Capital 4") is a Texas corporation that was engaged in the business of selling 3Com Corporation ("3Com") branded telecommunications equipment ("3Com Equipment") and telecommunications services to business customers under a program coined "Power of $Zero." See Capital 4's Counterclaims against 3Com Corporation ("Counterclaim"), at ¶7. The Power of $Zero program is a proprietary sales model developed by Capital 4 that involves the bundling of 3Com Equipment with telecommunications and data services ("Public Access Services"). Id.

Capital 4 launched the Power of $Zero program in 2004. Id., ¶7. As 3Com became more involved with the Power of $Zero program -- ultimately agreeing in November 2006 to take full control of the program -- 3Com agreed that, in the event Capital 4 became insolvent, it would assume Capital 4's obligation to provide Public Access Services to customers. See accompanying May 16, 2008 Declaration of F. Davis Dawson ("Dawson Decl.") at ¶14; Counterclaim ¶35. This commitment is contained in Section 4.3, the "Go Dark" Solution, of the November 10, 2006 Operations Agreement between 3Com and Capital 4. See November 10, 2006 Operations Agreement, Dawson Decl., Ex. C; Counterclaim, ¶¶46, 59. The "Go Dark" Solution was incorporated into the Operations Agreement for the specific purpose of ensuring that Power of $Zero customers would be protected in the event Capital 4 became insolvent. Dawson Decl., ¶ 14; Counterclaim ¶¶46, 59.

The "Go Dark" Solution provides, in pertinent part, that in the event of Capital 4's insolvency, "3Com shall assume all of the obligations of any and all Public Access Asset Service agreements entered into by Capital 4 in connection with 3Com Power of $Zero Customer

1

Agreements." See Operations Agreement at Section 4.3.3(d), Dawson Decl., Exhibit C. The term "3Com Power of $Zero Customer Agreements" is defined as "all [Power of $Zero] contracts presented by the 3Com VAR to the Customer, and executed by the Customer, prior to and after the Effective Date of the License Agreement…" See Operations Agreement at Section 1.7, Id. Thus, as of November 2006, 3Com agreed to act as a backstop for all Power of $Zero customers.

### 3Com Abandons Power of $Zero Customers

In the summer of 2007, due to various continued operational problems relating to the Power of $Zero program and 3Com's breaches of the November 10, 2006 Operations Agreement and November 10, 2006 License Agreement, Capital 4 began to experience financial pressure and projected severe financial distress if 3Com's performance did not improve. Dawson Decl., ¶15; Counterclaim, ¶¶61-64. As a result, Capital 4 requested that 3Com provide it with funds in the form of advances on future license fees. Id.; Counterclaim, ¶¶50-52. In response, 3Com demanded that, as a condition to an advance on future license fees, Capital 4 would have to consent to an amendment of the "Go Dark" Solution, such that 3Com would no longer be required to assume Capital 4's obligations to all Power of $Zero customers. Dawson Decl., ¶15. Instead, 3Com would have the option to request assignment of only the Power of $Zero customers it desired.

Capital 4, which did not have any reasonable alternatives, capitulated to 3Com's demand because it was led to believe that 3Com remained committed to the Power of $Zero program, would work in good faith with Capital 4 to achieve a long-term solution to both stabilizing and scaling the Power of $Zero program, and would not allow Power of $Zero customers to lose their

Public Access Services. Dawson Decl., ¶16. Approximately one month later, when Capital 4 needed an additional infusion of capital, 3Com declined to advance additional funds and reneged on its commitment to the Power of $Zero program by refusing to take assignment of the Power of $Zero customer agreements and abandoning the program. Dawson Decl. ¶13; Counterclaim, ¶52-53, 59-61. In this regard, It is Capital 4's contention that 3Com wrongfully abandoned the Power of $Zero program and the protective provisions that were constructed for precisely the scenario that materialized. Dawson Decl. ¶17.

On or about September 25, 2007, Capital 4 distributed a notice to Power of $Zero customers explaining the circumstances relating to its impending insolvency and 3Com's refusal to protect Power of $Zero customers. Counterclaim, ¶54. Approximately two weeks later, 3Com commenced this action.

