UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

3COM CORPORATION,

    Plaintiff,

v.

CAPITAL 4, INC., et al.,

    Defendants.

Civ. No. 07-Civ.-8707(JSR) (JDF)

# 3COM'S REPLY IN FURTHER SUPPORT OF
# PLAINTIFF'S MOTION FOR A FINDING OF CONTEMPT AND A DETERMINATION
# THAT CAPITAL 4 HAS WAIVED ITS ATTORNEY-CLIENT PRIVILEGE

Daniel E. Rosenfeld (DR 4624)
Eileen E. Pott (admitted *pro hac vice*)
DLA Piper US LLP
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6100
*Counsel for Plaintiff 3Com Corporation*

BOST1\520992.3

**TABLE OF CONTENTS**

|      |      | Page |
|------|------|------|
| I.   | INTRODUCTION ................................................................................................... 1 | |
| II.  | THE STATEMENTS IN THE DEMANDS ARE DEFAMATORY AND PROHIBITED BY THE STIPULATED INJUNCTION ............ 2 | |
|      | A. The Falsity of Hughes' Defamatory Statement is Demonstrable Now.................. 2 | |
|      |    1. Capital 4 Argues About a Legal Conclusion not a Factual Statement........................................................................................................... 2 | |
|      |    2. Capital 4's Legal Theory in Defense of the Defamation is Meritless........ 3 | |
|      |       a. A Showing of Economic Duress Would Render the First Contract Amendment Voidable, Not Void ............................ 5 | |
|      | B. Hughes' Violation of the Stipulated Injunction is Not Excused by Privilege ................................................................................................................ 5 | |
|      |    1. The Stipulated Injunction Enjoins All Defamatory Statements................. 5 | |
|      |    2. Hughes' Defamatory Statements Exceed the Litigation Privilege ............ 6 | |
| III. | HUGHES AND CAPITAL 4 VIOLATED THE STIPULATED INJUNCTION............. 7 | |
| IV.  | CAPITAL 4 WAIVED ITS ATTORNEY-CLIENT PRIVILEGE.................................... 8 | |
|      | A. Capital 4's Undisputed Conduct Demonstrates Waiver ........................................ 8 | |
|      | B. Hughes' Conduct Demonstrates Waiver................................................................ 9 | |
|      | C. Capital 4 and Hughes Contradict Each Other Concerning Capital 4's Waiver and an Evidentiary Hearing is Necessary to Decide the Issue ................ 10 | |
| V.   | CONCLUSION................................................................................................................ 10 | |

## **TABLE OF AUTHORITIES**          **Page**

### FEDERAL CASES

DuFort v. Aetna Life Insurance Co., 818 F.Supp. 578, 581-82 (S.D.N.Y. 1993) ........................4, 5

Pasqualini v. MortgageIT, Inc., 498 F.Supp. 2d 659, 670 (S.D.N.Y. 2007) ...................................2

VKK Corp. v. National Football League, 244 F.3d 114, 123 (2d Cir. 2001).............................4, 5

### STATE CASES

Lacher v. Engel, 33 A.D.3d 10, 13 (N.Y. App. Div. 1st Dep't, 2006) ............................................6

Plaintiff, 3Com Corporation ("3Com") respectfully submits this Reply in Further Support of its Motion for Contempt and for a Determination that Capital 4 has Waived Attorney-Client Privilege ("3Com's Motion for Contempt") and the Affidavit of Counsel submitted therewith ("Counsel Aff.").[1] More specifically, this Reply responds to Capital 4, Inc.'s ("Capital 4") Memorandum in Opposition to Plaintiff's Motion for a Finding of Contempt and a Determination that Capital 4 Has Waived Its Attorney-Client Privilege ("Capital 4's Memo") and to Simon H. Hughes' and The Hughes Law Firm's (collectively, "Hughes") Memorandum in Support of Witness Hughes' Response to Plaintiff's Motion for Contempt and Determination of Waiver of the Attorney-Client Privilege ("Hughes' Contempt Memo").[2]

## I.  INTRODUCTION

Rather than providing a basis to deny the relief sought by 3Com, Capital 4's, Hughes' and Gossett's oppositions to 3Com's Motion for Contempt and 3Com's Motion to Disqualify Simon H. Hughes and Ronald P. Gossett ("3Com's Motion to Disqualify"), further underscore that Capital 4 and Hughes have cooperated to violate the Stipulated Injunction causing injury to 3Com and that Capital 4 has waived its attorney-client privilege by its own purposeful conduct.

