**EXHIBIT S**

## First Contract Amendment

WHEREAS, Capital 4, Inc. ("Capital 4") and 3Com Corporation ("3Com") are Parties to an Operations Agreement dated November 10, 2006 ("Operations Agreement"); and

WHEREAS, Capital 4, Inc. ("Capital 4") and 3Com Corporation ("3Com") are Parties to an License Agreement dated November 10, 2006 ("License Agreement"); and

WHEREAS, The Operations Agreement has expired by its terms; and

WHERAS, certain provisions survived expiration or termination of the Operations Agreement; and

WHEREAS, Capital 4 and 3Com (each a "Party", and together the "Parties") now wish to Amend the Operations Agreement to clarify certain surviving rights and obligations of the Parties which may be exercised upon the occurrence of certain events;

THEREFORE, for and inconsideration of the mutual promises and consideration given and received as stated herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to amend the Operations Agreement as follows:

1. Section 4.3 and 4.4 of the Operations Agreement is hereby deleted in their entirely and replaced with the following:

"4.3   "Go Dark" Solution

4.3.1  In order to further protect the POZ™ Program by preventing the interruption, temporary suspension or cancellation of services provided by Public Access Service providers to POZ™ Customers under the POZ™ Customer Agreements, existing prior to and during the term of this Operations Agreement, and until the expiration of all POZ™ Customer Agreements, prior to and during the term of this Operations Agreement, and only in connection with Capital 4's obligations as set forth in these POZ™ Customer Agreements, Capital 4 will make commercially reasonable efforts to (a) timely fulfill its obligations as contemplated in the POZ™ Customer Agreements, unless and only to the extent that the same shall be contested in good faith due to alleged breaches of covenants by Customers, or any other circumstances beyond the control of Capital 4; (b) do all things necessary to preserve and maintain its rights, under the POZ™ Customer Agreements in which failure to do so could reasonably be expected to have a Material Adverse Effect on either Capital 4 or 3Com; and (c) cause the POZ™ Property to be protected, maintained and kept in good standing as may be reasonably necessary to conduct its business properly and efficiently. For purposes of this Agreement, "Material Adverse Effect" shall mean (a) any material adverse effect on the business, condition (financial or otherwise), operations, or properties of Capital 4 or 3Com, or (b) any material adverse effect on the ability of Capital 4 to perform its obligations under this Operations Agreement or the License Agreement.

4.3.2  Should Capital 4 become insolvent, declare bankruptcy, or otherwise fail to comply with any of the covenants set forth in Sections 4.3.1 above and 2.5.1, 2.5.2, and 2.5.3 of this Operations Agreement, Capital 4 shall provide immediate written notice and/or allow notice to be provided by Public Access Service providers, as the case may be, (collectively the "Notice") to 3Com asserting the occurrence of any such event or eminent event. Capital 4 shall immediately commence negotiations in an effort to demonstrate to 3Com that it has negotiated acceptable terms with any affected Public Access Service provider to ensure the uninterrupted service to the POZ™ Customers, under the terms and conditions of the existing POZ™ Customer Agreements. If an event of eminent interruption of service is not remedied by Capital 4 through negotiation of acceptable terms with the Public Access Service provider(s), or, in the event that Capital 4 is unable to secure a reasonable cure period from the underlying service provider(s), 3Com, at its sole discretion, may assist Capital 4, financially or otherwise, under terms and conditions agreed upon by the Parties, to remedy or cure any such default under the Public Access Service agreements.

4.3.3  3Com and Capital 4 shall cooperate with one another to implement the following actions immediately, and without opportunity to cure, following commercially reasonable indications: (i) of Capital 4's intent to declare itself insolvent; or (ii) that Capital 4 is otherwise temporarily unable to honor its obligations under the existing POZ™ Customer Agreements:

    (a)    Capital 4 shall produce a residual analysis and portfolio report (the "Report") to 3Com. The Report will identify:

        1. All existing Public Access Service providers;

        2. All existing POZ™ Customers under agreement with Capital 4;

        3. All Residual Funds associated with the existing Capital 4 POZ™ Customer Agreements and the source of the funds;

        4. All required payments to the Public Access Service providers associated with the existing Capital 4 POZ™ Customer Agreements;

        5. For any projects in process, current carrying costs and estimated post-conversion costs;

        6. Net Contract Value as calculated by: (Total Capital 4 POZ™ Customer Agreement Remaining Payments) minus (Total Funding Source Remaining Payments) minus (Total estimated Public Access Service provider Payments) for each Capital 4 POZ™ Customer Agreement; and

        7. Total 3Com Exposure is calculated as: Total Net Contract Value of the affected Capital 4 POZ Customer Agreements. If the Total 3Com

        Exposure is a deficit, 3Com shall have the right to an additional administrative fee not to exceed 5% of such deficit.