### 3Com's Claim for Defamation and the Stipulated Preliminary Injunction

Count III of 3Com's Complaint alleges that Capital 4 defamed 3Com by, among other things, publicizing that "3Com abandoned its customers and VARs" and that "3Com's unwillingness to continue to support Capital 4 has resulted in [Capital 4's] inability to pay the underlying dial tone service providers and its business's future is in jeopardy." Complaint, ¶¶ 121, 124. Capital 4 denies that the referenced statements are defamatory. Answer, ¶121, 124. Indeed, Capital 4 has asserted counterclaims in this action against 3Com for breach of contract, breach of the duty of good faith and fair dealing, and fraud based on 3Com's refusal to assume Capital 4's obligations under the Power of $Zero customer agreements, its failure to prevent Power of $Zero customers from experiencing the loss of Public Access Services, and its abandonment of the Power of $Zero program. Counterclaim, ¶¶55-73.

3

Contemporaneous with the filing of the Complaint, 3Com sought a Temporary Restraining Order ("TRO") and a Preliminary Injunction, restraining and enjoining Capital 4 from, *inter alia*, making defamatory statements concerning 3Com.  After negotiations with 3Com's counsel regarding the terms of the Preliminary Injunction, Capital 4 agreed to sign the Stipulated Preliminary Injunction, which was entered by the Court on November 5, 2007.  While Capital 4 agreed not to make any future defamatory statements concerning 3Com, by no means did it admit that the communications that are the subject of 3Com's defamation claim were defamatory.  A fact that is well-known to 3Com and its counsel.

### The Attorney-Client Relationship Between Hughes and Capital 4

Simon Hughes, Esq. ("Hughes") acted as legal counsel to Capital 4 between 2004 and 2007 on various legal matters, including, but not limited to, matters relating to the Power of $Zero program and Capital 4's relationship with 3Com.  Dawson Decl., ¶2.  During this time period, representatives of Capital 4 and Hughes exchanged countless confidential communications for the purpose of facilitating the rendering of legal advice by Hughes.  Id., ¶3. Capital 4 has not disclosed those communications to third-parties, and has never granted Hughes permission to disclose any confidential communications.  Id.

Hughes ceased rendering legal advice to Capital 4 in December 2007, and withdrew as counsel of record in the various lawsuits in which he had appeared as counsel for Capital 4.  Id., ¶4.  Hughes has not acted as counsel for Capital 4 in any capacity since December 21, 2007.  Id.

### Capital 4 Did Not Consent to Hughes' Representation of Power of $Zero Customers

In or about the middle of February 2008, Hughes informed Dawson that he was considering representing Power of $Zero customers in connection with claims against 3Com, and

4

possibly other parties, for losses incurred by the customers as a result of the collapse of the Power of $Zero program.  Id., ¶5.  Hughes told Dawson that he did not believe such representation would be adverse to Capital 4 because the plaintiffs did not intend to assert any claims directly against Capital 4.  Id.  Hughes did not seek Capital 4's consent to his representation of Power of $Zero customers, but merely inquired as to whether Capital 4 would be willing to cooperate in his efforts.  Id.  At no point in time did Hughes advise Dawson that he intended to disclose any privileged or confidential communications between himself and Capital 4.  Id.  Dawson told Hughes that he would need to confer with Capital 4's New York counsel to obtain guidance on whether Capital 4 should cooperate with Hughes.  Id.  Unbeknownst to Capital 4, Hughes sent several demand letters to 3Com on behalf of Power of $Zero customers. Id., ¶7.  Capital 4 discovered the demand letters on March 7, 2008, when counsel for 3Com forwarded copies of the demand letters to Capital 4's New York counsel.  Id.  The following business day, March 10, 2008, Dawson called Hughes and informed him that Capital 4 did not consent to his representation of Power of $Zero customers.  Id., ¶8.  The telephone conversation was followed by a March 10, 2008 letter to Hughes reiterating that Capital 4 did not consent to his representation of Power of $Zero customers.  Id.

On March 11, 2008, Hughes sent Capital 4 a letter stating that he would withdraw from representing the Power of $Zero customers.[1]  Dawson Decl., ¶9, Ex. B.  On March 11, 2008, Hughes also informed 3Com's counsel that he was withdrawing from the representation of Power of $Zero customers.  On March 14, 2008, Capital 4 discovered, once again through an

---

[1] Hughes' letter characterizes Capital 4's March 10, 2008 letter as a withdrawal of its consent to his representation of Power of $Zero customers.  However, as Dawson unequivocally states in the accompanying Declaration, Capital 4 never consented to Hughes' representation of Power of $Zero customers.  Dawson Decl., ¶5.

email communication from 3Com's counsel to Capital 4's New York counsel, that on March 10, 2008, Hughes had filed a petition in a Texas State court on behalf of various Power of $Zero customers, styled <u>Texas Network of Youth Services, et al., v. 3Com Corporation, et al.</u> (the "Texas Petition"). <u>Id.</u>, ¶10, Ex. A. Hughes did not provide Capital 4 with a draft of the Texas Petition before, or after, it was filed. <u>Id.</u>

Capital 4 did not take any further action with respect to Hughes because Hughes had already represented to Capital 4, on March 11, 2008, that he would withdraw from his representation of any and all Power of $Zero customers. <u>Id.</u>, ¶11.

### 3Com Files its Frivolous Motion Seeking a Finding of Contempt and a Declaration that Capital 4 Waived the Attorney-Client Privilege

Following receipt of confirmation from Hughes that he would withdraw from his representation of Power of $Zero customers, Capital 4 believed this matter was completely resolved. On April 2, 2008, however, during the course of a conversation between counsel for 3Com and counsel for Capital 4, 3Com took the position that the attorney-client privilege between Hughes and Capital 4 had been waived based on the allegations contained in the Texas Petition. <u>See</u> Vays Decl. ¶2. Significantly, 3Com did not raise the issue of Capital 4's purported violation of the Stipulated Preliminary Injunction during that conversation even though 3Com's motion for contempt is based on facts that were known to 3Com several weeks prior to the April 2[nd] conversation. <u>Id.</u>, ¶3. Indeed, 3Com waited approximately three months from the time it received the first demand letter in February 2008 before filing its motion for contempt.

During the above-referenced April 2nd telephone conversation, Capital 4 advised 3Com that it did not waive the attorney-client privilege, and requested that 3Com provide legal authority to support its position regarding waiver of the privilege. Vays Decl., ¶2. By letter

dated April 9, 2008, Capital 4 followed up on the April 2nd telephone conversation with 3Com's counsel. Vays Decl., Ex. A. The April 9th letter reiterated Capital 4's position that it had not waived the attorney-client privilege and requested that 3Com provide some authority for its waiver argument. Id., ¶2.

On April 23, 2008, 3Com finally responded to Capital 4's letter. See Vays Decl., Ex. B. 3Com's response failed to cite any authority whatsoever in support of its waiver argument. Id., ¶5. Instead, 3Com piled a second frivolous claim on top of its first frivolous claim; this time arguing that Capital 4 violated the Stipulated Preliminary Injunction by virtue of its purported consent to Hughes' representation of the Power of $Zero customers. Capital 4 responded by denying 3Com's baseless accusations, denying that it consented to Hughes' representation of Power of $Zero customers, and sending 3Com a copy of the March 10, 2008 letter from Capital 4 to Hughes. Vays Decl., ¶6. 3Com responded by filing the instant motion.

## II.    ARGUMENT

### A.  Capital 4 did not Violate the Stipulated Preliminary Injunction

A finding of civil contempt is a harsh remedy that is only appropriate where the moving party establishes by clear and convincing evidence that the alleged contemnor violated a court's edict. Hart Schaffner & Marx v. Alexander's Dept. Stores, Inc., 341 F.2d 101, 102 (2d Cir. 1965). In this regard, a movant must prove the following three elements: (1) that a court's order was clear and unambiguous; (2) proof of non-compliance is clear and convincing; and (3) the defendant has not diligently sought to comply in a reasonable manner. Hammer v. Amazon.com, 392 F. Supp.2d 423, 434 (E.D.N.Y. 2005); citing Perez v. Danbury Hosp., 347 F.3d 419, 424-25

7

(2d Cir. 2003). A party may not be held in contempt for violating an order where the violation is based on the actions of others. See Perez, 347 F.3d at 425 (reversing District Court's finding of contempt and holding that defendant could not be found liable for the improper conduct of another). The provision of the Stipulated Preliminary Injunction that 3Com alleges was violated states as follows:

> Capital 4, including its principals, officers, directors, employees, agents, servants, successors and assigns, are hereby ENJOINED and RESTRAINED from making defamatory statements concerning 3Com.

See Preliminary Injunction at ¶ 1. In order for 3Com to prove that there has been a violation of this restraint, it must establish by clear and convincing evidence that there has been a defamatory statement concerning 3Com and that the statement was made by Capital 4 or someone who was a principal, officer, director, employee, agent, servant, successor or assign of Capital 4 at the time the statement was made.

3Com's frivolous motion for a finding that Capital 4 is in contempt of the Stipulated Preliminary Injunction must be denied because (i) Hughes was not acting as Capital 4's agent at the time the purported defamatory statements were made; (ii) Capital 4 did not consent to Hughes' representation of the plaintiffs in the Texas Action; and (iii) the allegations in the demand letters and Texas Petition cited by 3Com are not defamatory.

    (i)    The Actions of Hughes Following the Termination of his Representation of Capital 4 Cannot be Imputed to Capital 4

3Com contends it has been defamed based on allegations contained in the February 12, 2008 demand letter Hughes drafted on behalf of The Bank & Trust Company (the "Bank & Trust Demand Letter"), the February 20, 2008 demand letter Hughes drafted on behalf of Litchfield Family Practice Center (the "LFPC Demand Letter"), and the March 10, 2008 Texas Petition.

Assuming, *arguendo*, that the allegations in the Bank & Trust Demand Letter, the LFPC Demand Letter, or the Texas Petition are defamatory, the statements in these documents cannot be attributed to Capital 4.

It is beyond cavil that the statements at issue were not made by, or on behalf of, Capital 4. The statements were made by the Bank & Trust Company, Litchfield Family Practice Center, and the plaintiffs in the Texas Action. Although Hughes was the attorney who prepared the demand letters and the Texas Petition, he was acting as an agent for the entities that were asserting claims against 3Com. He was certainly not acting as an agent of Capital 4.

To the extent the statements in the demand letters and the Texas Petition are deemed to have been made by Hughes (as opposed to his clients), the statements cannot be imputed to Capital 4 because Hughes, who terminated his representation of Capital 4 as of December 2007, was not Capital 4's agent at the time the statements were published. See Treppel v. Biovail. Corp., No. 03-cv-3002, 2005 U.S. Dist. LEXIS 18511, at *11 (S.D.N.Y. Aug. 30, 2005) (dismissing defamation claims against individual defendant where statements that were published by defendant corporation could not be attributed to him).

The law is clear that a defamation claim cannot survive without an allegation that the defendant actually participated in the creation or the publication of the statements at issue. See id; (citing Mahoney v. Staffa, 256 A.D.2d 827, 828, 681 N.Y.S. 2d 816, 818 (N.Y. App. Div. 1998) (affirming the dismissal of defamation claim because there was no evidence that the declarant was speaking on behalf of or at the direction of defendant); Kjar v. Jordan, 217 A.D.2d 981, 982, 630 N.Y.S.2d 825, 826 (N.Y. App. Div. 1995) (dismissing a defamation claim where defendant "neither made the alleged defamatory statements nor participated in their publication"); Kraus v. Brandsetter, 202 A.D.2d 396, 397, 610 N.Y.S.2d 527, 528 (N.Y. App.

Div. 1994) (finding the complaint should not be reinstated against three defendants who did not participate in the publication of the alleged defamatory statement).

The demand letters and the Texas Petition were served in February 2008 and March 2008, respectively. Since Hughes ceased representing Capital 4 in December 2007, he was not acting as Capital 4's agent at the time the demand letters and the Texas Petition were served. Moreover, Capital 4 did not have any knowledge of the demand letters or the Texas Petition until after they were served, and it certainly did not participate in the preparation or publication of the documents.

        (ii)     Capital 4 did not Consent to Hughes' Representation of the Plaintiffs in the Texas Action

Recognizing that Capital 4 did not make any purportedly defamatory statements, either directly or through an agent, 3Com has concocted a ridiculous theory in support of its motion for contempt that is without any factual or legal support. 3Com's argument in support of its motion for contempt is based on the following false assertions: (i) that Capital 4 actively participated in or consented to a "scheme to further defame 3Com;" and (ii) that Capital 4 aided Hughes in the publication of defamatory statements concerning 3Com.

3Com cavalierly asserts these purported facts without any evidence in support of its accusations, and despite being informed by Capital 4 that it did not consent to Hughes' representation of Power of $Zero customers. In this regard, 3Com has been provided with the March 10, 2008 correspondence from Capital 4 to Hughes in which Capital 4 stated that it did not consent to Hughes' representation of Power of $Zero customers, and 3Com's counsel has been advised that Capital 4 never consented to Hughes' representation of Power of $Zero customers.

Indeed, 3Com's entire motion is premised on a footnote in the Texas Petition that misleadingly states "Capital 4 is fully aware of, and does not object to Hughes' representation of Plaintiffs in this litigation against 3Com and other parties."

As stated in the accompanying Dawson Declaration, Capital 4 did not have any knowledge of the the demand letters until its New York counsel was provided with copies of the demand letters by 3Com's counsel on March 7, 2008; Capital 4 did not have any knowledge of the Texas Petition until its New York counsel was provided with a copy of the Petition by 3Com's counsel on March 14, 2008; and Capital 4 did not participate or cooperate with Hughes in his efforts to assert claims against 3Com on behalf of Power of $Zero customers.

Although Hughes informed Dawson in the middle of February 2008 that he was considering representing Power of $Zero customers in a claim against 3Com, and asked whether Capital 4 would be willing to cooperate in any lawsuit brought on behalf of Power of $Zero customers, Capital 4 did not agree to cooperate with Hughes and it did not consent to his representation of Power of $Zero customers.  Instead, Dawson informed Hughes that he would have to confer with Capital 4's New York counsel before he could provide Hughes with a response.  On March 10, 2008, Dawson informed Hughes that Capital 4 did not consent to his representation of Power of $Zero customers.  The next day, Hughes advised Dawson that he would withdraw from the representation of all Power of $Zero customers.


(iii)    The Allegations in the Demand Letters and the Texas Petition are Not Defamatory

3Com's motion implicitly seeks a determination that the allegation that "…3Com [] deci[ded] to cease providing telecom and data services (as required by the 3Com POZ Agreement)…" is defamatory.  As Capital 4 alleges in its Counterclaims, pursuant to both the

11

spirit and the express terms of the various agreements between 3Com and Capital 4, including the "Go Dark" Solution, 3Com was required to support the Power of $Zero program by preventing Power of $Zero customers from losing Public Access Services and by not abandoning the program. The fact that 3Com has denied this allegation does not make it false or defamatory. That determination will ultimately be made by the Court, or by a jury, after the conclusion of discovery and after both sides have a full and fair opportunity to be heard.

Moreover, it is well-settled that alleged defamatory statements made in connection with a judicial proceeding are absolutely privileged from a claim of defamation. See e.g., Evans v. Waldo, No. 04-cv-566, 2006 U.S. Dist. LEXIS 66586, at *10 (Sept. 18, 2006); Microsoft Corp v. Computer, Inc. No. 00-cv-7550, 2001 U.S. Dist. LEXIS 3928, at *4 (S.D.N.Y. Apr. 4, 2001); Sacks v. Stecker, 60 F.2d 73, 75 (2d Cir. 1932) ("[b]y an almost unbroken line of authority in this country and England, a party who files a pleading or affidavit in a judicial proceeding has absolute immunity, though his statements are defamatory and malicious, if they relate to the subject of inquiry."). See also Microsoft Corp., 2001 U.S. Dist. LEXIS 3928, at *5; Bridge C.A.T. Scam Assoc. v. Ohio-Nuclear Inc., 608 F. Supp. 1187, 1194 (S.D.N.Y. 1985) (holding that allegations made in the context of litigation enjoy immunity from slander and libel claims).

The statements in the demand letters and the Texas Petition cannot form the basis of a claim for defamation because they are cloaked with absolute immunity.[2]  Accordingly, since

---

[2] The statements in the demand letters are also accorded absolute immunity because, pursuant to Section 17.505(a) of the Texas Deceptive Trade Practices—Consumer Protection Act, the demand letters are predicates to the filing of a lawsuit. See Tex. Bus. & Com. Code §17.505(a)("As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonably detail of the consumer's specific complaint and the amount of economic damages…").

3Com cannot establish that it has been defamed -- even assuming for the sake of argument that 3Com's absurd theory attributing the statements in the demand letters and the Texas Petition to Capital 4 is sustainable -- Capital 4 cannot be held in contempt for violating the Stipulated Preliminary Injunction.

### B.  Capital 4 did not Waive the Attorney-Client Privilege

As set forth in the Dawson Declaration, Hughes represented Capital 4 in various legal matters between 2004 and December 2007; Hughes and Capital 4 exchanged countless confidential communications during that time period; the communications were made for the purpose of facilitating the rendition of professional legal services by Hughes; the communications were between Hughes and representatives of Capital 4; and Capital 4 has not waived the attorney-client privilege with respect to any of the communications. Accordingly, these communications are protected from disclosure by the attorney-client privilege.

### (i)     The Attorney-Client Privilege May Only be Waived by the Client

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Upjohn Co. v. United States, 449 U.S. 383, 591 (1981) (refusing to enforce IRS summons because documents sought contained communications protected by the attorney-client privilege). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. Id. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. Id. An uncertain privilege, or one which purports to

be certain but results in widely varying applications by the courts, is little better than no privilege at all. Upjohn, 449 U.S. at 393.

Capital 4 is a Texas corporation and Hughes is a Texas attorney. Therefore, the attorney-client privilege is governed by Texas law. Under Texas law, a client has the privilege to refuse to disclose and prevent any person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. In re Michael Hicks, No. 07-cv-0590, 2008 Tex. App. LEXIS 2990, at *8 (Tex. App. Houston Apr. 24, 2008) (citing Tex. R. Evid. 503(b)(1)).

An attorney can neither invoke nor waive the privilege if his client desires the contrary. See Russell v. Curtin Matheson Scientific, Inc., No. 76-cv-881, 1980 U.S. Dist. LEXIS 17051, at *3-4 (S.D. Tex. Apr. 15, 1980) (finding no implied waiver where client did not intend to waive the privilege). Moreover, a client may only waive the privilege through an affirmative act. See Derrick Mfg. Corp. v. Southwestern Wire Cloth Inc., 934 F. Supp. 813, 817 (S.D. Tex. 1996) ("the attorney client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit.").

As set forth in the Dawson Declaration, and as Hughes will undoubtedly confirm, Capital 4 has never waived the attorney-client privilege. The law is clear that the actions of Hughes cannot form the basis for Capital 4's waiver of the privilege. In this regard, 3Com cannot identify a single affirmative act by Capital 4 that would result in the wavier of the attorney-client privilege.

(ii)     3Com's Waiver Argument is Without Merit

3Com's motion for a finding that the attorney-client privilege has been waived is based on the flawed theory that, by allegedly consenting to Hughes' representation of Power of $Zero

customers (which, as discussed above, is false), Capital 4 also waived the attorney-client privilege with respect to all confidential communications with Hughes relating to the Power of $Zero Program. Capital 4 has repeatedly requested that 3Com provide it with legal authority in support of this argument. To date, even after filing its motion, 3Com has not produced a single case that stands for the proposition that the waiver of an attorney's potential conflict of interest results automatically in the waiver of the attorney-client privilege.

Instead, 3Com has concocted an argument based on a series of false assumptions and erroneous legal conclusions. The principal premise underpinning 3Com's argument is that Capital 4 consented to Hughes' representation of the Texas Plaintiffs. As discussed above, since Capital 4 did not provide any such consent, 3Com's argument falls apart and the Court need not look any further in regard to this issue. But even if Capital 4 did consent, 3Com's argument would still fail because it assumes, without any legal support, that the waiver of a potential conflict of interest (which is what Capital 4's consent would have amounted to had it been given) results in a waiver of the attorney-client privilege as well. Though 3Com does not present its argument in these terms, this is precisely what 3Com argues.

3Com attempts to obfuscate the utter frivolity of its argument by stating that Capital 4 should have known that Hughes' "zealous and diligent representation of the Texas Plaintiffs" would result in the disclosure of privileged and confidential information, and thus Capital 4 necessarily consented to Hughes' use of its privileged and confidential information for the benefit of the Texas Plaintiffs.

Frankly, it is disturbing that 3Com believes that an attorney's zealous representation of one client trumps his or her ethical obligation to protect another client's privileged and confidential communications from public disclosure. Beyond that, there is absolutely no basis

for 3Com's assertion that Hughes would necessarily have to disclose privileged or confidential communications in connection with his representation of the Texas Plaintiffs. To the contrary, the reasonable assumption is that the claims of the Texas Plaintiffs would be based on facts that are either within their knowledge, obtained through an investigation, or based on publicly available information.

Thus, to the extent the Texas Petition contains factual allegations relating to Capital 4's negotiations with 3Com, it does not necessarily follow that those allegations were derived from confidential communications between Capital 4 and Hughes. In fact, 3Com has not identified any specific allegations in the Texas Petition that were derived from confidential or privileged communications between Hughes and Capital 4.

Finally, although Capital 4 believes the issue of Hughes' disqualification is moot in light of Hughes' representation that he has withdrawn from representing the Texas Plaintiffs, Capital 4 agrees that Hughes should not be permitted to represent Power of $Zero customers in connection with any claims relating to the Power of $Zero program. Capital 4 does not have sufficient knowledge at this time to reach a conclusion on whether Mr. Gossett should be disqualified as well.

### III.    CONCLUSION

For the foregoing reasons, Capital 4 respectfully requests that the Court deny 3Com's motion for a finding (i) that Capital 4 is in contempt of the Stipulated Preliminary Injunction and (ii) that Capital 4 has waived the attorney-client privilege with regard to the Power of $Zero program. Capital 4 further requests that the Court grant such other and further relief as it deems just and proper.

Dated: May 16, 2008
       New York, New York

                            WINGET, SPADAFORA &
                                SCHWARTZBERG, LLP


By: /s/ Thomas Vays
     Luigi Spadafora (LS-8471)
     Thomas Vays (TV-2112)
     45 Broadway, 19th Floor
     New York, New York 10006
     (212) 221-6900

     *Attorneys for the defendants Captial
     4, Inc, F. Davis Dawson and Ish
     Villa-Lobos.*

17

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2008, a true and correct copy of the foregoing document was served using the Southern District of New York's Case Management Electronic Filing System, with electronic notification of such filing to all counsel of record.

I also certify that on this date the foregoing was served, via electronic mail and/or regular mail on the following:


Daniel Rosenfeld
DLA Piper US LLP
33 Arch Street, 26th Floor
Boston, MA  02110
daniel.rosenfeld@dlapiper.com

Simon H. Hughes, Esq.
The Hughes Law Firm, P.C.
13280 Northwest Freeway, No. F-400
Houston, Texas  77040
Simon@hugheslegal.com

Ronald P. Gossett, Esq.
Gossett & Gossett, P.A.
4700 Sheridan Street, Building I
Hollywood, Florida  33021
RonGossett@gossettlaw.com


                                        /s/ Thomas Vays
                                        Thomas Vays (TV 2112)