Notably, Capital 4's (misguided) motive for its cooperation with Hughes in their ongoing efforts to blame 3Com for Capital 4's unraveling is laid bare in Capital 4's contention that Hughes' representation of former Power of $Zero customers has somehow advanced Capital 4's contentions in this case. This motivation helps to explain Capital 4's cooperation with Hughes,

---

[1] Unless otherwise defined, the terms in initial caps shall have the meanings assigned to them in 3Com's Memorandum in Support of Plaintiff's Motion for Contempt and for a Determination that Capital 4 has Waived the Attorney-Client Privilege and in 3Com's Memorandum in Support of Plaintiff's Motion to Disqualify Simon H. Hughes and Ronald P. Gossett.

[2] This Reply refers to Hughes' Memorandum in Support of Witness Hughes' Response to Plaintiff's Motion to Disqualify Simon H. Hughes and Ronald P. Gossett as "Hughes' Disqualification Memo," and also refers to Ronald P. Gossett's Memorandum of Law on behalf of Deposition Witnesses In Opposition to Plaintiff's Motion to Disqualify Their Counsel Ronald P. Gossett as "Gossett's Memo."

which despite its verbal protestations, continues unabated in the form of Capital 4's equivocal response to Hughes' conduct. Ultimately, it is Capital 4's equivocal response, that permits and encourages Hughes contempt and warrants attribution of Hughes' contempt to Capital 4. Capital 4's cooperation in this regard is the purposeful conduct that should give rise to a finding that Capital 4 waived its attorney-client privilege (even if Capital 4 also intended to deny having done so in this proceeding).

## II. THE STATEMENTS IN THE DEMANDS ARE DEFAMATORY AND PROHIBITED BY THE STIPULATED INJUNCTION

### A. The Falsity of Hughes' Defamatory Statement is Demonstrable Now

Capital 4's contention that Hughes' statements concerning 3Com are not defamatory because 3Com did, in fact, owe duties to Power of $Zero customers (as Capital 4 has incorrectly alleged in its Counterclaim), is premised on a misstatement or misapprehension of the grounds for 3Com's request for relief. See Capital 4's Memo, pp. 2-3, 11-12. Capital 4's argument in this regard is essentially that Hughes' statement in the Demands was not false (and therefore not defamatory) because 3Com wrongfully "abandoned" the Power of $Zero program.[3] However, this contention fails to address 3Com's more specific contention.

#### 1. Capital 4 Argues About a Legal Conclusion not a Factual Statement

Hughes' Demands purported to make the specific factual statement that 3Com was required to provide specific customers with telecommunications services pursuant to written agreements with those customers and "deci[ded]" not to do so. See Exhibits H and I to Counsel Aff. This statement purported to be a statement of fact, but it is patently false. A determination regarding its falsity can be made by reference to the written agreements between those specific

---

[3] Under New York law, defamation is shown by four elements: (1) a false and defamatory statement of an concerning the plaintiff; (2) publication by defendant of such a statement to a third party; (3) fault on part of the defendant; and (4) injury to the plaintiff. Pasqualini v. MortgageIT, Inc., 498 F.Supp. 2d 659, 670 (S.D.N.Y. 2007).

customers and Capital 4, agreements to which 3Com was not a party. The falsity of Hughes' statement is only tangentially related to the larger legal question asserted by Capital 4, namely whether 3Com owes duties to Power of $Zero customers stemming from 3Com's allegedly wrongful "abandon[ment of] the [Power of $Zero] program," which Capital 4 alleges took place in connection with 3Com's and Capital 4's renegotiation of the "Go Dark" provision of their Operations Agreement. Counterclaim ¶ 53, 64, ; Capital 4's Memo, p. 2. That legal issue, i.e., whether 3Com's conduct toward Capital 4 in connection with the Power of $Zero program was wrongful, or a breach of the agreements between Capital 4 and 3Com, is not at all the same as whether 3Com breached written agreements with Power of $Zero customers. Accordingly, Capital 4's attempt to fold Hughes' lie into Capital 4's own (independently meritless) legal argument that 3Com is somehow liable for Capital 4's collapse does not make the lie true, or prevent the Court from determining its falsity on this Motion.

### 2. Capital 4's Legal Theory in Defense of the Defamation is Meritless

Even insofar as Capital 4 was correct that the defamatory nature of Hughes' statements relates to whether "3Com was required to support the Power of $Zero program," its assertion that the issue can only be decided "after the conclusion of discovery and after both sides have a full and fair opportunity to be heard," is incorrect. The issue can be decided now because, as a matter of law, Capital 4's agreements with 3Com do not require 3Com to provide such "support." See Capital 4's Memo at pp. 11-12.

It is undisputed that on August 7, 2007, Capital 4 and 3Com executed a First Contract Amendment. See First Contract Amendment, attached as Exhibit S to the Supplemental Affidavit of Counsel filed in connection with this Reply ("Supplemental Counsel Aff."). The First Contract Amendment replaces Sections 4.3 and 4.4 of the parties' Operations Agreement, and provides, in pertinent part, that:

  (c)  Upon request by 3Com, Capital 4 shall assign to 3Com all rights and obligations of Capital [4] under those Capital 4 POZ Customer Agreements which 3Com, <u>in its sole discretion</u>, believe may have a Material Adverse Effect on 3Com if such Customer Agreements are not assigned to 3Com.

<u>See</u> Exhibit S to Supplemental Counsel Aff. at §4.3.3(c) (emphasis supplied).[4]

  Capital 4's only argument in defense of its position that 3Com was required to "support the Power of $Zero program by preventing Power of $Zero customers from losing Public Access Services" appears to be that the First Contract Amendment was procured by economic duress. In this regard, Capital 4 argues that it "did not have any reasonable alternatives" to executing the First Contract Amendment, which Capital 4 admits gave "3Com … the option to request assignment of only the Power of $Zero customers" 3Com identified. <u>See</u> Capital 4's Memo at pp. 2-3. As a matter of law, that argument cannot void the First Contract Amendment.

  New York law is well-settled and provides that:

> Because an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases. Otherwise, the stronger party to a contract or release would routinely be at risk of having its rights under the contract or release challenged long after the instrument became effective.

<u>VKK Corp. v. National Football League</u>, 244 F.3d 114, 123 (2d Cir. 2001). <u>See also</u> <u>DuFort v. Aetna Life Ins.</u>, 818 F. Supp. 578, 581 (S.D.N.Y. 1993) ("financial or business pressure of all kinds, even if exerted in the context of unequal bargaining power, does not constitute economic duress") (internal quotation and citation omitted). Therefore, to establish a claim of economic duress, Capital 4 must demonstrate, at a minimum, that 3Com obtained the First Contract

---

[4] The First Contract Amendment defines Material Adverse Effect as "(a) any material adverse effect on the business, condition (financial or otherwise), operations, or properties of Capital 4 or 3Com, or (b) any material adverse effect on the ability of Capital 4 to perform its obligations under this Operations Agreement or License Agreement." <u>See</u> Exhibit S to Supplemental Counsel Aff. at §4.3.1.

Amendment "(1) by means of a wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no alternative." DuFort, 818 F.Supp. at 581-82.  Capital 4 has not alleged, nor can it, that any of these elements is satisfied in connection with its renegotiation of First Contract Amendment; nor did Capital 4 promptly repudiate the First Contract Amendment.  As a result, Capital 4 cannot show that Hughes' defamatory statements were true or that the defamatory nature of the statements depends on an issue that cannot be decided now.

        *a.*    *A Showing of Economic Duress Would Render the First Contract Amendment Voidable, Not Void*

Finally, even if Capital 4 was able to demonstrate that it was deprived of its free will in connection with its renegotiation of the Operations Agreement, economic duress would render the agreement voidable, not void.  VKK Corp., 244 F.3d at 123.  Since such a showing has not been made, Hughes' statement was false at the time it was made.  Accordingly, a simple (and facially meritless) claim of economic duress does not alter the contractual relationships between Capital 4 and 3Com, much less the contractual relationships between 3Com and Power of $Zero customers, which was the more specific subject of Hughes' defamatory statement.

    **B.**    **Hughes' Violation of the Stipulated Injunction is Not Excused by Privilege**

        **1.**    **The Stipulated Injunction Enjoins All Defamatory Statements**

By its express terms, the Stipulated Injunction enjoins all defamatory statements regardless of privilege.  The Stipulated Injunction provides, in pertinent part:

> Capital 4, including its principals, officers, directors, employees, agents, servants, successors and assigns, are hereby ENJOINED and RESTRAINED from making defamatory statements concerning 3Com.

Stipulated Injunction, ¶ 1.  Capital 4, and Hughes, could have negotiated a carve-out for privilege had they elected to do so.  They did not.  Further, Hughes admits that he had notice of the

issuance of the Stipulated Temporary Restraining Order in this action, which contains a provision enjoining defamatory statements concerning 3Com. See Hughes' Contempt Memo at p. 6; DKT #3. Accordingly, Hughes was, at a minimum, on inquiry notice that a further injunctive order was likely to issue, which would continue to enjoin him from making defamatory statements concerning 3Com.

### 2. Hughes' Defamatory Statements Exceed the Litigation Privilege

Even if a privilege defense were available, which it is not, Hughes' statements exceed the litigation privilege. Generally speaking, a statement made in the course of legal proceedings is absolutely privileged if it is pertinent to the litigation. Lacher v. Engel, 33 A.D.3d 10, 13 (N.Y. App. Div. 1st Dep't, 2006). However, the "absolute privilege may be lost if abused." Id. (internal quotation and citation omitted). Specifically, "the privilege is limited to statements which are not only pertinent to the subject matter of the lawsuit but are made in good faith and without malice." Id. (internal quotation and citations omitted).

Here, Hughes' statements are neither pertinent to the Demands nor made in good faith and without malice. Hughes' statement is not necessary to the claims asserted in the Demands because, among other reasons, Hughes alleges no breach of contract claim in the Demands. Thus, the statement that 3Com breached contractual obligations to Power of $Zero customers is not pertinent to the lawsuit Hughes brought. And, Hughes' publication of the false statement to Main Street National Bank was unnecessary.

Second, Hughes' (and Capital 4's) bad faith and malice are clear: Hughes negotiated Capital 4's agreements with 3Com, and was therefore undoubtedly aware that it was Capital 4, not 3Com, that was contractually obligated to provide public access services to Power of $Zero customers. Hughes was also familiar with the Power of $Zero program, including Capital 4's agreements with Power of $Zero customers. Few could have known better than Hughes that

Capital 4, not 3Com, had agreed in writing to provide the public access services to the customers.  In addition, and as discussed in 3Com's moving papers, Hughes is certainly aware that defamatory statements such as those contained in the Demands are precisely the types of statements intended to be prohibited by the Injunction.  For these reasons, Hughes' statements exceed the litigation privilege even if a privilege defense was available.

### III.    HUGHES AND CAPITAL 4 VIOLATED THE STIPULATED INJUNCTION

Hughes and Capital 4 suggest, without factual or legal authority, that Hughes is not bound by the Stipulated Injunction, and that, as a result neither Hughes nor Capital 4 violated it.  In this regard, they rely on Hughes' alleged termination of his relationship with Capital 4 prior to sending the Demands.  See Capital 4's Memo at pp. 8-9; Hughes' Contempt Memo at p. 9.

This argument cannot be credited.  First, Hughes claims on one hand that he terminated his representation of Capital 4 on October 17, 2007 and on the other hand that he remained counsel of record on behalf of Capital 4 in three civil actions until December of 2007.  See Hughes' Contempt Memo, p. 5.  Capital 4 suggests that Hughes was its counsel through December, 2007.  See Capital 4's Memo at p. 4.  Capital 4's and Hughes' attempts to capitalize on the termination of Hughes' relationship with Capital 4 is dubious at best, particularly where they themselves admit that the unwinding of their agency relationship was anything but surgical.

Second, the Stipulated Injunction should be construed according to its plain meaning.  At the time the Stipulated Injunction issued, Hughes was an attorney for Capital 4 and therefore an agent of Capital 4.  As a result, the Stipulated Injunction binds Hughes.  To hold otherwise would allow parties to circumvent court orders by simply asserting that they terminated an agency relationship (when the facts suggest otherwise).  In addition, as his former client, Hughes necessarily owed continued duties to Capital 4, and therefore Capital 4 continued to retain control over Hughes conduct as it affected any matter related to Hughes' prior representation of

Capital 4. Specifically, Capital 4 had the right to limit or prevent Hughes from making the defamatory statements by effectively prohibiting Hughes' representation of Capital 4's former customers. Capital 4 failed to do so. Under these circumstances, Capital 4's argument that it cannot be held liable for defamation without having made the statement misses the mark.[5]

### IV.    CAPITAL 4 WAIVED ITS ATTORNEY-CLIENT PRIVILEGE

Capital 4's and Hughes' arguments that Capital 4 did not waive its attorney-client privilege rests on Capital 4's and Hughes' assertions that: (1) Capital 4 did not consent to Hughes' representation of Capital 4's former customers (see Capital 4's Memo at pp. 4-5); and (2) Capital 4 had terminated its relationship with Hughes by the time Hughes commenced his representation of the Texas Plaintiffs (see Hughes' Contempt Memo pp. 11-12). Neither assertion disposes of the contempt and privilege issues 3Com has identified because whether or not Capital 4 waived its attorney-client privilege depends on Capital 4's and Hughes' conduct, not their assertions, particularly where their conduct is at odds with their assertions.

#### A.    Capital 4's Undisputed Conduct Demonstrates Waiver

Capital 4 now claims it never gave Hughes permission to represent its former customers; however, the remainder of Capital 4's undisputed conduct, is consistent with a finding of waiver. First, Capital 4 apparently never demanded that Hughes or Gossett return Capital 4's confidential and privileged information. Second, Capital 4 failed to confirm that Hughes has in fact, withdrawn from his representation of former Power of $Zero customers. Capital 4 has continued on this nonchalant path by taking the position that disqualification of Hughes is moot "in light of Hughes' representation that he has withdrawn from representing the Texas Plaintiffs." See Capital 4's Memo at p. 16. But, Hughes continues to represent those customers: Hughes filed a

---

[5] 3Com does not, by this Motion, seek to amend its Complaint to add a claim for defamation against Capital 4 arising out of the Demands. Instead, 3Com explains why Capital 4's conduct has amounted to a violation of the Stipulated Injunction.

pleading on behalf of Capital 4's former customers 56 days after Capital 4 purported to revoke its consent to the representation, and neither Hughes nor Gossett deny that they are parties to a fee-splitting arrangement (which would require Hughes to perform services) in connection with their joint representation of Capital 4's former customers.  See Gossett's Memo at pp. 20-21; Hughes' Disqualification Memo, pp. 2-4.  Capital 4's failure to vigilantly protect its rights is consistent with a determination that its conduct constitutes a waiver of privilege.

### B. Hughes' Conduct Demonstrates Waiver

Similarly, whether or not Hughes' representation of the former Capital 4 customers has resulted in the disclosure of Capital 4's confidential and privileged information to third parties is a factual issue.[6]  While Hughes asserts that the information he used in connection with those representations was limited to information he uncovered in "the public record," and documents Hughes received from the former customers, Gossett reveals that Hughes provided Gossett with a USB drive containing information with labels that suggest that the drive contains privileged and/or work product information.[7]

Notably, Gossett, who possesses information he received from Hughes in connection with their representation of former Capital 4 customers, has not taken a position on Capital 4's waiver of its attorney-client privilege.  Instead, Gossett implicitly acknowledges that the use of the material he received from Hughes would be improper by asserting that, while he has represented those clients since at least April 9, 2008, he has yet to review more than three

---

[6] Hughes' Contempt Memo reveals suggest that his contact with former Capital 4 customers such as Evans Ewan was plain solicitation.  Hughes' claim that he contacted such clients using information "in the public record" is simply not credible in light of the documentary evidence demonstrating direct solicitation.  See Hughes Contempt Memo at p. 6.

[7] Hughes' communication of information to Gossett is discussed more fully in 3Com's Reply in Support of its Motion to Disqualify Simon H. Hughes and Ronald P. Gossett.  At a minimum, an independent forensic examination of Gossett's computers, Hughes' computers and the USB drive is justified to determine which information was used, when, and by whom, and whether the information used and/or disclosed was once attorney-client protected material.

documents provided by Hughes; however, Gossett has not returned the information to Hughes, let alone Capital 4.  See Gossett's Memo at pp. 18-19.  In doing so, Gossett carefully avoids taking a position as to whether Capital 4 provided consent for Hughes' representation of the Texas Plaintiffs.  Gossett, much like Hughes and Capital 4, attempts to "have it both ways," so as to preserve his own ability to argue in the context of another lawsuit that Capital 4 waived its attorney-client privilege.

### C. Capital 4 and Hughes Contradict Each Other Concerning Capital 4's Waiver and an Evidentiary Hearing is Necessary to Decide the Issue

At a bare minimum, if the Court credits Dawson's affidavit, the Court should hold an evidentiary hearing to resolve the contradiction between the affidavits submitted by Defendant F. Davis Dawson, Capital 4's president, and Hughes.  Capital 4 acknowledges that Hughes contradicts Dawson's denial that Dawson ever provided Hughes with consent to Hughes' representation of Capital 4's former customers.  See Capital 4's Memo at n. 1.  This discrepancy between Capital 4 and its former counsel about the facts relevant to Capital 4's waiver requires, an evidentiary hearing on the issue.

### V. CONCLUSION

In light of the foregoing, 3Com respectfully requests that this Court grant its Motion for Contempt and for a Determination that Capital 4 has Waived Attorney-Client Privilege in its entirety.  In the alternative, 3Com respectfully requests that this Court schedule an evidentiary hearing in order to resolve the factual issues raised by Capital 4's, Hughes' and Gossett's submissions in response to 3Com's Contempt Motion and 3Com's Disqualification Motion, and allow the parties to engage in limited discovery in advance of that hearing.  3Com respectfully requests further that this Court grant such other and further relief as justice requires.

Respectfully submitted,


_____/s/ Daniel E. Rosenfeld_____
Daniel E. Rosenfeld (DR 4624)
Eileen E. Pott (admitted *pro hac vice*)
DLA Piper US LLP
33 Arch Street, 26th Floor
Boston, MA 02110
(617) 406-6100
*Counsel for Plaintiff 3Com Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2008, a true and correct copy of the foregoing document was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record.

I also certify that on this date the foregoing was served, via electronic mail and via United Parcel Service, on the following:

Ronald P. Gossett, Esq.  
Gossett & Gossett, P.A.  
4700 Sheridan Street, Building I  
Hollywood, FL 33021  
RonGossett@gossettlaw.com

Simon H. Hughes, Esq.  
The Hughes Law Firm, P.C.  
13280 Northwest Freeway, No. F-400  
Houston, TX 77040  
Simon@hugheslegal.com

Thomas Vays, Esq.  
Winget, Spadafora & Schwartzberg, LLP  
45 Broadway, 19th Floor  
New York, NY 10006  
Vays.T@wssllp.com

                                                         /s/ Daniel E. Rosenfeld  
                                                           Daniel E. Rosenfeld