(b)     Capital 4 shall assign, to 3Com or any person or entity designated in writing by 3Com, any or all services performed by Capital 4 in accordance with the terms of this Operations Agreement which 3Com, in it sole discretion, identifies as necessary for continued performance of the POZ Program including, but not limited to, functionality of the POZ™ Property and POZ™ Back Office Services; and

(c)     Upon request by 3Com, Capital 4 shall assign to 3Com all rights and obligations of Capital under those Capital 4 POZ Customer Agreements which 3Com, in its sole discretion, believe may have a Material Adverse Effect on 3Com if such Customer Agreements are not assigned to 3Com.

(d)     Capital 4 shall assign to 3Com all rights to any Residual Funds associated with all Capital 4 POZ™ Customer Agreement assigned to 3Com pursuant to Section 4.3.3 (c) of this Operations Agreement including, without limitation Residual Funds identified in any POZ™ Funding Agreement related to such Capital 4 POZ Customer Agreements, and directing all funding sources or customers, as the case may be, to remit the Residual Funds payments directly to 3Com until the expiration of each such Capital 4 POZ™ Customer Agreement term.

(e)     3Com shall assume all of the obligations of any and all Public Access Service commitments entered into by Capital 4 in connection with those Capital 4 Power of $Zero Customer Agreements assigned to 3Com pursuant to Section 4.3.3 (c) above. 3Com shall satisfy payment of such obligations with the Residual Funds associated with Capital 4's POZ Customer Agreements including, without limitation, the POZ Funding Agreements; *provided*, *however*, that the Total 3Com Exposure, as identified in the 3Com Report, shall remain Capital 4's obligation to 3Com and 3Com shall be entitled to withhold from the Licensor's Fees an amount sufficient to satisfy the deficit, if any, on a monthly basis, equal to the Net Contract Value of each Capital 4 Power of $Zero Customer Agreement divided by the number of months remaining for each such agreement (the "Hold Back"). Notwithstanding the foregoing, the Hold Back shall not exceed fifty (50%) percent of the Licensor's Fees for any given month, net of any prepayment facility allocation as contemplated in the License Agreement. Capital 4 may elect to satisfy the Total 3Com Exposure (if a deficit) through a mutually acceptable alternate proposal. The above notwithstanding, nothing contained in this Section 4.3.3 (d) shall act to limit the right for 3Com to withhold the entire amount of License Fee's owed Capital 4 at any time in order to satisfy monies owed to 3Com under any financing agreement between the Parties including,

without limitation, the Line of Credit Agreement and the Promissory Note entered into between the parties on or about August 7, 2007.

(f) For projects in process, 3Com agrees to use the estimated post conversion costs in calculating the Total 3Com Exposure, after an additional grace period of ninety (90) days from the date of the Notice under to complete any outstanding projects in progress.

4.4 Effect of Termination by 3Com for Cause.
In addition to any other rights to which 3Com may be entitled as set forth in this Agreement or in law, in the event that this Agreement is terminated by 3Com pursuant to Section 4.2 or 4.3 above, Capital 4 shall cooperate with 3Com in facilitating the assignment to 3Com of the following: (a) all POZ™ VAR and Capital 4 POZ Customer Agreements in the possession of Capital 4 under which Capital 4 is a Party that 3Com, pursuant to Section 4.3.3 (c) above, reasonably believes may have a Material Adverse Effect on 3Com; (b) all rights to the Residual Funds associated with the affected POZ Customer Agreements identified by 3Com as potentially having a Material Adverse Affect on 3Com, and (c) cease direct communications with all 3Com POZ™ VARs so assigned to 3Com even if prior written authorization was granted."

2. All other terms and conditions that survive termination of the Operations Agreement shall remain in shall remain in effect.

This First Amendment is hereby signed by the below duly authorized representative of Parties and shall have an Effective Date of August 6, 2007.

Executed on the 7th day of August 2007.

Capital 4, Inc.

By: _____
Name: Jean Stiegemeier
Title: Chief Executive Officer

3Com Corporation

By: _____
Name
Title: