# United States District Court
# Eastern District of Pennsylvania

Case Number 08-CV-534 (MMB)

De Lage Landen Financial Services, Inc.,

     Plaintiff/Counterclaim Defendant,

vs.

Viewpoint Computer Animation, Inc.,        **Putative Class Representation**

     Defendant/ Counterclaim Plaintiff/
     Third Party Plaintiff,

vs.

3Com Corporation, and Capital 4, Inc.,

     Additional    Counterclaim
     Defendants/ Third Party Defendants.

                      /

# Amended Answer, Affirmative Defenses, Amended Counterclaim and Third Party Complaint

Defendant, Viewpoint Computer Animation, Inc., by and through its undersigned attorneys, files its amended answer to Plaintiff's complaint, and states:

1.     Without knowledge, and therefore, denied.

2.     Defendant admits that it is a corporation formed under the laws of the Commonwealth of Massachusetts, and denies the remainder of the allegations of this paragraph.

3.     Without knowledge, and therefore, denied.

4.     Denied.

5.    Admitted that the document attached to the complaint as Plaintiff's Exhibit A is a true and correct copy of a document signed by Defendant and purportedly by Plaintiff, but denies the remainder of the allegations of this paragraph. Further, Defendant affirmatively avers that the document attached to the complaint as Plaintiff's Exhibit A is only one part of a multiple part contract for telephone services, as more particularly alleged hereinafter. A true and correct copy of the entirety of the contract is attached hereto as Defendant's Exhibit 1, and by reference, is made a part hereof.

6.    Denied. Further, Defendant affirmatively avers that the document attached to the complaint as Plaintiff's Exhibit A was represented to Defendant by Plaintiff and Plaintiff's partner, Counterclaim Defendant Capital 4, Inc., (which partnership is more particularly alleged hereinafter), on behalf of itself and the "Power of $Zero™ Partnership," to be a "Funding Agreement" through which, in connection with the balance of Defendant's Exhibit 1, Defendant was to receive free telephone equipment more particularly described in Plaintiff's Exhibit A, in exchange for entering into a multi-year, fixed-price contract for telephone and internet service.

7.    Defendant has admitted that the document attached to the complaint as Plaintiff's Exhibit A is a true and correct copy of a document signed by Defendant. The content of the document is set forth therein. However, the content of much of Plaintiff's Exhibit A is contradicted by the content of the balance of the contract between the parties, Defendant's Exhibit 1. It was always the intention of Defendant, and the understanding of Defendant based upon written representations made by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership," (as more particularly alleged hereinafter)

2

that the entirety of the contract between the parties was able to be canceled by

Defendant if Capital 4, Inc., or the "Power of $Zero™ Partnership" failed to provide the

telephone services which were the "predominate element"[1] of the contracts. Further, it

was always the intention of Defendant, and the understanding of Defendant based upon

written representations made by Capital 4, Inc., on behalf of itself and the "Power of

$Zero™ Partnership," (as more particularly alleged hereinafter) that any obligation to

pay the "funding agreement" after cancellation of the contract by Defendant would be

the responsibility of Capital 4, Inc., or the "Power of $Zero™ Partnership." Such

obligation to pay was assumed by 3Com Corporation in the Operations Agreement

signed by 3Com Corporation and Capital 4, Inc., on November 11, 2006, a copy of

which is attached hereto as Defendant's Exhibit 3.

8.      Defendant has admitted that the document attached to the complaint as Plaintiff's

Exhibit A is a true and correct copy of a document signed by Defendant. The content

of the document is set forth therein. However, the content of much of Plaintiff's Exhibit

---

[1]      Under Pennsylvania law, which controls here, whether a contract
is classified as sales or service turns on whether the goods or the
services are the essential or predominant element of the
transaction. *See Whitmer v. Bell Telephone Co. of Pennsylvania,*
361 Pa.Super. 282, 285, 522 A.2d 584, 587 (1987) ("When the
transaction involves predominantly the rendition of services, the
fact that tangible movable goods may be involved in the
performance of services does not bring the contract under the
[UCC]"). *See also* 1 ANDERSON'S UNIFORM COMMERCIAL CODE
(3RD ED.) § 2-105:38 at 580-81 (when selling or supplying of
goods is merely "incidental" to a contract to render service, it is
a service contract and not a contract for the sale of goods).

*Matthews v. Metropolitan Contract Carpets*, Civ. A. No. 88-0935, 1988 WL 124900 *1
(E.D.Pa. 1988).

3

A is contradicted by the content of the balance of the contract between the parties, Defendant's Exhibit 1. It was always the intention of Defendant, and the understanding of Defendant based upon written representations made by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership," (as more particularly alleged hereinafter) that the entirety of the contract between the parties was able to be canceled by Defendant if Capital 4, Inc., or the "Power of $Zero™ Partnership" failed to provide the telephone services which were the predominate element of the contracts. Further, it was always the intention of Defendant, and the understanding of Defendant based upon written representations made by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership," (as more particularly alleged hereinafter) that any obligation to pay the "funding agreement" after cancellation of the contract by Defendant would be the responsibility of Capital 4, Inc., either individually, or acting on behalf of the RICO Enterprise, as alleged hereinafter. Such obligation to pay was assumed by 3Com Corporation in the Operations Agreement signed by 3Com Corporation and Capital 4, Inc., on November 11, 2006, a copy of which is attached hereto as Defendant's Exhibit 3.

9.     Denied. Defendant affirmatively avers that under the contract attached as Defendant's Exhibit 1, Defendant contracted for telephone services with the "strategic alliance of companies" (as earliest described by Plaintiff to Defendant—see Defendant's Exhibit 2 attached hereto) which included Plaintiff, Counterclaim Defendant 3Com Corporation (hereafter "3Com") and Capital 4, Inc., later named by them as the "Power of $Zero Partnership," alleged hereinafter by Defendant to be a RICO Enterprise.

4

10.   Denied. Defendant affirmatively avers that under the contract between the parties, Defendant's Exhibit 1, Defendant was to pay a total of $3,628.66 per month for telecommunication services.

11.   Denied.

12.   Without knowledge, and therefore, denies, that the failure to provide telephone services was occasioned by the insolvency of Capital 4, Inc. Defendant affirmatively avers that if Capital 4, Inc., became insolvent, then 3Com was contractually obligated to provide said services, as more particularly alleged hereinafter. See Defendant's Exhibit 3, p. 12, ¶ 4.4.3(d). Further, Defendant affirmatively avers that it is and was a third-party beneficiary of said contract.

13.   Without knowledge, and therefore, denied.

14.   Denied. Defendant affirmatively avers that it has paid more than it was contractually obligated to pay for telephone services, and that it has been damaged by the failure of Plaintiff, Capital 4, Inc., and 3Com (individually and as the "Power of $Zero™ Partnership") to provide said telephone services.

15.   Denied.

16.   Denied.

17.   Defendant realleges its answers to the repeated paragraphs.

18.   Denied.

19.   Denied.

20.   Defendant denies all remaining allegations not previously addressed, if any.

Wherefore, Defendant having answered Plaintiff's complaint, Defendant demands strict

5

proof of all items not admitted, demands its attorneys' fees for defending this action, demands

trial by jury of all issues so triable, and requests that this court grant it such further relief as this

court deems just.

# Allegations of Facts Common to Affirmative Defenses, Class Action Counterclaim, and Third Party Claim

## Parties

### De Lage Landen Financial Services, Inc.[2]

1.    Plaintiff is a corporation organized and existing under the laws of the State of Michigan.

2.    Plaintiff is authorized to do, and is doing, business in the Commonwealth of Pennsylvania at all times material hereto.

3.    At all times material hereto, Plaintiff represented to the public in general, and Defendant in particular, through its 2005 through 2008 Profit Corporation Information Update filed with the State of Michigan, that the general nature and kind of business in which it is engaged is as a "management company."

4.    As of February 7, 2005, Plaintiff held itself out to the public in general, and Defendant in particular, as a specialist in office equipment financing, and telecommunication financing, with total assets of $4.5 billion, and 700 employees in its Wayne, PA, offices.

5.    At all times material hereto, Plaintiff was a wholly owned subsidiary of De Lage Landen USA, Inc., which in turn was a wholly owned subsidiary of De Lage Landen

---

[2]Hereafter Plaintiff, De Lage Landen Financial Services, Inc., will be referred to as either "Plaintiff," "De Lage Landen," or "DLL."

6

International B.V., with De Lage Landen International B.V., having assets of $17.8 billion.

6.  At all times material hereto, the parent of De Lage Landen International, B.V., was Rabobank International, headquartered in the Netherlands.

7.  As did the parent, each subsidiary held itself out to the public in general, and Defendant in particular, as a "telecom specialist."

8.  Defendant has knowledge, information and belief, and therefore alleges, that Plaintiff was not authorized by the appropriate governmental authority of the Commonwealth of Massachusetts to conduct a telephone services business in the Commonwealth of Massachusetts.

9.  Likewise, Defendant has knowledge, information and belief, and therefore alleges, that Plaintiff was not authorized by the appropriate governmental authority of the States of Texas, Missouri or Illinois, to conduct a telephone services business in said states.

10.  Therefore, any contract for telephone services to be provided by Plaintiff within the Commonwealth of Massachusetts would be unlawful, and therefore, unenforceable.

11.  Therefore, any contract for telephone services to be provided by Plaintiff within the States of Texas, Missouri and Illinois, would be unlawful, and therefore, unenforceable.

## Prior Involvement in Telecommunication Equipment Leasing Fraud

12.  Prior to February 7, 2005, Plaintiff was involved in a telecommunication equipment leasing fraud perpetrated by NorVergence, Inc., a New Jersey corporation, and its

7

"leasing company partners,"[3] which included De Lage Landen.

13.    The fraud perpetrated by NorVergence, Inc., is very similar to the fraud perpetrated by the "Power of $Zero™ Partnership" (as more particularly described hereinafter) in the case at bar.

14.    As of February 7, 2005, Plaintiff knew that the attorneys general of various states considered that the conduct of Plaintiff in the NorVergence fraud was itself fraudulent and violative of laws of those states.

15.    To resolve the disputes with the attorneys general of those various states, Plaintiff entered into Assurances of Discontinuance, similar to and including the one attached hereto as Defendant's Exhibit 4, whereby Plaintiff assured the attorneys general that it would not do those things described in the assurances which the attorneys general described as being violative of the laws of those states.

16.    To make certain that all of the employees of Plaintiff would be aware of the conduct which they were to discontinue, Defendant's Exhibit 4 required

DLL shall provide a copy of this Assurance to all current and future employees, agents and/or independent contractors involved in invoicing and servicing DLL's portfolio of Equipment Rental Agreements with NorVergence customers who shall be bound by its terms.

17.    By July 22, 2005, Plaintiff knew that the Federal Trade Commission and the United States District Court for the District of New Jersey found that

in connection with the sale and financing of telecommunications services and related products, defendant NorVergence's practice of including in its rental agreements provisions authorizing it or its assignees to file lawsuits in specified or unspecified venues other than consumers' locations or the locations where

_____

[3]The term used by NorVergence, Inc., and the leasing companies, including Plaintiff.

8

consumers executed the contracts with NorVergence was likely to cause substantial injury to consumers that could not have been reasonably avoided and that was not outweighed by any countervailing benefits to consumers or to competition. The Court therefore finds that this practice was unfair in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

16. The Court further finds that NorVergence provided others with the means and instrumentalities for the commission of deceptive and unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by furnishing third-party finance companies with rental agreements from consumers that allowed the finance companies to:

(A) Misrepresent that consumers owe money on the rental agreements regardless of whether NorVergence provided the promised telecommunications services; and

(B) File collection suits against consumers in distant forums.

*Federal Trade Commission v. NorVergence, Inc.*, 2005 WL 3754864 *3 (D.N.J. 2005).

18.    Although Plaintiff had such knowledge as alleged, Plaintiff knowingly and intentionally

participated in the present telecommunications equipment leasing fraud, initially labeled

by the participants in the fraud as the "Power of $Zero Program," and later as the

"3Com Power of $Zero™ Solution," which (as more particularly alleged hereinafter):

a.    Violated the laws of the various states in which the fraud was perpetrated;

b.    Prepared and used rental agreements signed by consumers that allowed the

finance companies to misrepresent that consumers, including Defendant and

each class member, owed money on the rental agreements regardless of whether

the promised telecommunications services were ever provided, and which

permitted Plaintiff to file collection suits against consumers, including

Defendant, in distant forums.

9

## Viewpoint Computer Animation, Inc.

19.     Defendant Viewpoint Computer Animation, Inc., is organized and existing under the laws of the Commonwealth of Massachusetts.

20.     Defendant has offices only in Massachusetts and California.

21.     Defendant has no offices in the Commonwealth of Pennsylvania, is not authorized to do business in the Commonwealth of Pennsylvania, and does not do business in the Commonwealth of Pennsylvania.

22.     Defendant claims no expertise in either the telecommunications industry or the equipment leasing industry.

## Capital 4, Inc.

23.     Capital 4, Inc., is organized and existing under the laws of the State of Texas.

24.     Capital 4, Inc., has, or at all times material hereto had, its principle place of business in Houston, Texas.

25.     Capital 4, Inc., was formed on or about December 29, 2003.

26.     Capital 4, Inc., claims to have acquired Infinitel, Inc., ("InfiniteI") by merger into Capital 4, Inc. (Answer, Affirmative Defenses and Counterclaim in *3Com Corporation v. Capital 4, Inc.*, case number 07-CIV-8707 (S.D.N.Y.))[4]

27.     Prior to its acquisition by Capital 4, Inc., Infinitel had been an authorized value added

---

[4]The records of the State of Texas do not show any such acquisition. They reflect that Capital 4, Inc., was formed on December 29, 2003, and was assigned state tax identification number 15421373299. Further, they reflect that Infinitel, Inc., was formed October 1, 1997, and was assigned state tax identification number 17605517626. Infinitel, Inc., forfeited its corporate existence on July 1, 2006.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

reseller[5] for 3Com since in or about 1999; and subsequent to the acquisition, Capital 4, Inc., was an authorized value added reseller for 3Com.

28.    As an authorized value added reseller, Capital 4, Inc., was authorized to, and did, sell telecommunications equipment branded as "3Com" equipment, to customers located within the geographic region designated by 3Com for Capital 4, Inc.

29.    At no time relevant hereto was Capital 4, Inc., authorized by the Public Utility Commission of the State of Texas to conduct a telephone services business in the State of Texas[6].

---

[5]A value-added reseller (VAR) is a company that adds some feature(s) to an existing product(s), then resells it (usually to end-users) as an integrated product or complete "turn-key" solution. This practice is common in the electronics industry, where, for example, a software application might be added to existing hardware.

This value can come from professional services such as integrating, customizing, consulting, training and implementation. The value can also be added by developing a specific application for the product designed for the customer's needs which is then resold as a new package.

The term is often used in the computer industry, where a company purchases computer components and builds a fully operational Personal Computer system usually customized for a specific task such as non-linear video editing. By doing this, the company has added value above the cost of the individual computer components. Customers would purchase the system from the reseller if they lack the time or experience to assemble the system themselves.

        Wikipedia, *"Value Added Reseller"* (Wikipedia Foundation Inc. 2008)

[6]Under § 26.9(b)(3)(B)(vii) of the Texas Administrative Code, Title 16, Part II, Chapter 26, Substantive Rules Applicable to Telecommunications Service Providers, it is unlawful to conduct a telephone services business subject to the jurisdiction of the public utility commission without proper commission authorization, registration, licensing, or certification, and can subject such an unlicensed business to administrative fines of not more than $25,000 per day. Under State of Texas, Public Utility Commission Docket No. 21478, a Service Provider Certificate of Operating Authority ("SPCOA") was issued to "Capital 4." On January 17, 2003, "Capital 4" made clear in a filing made under oath, that the corporate entity to which the SPCOA was to be issued was "Capital 4 Outsourcing, Inc." Docket No. 27195, State of Texas, Public Utility Commission.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

30.   Capital 4, Inc., was issued and maintains a tax identification number in the State of Texas of 15421373299.

31.   Capital 4 Financial Services, LLC, was a Texas limited liability company having as one of its members one of the officers of Capital 4, Inc., Ish Villa Lobos, as of December 20, 2002.

32.   Capital 4 Financial Services, LLC, forfeited its existence under the law of the State of Texas, on December 3, 2004, for non-payment of a franchise tax.

33.   Capital 4, Inc., has registered the assumed name "Capital 4 Financial Services" with the State of Texas, as of March 4, 2005.

34.   By soliciting a contract for the provision of telecommunications services, Capital 4, Inc., represented to Defendant, and each class member, by mail and wire, that Capital 4, Inc., was authorized to supply telecommunications services in the state in which Defendant and each class member would have telecommunication services supplied by Capital 4, Inc.

35.   Defendant has knowledge, information and belief, and therefore alleges, that Capital 4, Inc., was not authorized by the appropriate governmental authority of the Commonwealth of Massachusetts to conduct a telephone services business in the Commonwealth of Massachusetts.

36.   Likewise, Defendant has knowledge, information and belief, and therefore alleges, that Capital 4, Inc., was not authorized by the appropriate governmental authority of the States of Texas, Missouri or Illinois, to conduct a telephone services business in said states.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

37.    Therefore, any contract for telephone services to be provided by Capital 4, Inc., within the Commonwealth of Massachusetts would be unlawful, and therefore, unenforceable.

38.    Therefore, any contract for telephone services to be provided by Capital 4, Inc., within the States of Texas, Missouri and Illinois, would be unlawful, and therefore, unenforceable.

## Non-Party Capital 4 Outsourcing, Inc.

39.    Capital 4 Outsourcing, Inc., is a corporation organized and existing under the laws of the State of Texas. It was formed March 19, 1998, and continues in perpetual existence.

40.    Capital 4 Outsourcing, Inc., was issued and maintains a tax identification number in the State of Texas of 17605728900.

41.    Although Capital 4 Outsourcing, Inc., maintains its offices at the same address as Capital 4, Inc., the two corporations are separate legal entities.

42.    Under State of Texas, Public Utility Commission Docket No. 21478, a Service Provider Certificate of Operating Authority ("SPCOA") was issued to "Capital 4."

43.    On January 17, 2003, "Capital 4" made clear in a filing made under oath, that the corporate entity to which the SPCOA was to be issued was "Capital 4 Outsourcing, Inc." (Docket No. 27195, State of Texas, Public Utility Commission.)

## 3Com Corporation

44.    3Com is a corporation organized and existing under the laws of the State of Delaware.

45.    3Com has its principal offices in the Commonwealth of Massachusetts.

46.    3Com is authorized to do business in the Commonwealth of Pennsylvania.

13

47.  Among other products, 3Com manufactures, wholesales or delivers telephone systems targeted to be used by small businesses.

48.  Said telephone systems and equipment carry a "3Com" brand.

49.  3Com describes its sales model as:

3Com markets its solutions through a comprehensive, worldwide distribution system, featuring an award winning partner program. Using a two-tier channel model, 3Com provides its partners with both significant support as well as a range of options for increasing revenue and market share. Strong relationships with systems integrators and service providers—including IBM, Phillips and Siemens—complement the channel base, and facilitate the most complex large-enterprise implementations.

50.  Defendant has knowledge, information and belief, and therefore alleges, that 3Com Corporation was not authorized by the appropriate governmental authority of the Commonwealth of Massachusetts to conduct a telephone services business in the Commonwealth of Massachusetts.

51.  Likewise, Defendant has knowledge, information and belief, and therefore alleges, that 3Com Corporation was not authorized by the appropriate governmental authority of the States of Texas, Missouri or Illinois, to conduct a telephone services business in said states.

52.  Therefore, any contract for telephone services to be provided by 3Com Corporation within the Commonwealth of Massachusetts would be unlawful, and therefore, unenforceable.

53.  Therefore, any contract for telephone services to be provided by 3Com Corporation within the States of Texas, Missouri and Illinois, would be unlawful, and therefore, unenforceable.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

## Origin of the Telecommunications Equipment Leasing Fraud

54.     In January, 2004, Capital 4, Inc., devised a plan which it later branded as "Power of

$Zero," which consisted of the following:

a.      Capital 4, Inc., believed that it could transition businesses from incumbent

telephone systems to Voice over Internet Protocol ("VoIP") telephone services

at a much lower cost, and if it could obtain lengthy contracts to provide such

services, Capital 4, Inc., could capture for itself the reduced costs of

telecommunications services which otherwise would benefit the businesses;

b.      To provide the capital which was needed for this project, and to secure

significant income at the time of sale, Capital 4, Inc., would have a customer for

telephone services borrow money from an equipment leasing company, to be

repaid with interest by the customer, and have the borrowed money paid by the

equipment leasing company to Capital 4, Inc.;

c.      The amount of the money to be paid to Capital 4, Inc., and thus repaid by the

customer, was solely dependent upon an invoice sent by Capital 4, Inc., to the

equipment leasing company for the sale of telephone equipment by Capital 4,

Inc., to the equipment leasing company;

d.      Capital 4, Inc., would pay 3Com a small portion of the borrowed money to pay

for new telephone equipment (where the free equipment option offered by

Capital 4, Inc., was selected by the customer), or would pay a small portion of

the money to the customer as a bonus for signing a contract with Capital 4, Inc.,

for telephone services (where the cash only bonus was selected) or would do a

15

combination of the two if the combination bonus was selected;

e.      Capital 4, Inc., would pay a small portion of the borrowed money to the value added reseller who was responsible for selling the Power of $Zero program to the customer;

f.      Capital 4, Inc., would keep the overwhelming majority of the borrowed money hoping that the sum of money would be sufficient to pay for telephone services to be provided to the customer for the next three to seven years;

g.      Sometimes, the monthly repayment by the customer of the loan would have an excess amount not needed to repay the loan, but which would be claimed by Capital 4, Inc., as "deferred maintenance" which excess payment would be paid by the equipment leasing company to Capital 4, Inc., as payment was received from the customer; and,

h.      Capital 4, Inc., would contract with licensed telephone service companies to provide telecommunications services to the customer, with the invoice for said services to be sent to Capital 4, Inc., which was obligated to pay each such invoice.

55.      To sell the "Power of $Zero" program to customers, Capital 4, Inc., would tell potential customers that:

a.      Capital 4, Inc., would provide all of the customer's telecommunication services, including local and long distance telephone, cellular telephone, and internet services, for a flat monthly price, fixed for three to seven years, for the same or nearly the same cost for the telecommunication services presently paid by the

16

  customer;

b. In addition to the foregoing, Capital 4, Inc., would provide (1) a new 3Com telephone system at no additional cost, or (2) a cash bonus, or (3) a combination of the two;

c. If Capital 4, Inc., failed to deliver the promised telecommunication services, the customer could cancel the contract and owe nothing;

d. If the customer owed money on its present telephone system, Capital 4, Inc., would pay off the balance due; and,

e. The $Zero™ Cost Warranty, provided through TWS, as part of the cost of the "Power of $Zero" program, would make certain that Defendant and each class member would never be without telecommunications services because, if Capital 4, Inc., were to become insolvent, TWS would assume the obligations of Capital 4, Inc., to administer and deliver the telecommunications services to Defendant and each class member, as long as the payments were made under the Funding Agreement.

56. Capital 4, Inc., believed that it would be financially successful with the "Power of $Zero" program by substituting the industry standard telecommunications systems presently enjoyed by all customers with unproven "Voice over Internet Protocol" telephone service which would cost Capital 4, Inc., much less than incumbent telephone service.

57. To sell the "Power of $Zero" program to customers, Capital 4, Inc., did not tell potential customers that:

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

a.    They were borrowing money from an equipment leasing company, to be repaid with interest by the customer, whether or not Capital 4, Inc., ever provided the telecommunications services;

b.    The borrowed money would be paid to Capital 4, Inc., by the equipment leasing company in whatever amount Capital 4, Inc., invoiced to the equipment leasing company, which invoice would never be seen by the customer;

c.    A small portion of the borrowed money would be paid to 3Com to pay for new telephone equipment (where the free equipment option offered by Capital 4, Inc., was selected by the customer), or a small portion of the money would be paid to the customer as a bonus for signing a contract with Capital 4, Inc., for telephone services (where the cash only bonus was selected) or a combination of the two would occur if the combination bonus was selected;

d.    A small portion of the borrowed money would be paid to the value added reseller who was responsible for selling the Power of $Zero program to the customer;

e.    Capital 4, Inc., would keep the overwhelming majority of the borrowed money hoping that the sum of money would be sufficient to pay for telephone services to be provided to the customer for the next three to five years;

f.    Capital 4, Inc., would contract with licensed telephone service companies to provide telecommunications services to the customer instead of providing such services itself (which it was not licensed to do); and,

g.    Capital 4, Inc., would substitute the industry standard telecommunications systems presently enjoyed by all customers with unproven "Voice over Internet

18

Protocol" telephone service which would cost Capital 4, Inc., much less than incumbent telephone service.

## Relationship Among Counterclaim Defendants

## Strategic Alliance Agreement: 3Com and Capital 4, Inc.

58.    Capital 4, Inc., was successful in selling the "Power of $Zero" program to customers, resulting in an increase in the volume of sales of 3Com branded equipment which increase was noticed by 3Com.

59.    On January 31, 2005, 3Com and Capital 4, Inc., entered into a "Strategic Alliance Agreement," a copy of which is attached hereto as Defendant's Exhibit 5, and by reference made a part hereof.

60.    Among other things, the "Strategic Alliance Agreement" provided that,

a.    Capital 4, Inc., would promote and exclusively use 3Com equipment in its "Power of $Zero program";

b.    3Com would assist Capital 4, Inc., in marketing the "Power of $Zero program";

c.    3Com would assist Capital 4, Inc., in establishing agency relationships with value added resellers of 3Com products to utilize that sales force in selling the "Power of $Zero program" with 3Com equipment; and,

d.    The "Power of $Zero program" is described as "Capital 4's Power of $Zero Model of selling, which consists of specific positioning of the compounding value of the services and the associated marketing and quote tools."

19

## De Lage Landen Master Program Agreement: with Capital 4, Inc.

61.     On February 7, 2005, Capital 4, Inc., and Plaintiff entered into a document entitled "Business Communications Program Agreement," a copy of which is attached hereto as Defendant's Exhibit 6, and by reference, is made a part hereof.

62.     The Business Communications Program Agreement is a standard form document, known in the industry as a "master program agreement," utilized by Plaintiff in establishing financing arrangements for equipment vendors.

63.     Pursuant to the Business Communications Program Agreement:

   a.     Capital 4, Inc., represented to Plaintiff that Capital 4, Inc., was engaged in the retail sale of business communications equipment;

   b.     Plaintiff agreed to enter into equipment leases using the name of Capital 4, Inc., "or any other name Vendor and DLL may agree";

   c.     Capital 4, Inc., must provide De Lage Landen with "all pertinent details and other such credit and financial data as De Lage Landen may require as to each equipment lease";

   d.     De Lage Landen was given the authority to endorse "Capital 4, Inc.," on any draft, check, money order or other form of payment made by the customer as payment on the customer's account;

   e.     Where the transaction is $150,000 and less, the total of all soft costs, (which include service, maintenance, installation, delivery, software, training, sales tax, and buyouts and trade-ups from prior contracts) shall not exceed 40% of the total transaction cost;

20

f.    Contracts cannot be terminated prior to their expiration dates; and,

g.    Capital 4, Inc., warrantied that no contract other than the equipment rental agreement had been entered into with the customer which would change the terms and conditions of the equipment rental agreement or impair De Lage Landen's rights to enforce the terms and conditions of the equipment rental agreement.

## De Lage Landen Sues Capital 4, Inc.

64.    De Lage Landen has sued Capital 4, Inc., in this court, asserting that it has been damaged as a result of the breach of the master program agreement by Capital 4, Inc. Said suit has been assigned case number 07-CV-3262.

65.    In said suit, De Lage Landen has alleged:

a.    That it acquired certain lease agreements ("Contracts") from Capital 4, Inc. (compare that to the allegation of Plaintiff's complaint in this case which states that Plaintiff De Lage Landen and Defendant are direct parties to the Contract sued upon);

b.    That prior to "purchasing the Contracts, DLL did not receive from Cap[ital ]4[, Inc.,] a copy of any [Power of $Zero Agreement] entered into by Cap[ital ]4[, Inc.,] with any customer," (an allegation flatly denied by Capital 4, Inc., in its answer, affirmatively asserting that De Lage Landen received copies of the Power of $Zero Agreements before the date alleged by De Lage Landen. Further, in its affirmative defenses to the Complaint, Capital 4, Inc., alleges that De Lage Landen had "full knowledge" of the Power of $Zero Program, "and the

21

manner in which [the documents] were executed");

c.    That De Lage Landen has "undertaken to fulfill Capital 4, Inc.'s, obligation to its customers to provide ... Public Access Services, ... ";

d.    That De Lage Landen has demanded that Capital 4, Inc., repurchase 44 contracts [which Defendant believes, and therefore alleges, that its contract is among those 44], and because of the failure of Capital 4, Inc., to repurchase those 44 contracts De Lage Landen had been damaged in the amount of $2,312,167;

e.    That Capital 4, Inc., fraudulently misrepresented certain portions of the Power of $Zero Program to its customers (and Capital 4, Inc., substantially admitted those allegations); and,

f.    That customers have canceled the Power of $Zero Agreements "for good cause," (which is admitted by Capital 4, Inc.).

66.    The suit has been stayed by stipulation of the parties, and approved by this court, pending the outcome of the litigation between 3Com Corporation and Capital 4, Inc., pending in federal district court in New York.

## Rules of Engagement Addendum: 3Com and Capital 4, Inc.

67.    On March 10, 2005, 3Com and Capital 4, Inc., entered into a modification of Defendant's Exhibit 5, by entering into a document they entitled "Rules of Engagement Addendum to Strategic Alliance Agreement" (hereafter "Rules of Engagement Addendum") a copy of which is attached hereto as Defendant's Exhibit 7, and by reference, is made a part hereof.

68.    The Rules of Engagement Addendum:

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

a.    furthered the relationship between 3Com and Capital 4, and imposed additional obligations on both parties.

b.    For example, in addition to its obligations under the Strategic Alliance Agreement, Capital 4 agreed, among other things, to deposit its Source Code for certain proprietary software into escrow (ultimately available to 3Com under certain circumstances), train a 3Com "Power of $Zero Program Representative" who would train other 3Com employees to sell or recruit value added resellers to sell the "Power of $Zero" program, train the Representative's designees to effectively teach the Power of $Zero program to others, and develop an online portal to explain all aspects of the Power of $Zero program to potential customers.

c.    3Com, in turn, agreed, among other things, to fund the development of the Capital 4 Source Code, to "assume primary responsibility for rolling out the '3Com Power of $Zero Solution,' through its network of Partners/Resellers," and to sponsor marketing programs to further sales of the Power of $Zero program.

d.    3Com also agreed to establish a pace for the rollout of the Power of $Zero program that would ultimately result in at least one 3Com value added reseller marketing the program in thirty-five separate markets in the United States.

e.    3Com also agreed to reimburse Capital 4, Inc., $67,025 and assumed the obligation of Capital 4, Inc., to pay a maximum of $500,000 for software developed for Capital 4, Inc., by Carra Technology, Inc. of Parsippany, NJ.

f.    3Com acquired the right to brand the "Power of $Zero" program as its own,

23

"3Com Power of $Zero™."[7]

g.      A "3Com/Capital 4 website" was developed to explain all aspects of the "Power

of $Zero™ Solution."

h.      The Rules of Engagement required that Capital 4, Inc., modify its contract with

De Lage Landen to make De Lage Landen directly responsible to make certain

calculations and disbursements in connection with funding each "Power of

$Zero" contract.

i.      The Rules of Engagement also provided

Rental Agreement. The equipment to be installed at the customer's site under the
Power of $Zero™ Solution will be financed under a Rental Agreement, under
which, DLL will remain the owner of the equipment. Capital 4 must give 3Com
immediate notice if the Rental Agreement between Capital 4 and DLL changes,
terminates or expires, or if Capital 4 enters into any Rental Agreements with any
other leasing company.

69.     Under the Rules of Engagement, as long as De Lage Landen was used as the funding

source, Capital 4, Inc., and other 3Com value added resellers selling the "3Com Power

of $Zero™" program, would be entitled to a 50% discount off the list prices of various

3Com telephone equipment.

---

[7]While 3Com and Capital 4, Inc., indicate in their documents that "Power of $Zero" is
a trademark of one or the other, the records of the United States Patent and Trademark Office
reflect no such trademark.  The closest trademark is "The Power of Zero" which is trademarked
by Service Payment Plan, Inc., an Illinois corporation as "the administration of installment
payment plans for automotive vehicle service contracts."  The trademark application states that
its first use was November 18, 2007, and its first use in commerce was the same date.  The
trademark application was filed January 7, 2008, and it was published for opposition on May
20, 2008.  It is serial number 77365781.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

## 3Com/Capital 4 web site

70.     Pursuant to the Rules of Engagement, a "3Com/Capital 4 web site" was developed
        which made the following representations on behalf of Capital 4, Inc., and the "Power
        of $Zero™ Partnership," about the "3Com Power of $Zero™ Solution":

        a.      That the customer would get free telephone equipment, a free cash payment, or

                a combination of the two, if the customer contracted with Capital 4, Inc., (or the

                "Power of $Zero™ Partnership") to provide all of the customer's telephone and

                internet services;

        b.      The "3Com Power of $Zero™ Solution" is a product developed by the "Power

                of $Zero™ Partnership" which can reduce the customer's telephone and internet

                expenses to nothing over a ten year period;

        c.      The old adage that there is no such thing as a free lunch does not apply to the

                "3Com Power of $Zero™ Solution";

        d.      3Com has selected Capital 4, Inc., (or the "Power of $Zero™ Partnership") to

                provide telephone and internet services under the "3Com Power of $Zero™

                Solution";

        e.      By the customer signing the "3Com Power of $Zero™ Customer Agreement"

                Capital 4, Inc., (or the "Power of $Zero™ Partnership") becomes responsible for

                providing all telephone and internet services at the business location;

        f.      If the customer signs the "3Com Power of $Zero™ Customer Agreement,"

                Capital 4, Inc., (or the "Power of $Zero™ Partnership") will financially

                discharge all existing obligations of the customer for any contract, lease or

                                                    25

agreement for telephone equipment or services, and internet services;

g.    Capital 4, Inc., (or the "Power of $Zero™ Partnership"), will provide the type and quality of services which are equal to or better than those already used by the customer;

h.    The customer agrees to pay Capital 4, Inc., (or the "Power of $Zero™ Partnership") a monthly payment as set forth on Schedule A for all telephone and internet services, and that monthly payment may be assigned by Capital 4, Inc., (or the "Power of $Zero™ Partnership") to the holder of the customer's "Funding Agreement";

i.    The "Funding Agreement" is separate and distinct from the "3Com Power of $Zero™ Customer Agreement," which is an agreement between the customer and Capital 4 Financial Services;

j.    Capital 4 Financial Services is a program of De Lage Landen Financial Services;

k.    Therefore, the "Power of $Zero™ Partnership" consists of 3Com Corporation, Capital 4, Inc., and De Lage Landen Financial Services;

l.    Capital 4, Inc., (or the "Power of $Zero™ Partnership") "use[s] the Funding Agreement to financially leverage the difference in costs between what [the customer] pay[s] for Public Access Services [described as all telephone and internet services], and what it costs [Capital 4, Inc., (or the "Power of $Zero™ Partnership")] to provided those same services";

m.    There is only one payment to make each month—not two; there is not a separate payment under the "3Com Power of $Zero™ Customer Agreement" and the

26

"Funding Agreement";

n.      The customer's monthly payment will not change;

o.      The "3Com Power of $Zero™ Customer Agreement" can be canceled by the customer at any time;

p.      If the "3Com Power of $Zero™ Customer Agreement" has been canceled for good cause, Capital 4, Inc., (or the "Power of $Zero™ Partnership") will pay the customer's monthly payments coming due "to any third-party funding source which has advanced funds under a Funding Agreement";

q.      The $Zero™ Cost Warranty, provided through TWS, as part of the cost of the "Power of $Zero" program, would make certain that Defendant and each class member would never be without telecommunications services because, if Capital 4, Inc., were to become insolvent, TWS would assume the obligations of Capital 4, Inc., to administer and deliver the telecommunications services to Defendant and each class member, as long as the payments were made under the Funding Agreement;

r.      If the customer elects to take the all cash bonus, and has telephone equipment which is currently encumbered, Capital 4, Inc., (or the "Power of $Zero™ Partnership") will pay-off the encumbrance on that equipment so that it can be used as collateral;

s.      Each month, Capital 4 Financial Services will remit a statement for the monthly payment coming due under the "3Com Power of $Zero™ Customer Agreement";

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

t.      Capital 4, Inc., [which was formed December 29, 2003] "has a history [as of 2005] that spans 20 years";

u.      "The '3Com Power of $Zero™ Solution,' [was] launched **in partnership with the 3Com Corporation ..."**;

v.      The offices of Capital 4, Inc., are located in Houston, Texas, and the agreement shall be "governed by, construed and enforced in accordance with, and subject to, the laws of the State of Texas"; and,

w.      The parties agree to the exclusive jurisdiction of Harris County, Texas, for any and all suits.

71.     A true and correct copy of the written representations is attached hereto as Defendant's Exhibit 8, and by reference, is made a part hereof.

72.     All potential customers of the "Power of $Zero Program," and the "3Com Power of $Zero™ Program," were directed by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership" to access the web site via wire where the above representations were made to them by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership."

## Enlistment of 3Com Value Added Resellers by 3Com to sell the "Power of $Zero Program"

73.     After entering into the Rules of Engagement Addendum, 3Com enlisted a number of its value added resellers to promote the "3Com Power of $Zero™" program.

74.     After entering into the Rules of Engagement Addendum, Capital 4, Inc., trained the value added resellers enlisted by 3Com or De Lage Landen to promote the "3Com

28

Power of $Zero™" program.

## Enlistment by De Lage Landen of De Lage Landen Vendors to sell the "Power of $Zero Program"

75.     After 3Com and De Lage Landen entered into the Rules of Engagement Addendum, De

Lage Landen enlisted a number of its existing business equipment vendors to promote

the "3Com Power of $Zero™" program, including but not limited to:

a.      During July, 2005, an 18-year employee of De Lage Landen, account manager

Gary Murray, traveled from Pennsylvania to Plano, Texas, to meet with Rick

Webster, President of Laser Works, Inc., doing business as Verity Group (a

retailer of photocopy machines), to enlist Laser Works as a retailer of the "3Com

Power of $Zero™ Solution" and while there, to sell it to Laser Works.

b.      In so doing, he utilized the forms which were created for the RICO Enterprise

(described hereafter), including the Customer Agreement similar to page 1 of

Defendant's Exhibit 1, and the funding agreement.

c.      Mr. Murray remained employed by De Lage Landen for 7 more months, when

he left to become the sales director for Capital 4, Inc.

## The Fraud Brought to Viewpoint Computer Animation, Inc.

76.     On or before April 27, 2005, Capital 4, Inc., on behalf of itself and the "Power of

$Zero™ Partnership" met with Defendant to present the proposal for a "3Com Power

of $Zero™ Solution" to Defendant.

77.     During said meeting,  Capital 4, Inc., on behalf of itself and the "Power of $Zero™

Partnership" represented to Defendant that Capital 4, Inc., on behalf of itself and the

29

"Power of $Zero™ Partnership" would:

a.    Provide all of the telecommunication services, including local and long distance telephone, cellular telephone, and internet services, at the same price Defendant was presently paying other providers for said services;

b.    In exchange for signing a contract for 6 years for such services with Capital 4, Inc., and the "Power of $Zero™ Partnership," the price for all such telecommunication services would be fixed at the present price for 6 years, plus, Capital 4, Inc., and the "Power of $Zero™ Partnership," would give Defendant (1) either a free telephone system worth $86,600, or (2) a cash payment of $24,839.83, or (3) a free telephone system worth $86,600 and a smaller cash payment of $12,429.93;

c.    The contract with Capital 4, Inc., and the "Power of $Zero™ Partnership," was able to be canceled by Defendant should the telecommunications services not be provided; and,

d.    The $Zero™ Cost Warranty, provided through TWS, as part of the cost of the "Power of $Zero" program, would make certain that Defendant and each class member would never be without telecommunications services because, if Capital 4, Inc., were to become insolvent, TWS would assume the obligations of Capital 4, Inc., to administer and deliver the telecommunications services to Defendant and each class member, as long as the payments were made under the Funding Agreement.

78.    During said meeting, Capital 4, Inc., on behalf of itself and the "Power of $Zero™

30

Partnership" accessed the web site maintained by Capital 4, Inc., and the "Power of $Zero™ Partnership," for such purpose by computer connected to the internet, and printed for Defendant a customer service agreement which proposed free telephone equipment having a value of $86,600, and had a Schedule A attached which showed a present telecommunications services expense of $2,889.76.

79.    A true and correct copy of said customer service agreement proposal is attached hereto as Defendant's Exhibit 9, and by reference, is made a part hereof.

80.    After the sales meeting,  Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership" through the use of the telephone or email (*i.e.*, through wire) directed Defendant to access the web site maintained by Capital 4, Inc., and the "Power of $Zero™ Partnership," for such purpose by computer connected to the internet, and provided for Defendant to print locally the "3Com Power of $Zero™ Customer Agreement" including Schedule A, and the four pages of general terms and conditions (Defendant's Exhibit 8), all of which are pages 1 through 6 of Defendant's Exhibit 1.

81.    The revised, proposed customer service contract had free telephone equipment having a value of $121,240, and Schedule A attached.

82.    After the sales meeting,  Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership" made an offer to Defendant, through the use of a transmittal by either mail or wire, consisting of the "3Com Power of $Zero™ Customer Agreement" including Schedule A, and the four pages of general terms and conditions (Defendant's Exhibit 8), all of which are pages 1 through 6 of Defendant's Exhibit 1.

83.    Said offer was written by Capital 4, Inc., and the "Power of $Zero™ Partnership."

31

84.    Defendant prepared no part of the offer.

85.    Defendant accepted the written offer made by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership" consisting of the "3Com Power of $Zero™ Customer Agreement" including Schedule A, and the four pages of general terms and conditions (Defendant's Exhibit 8), all of which are pages 1 through 6 of Defendant's Exhibit 1.

86.    Defendant understood that its contract with Capital 4, Inc., and the "Power of $Zero™ Partnership," provided:

a.    That Defendant would get free telephone equipment, a free cash payment, or a combination of the two, if Defendant contracted with Capital 4, Inc., (or the "Power of $Zero™ Partnership") to provide all of Defendant's telephone and internet services;

b.    The "3Com Power of $Zero™ Solution" is a product developed by the "Power of $Zero™ Partnership" which can reduce Defendant's telephone and internet expenses to nothing over a ten year period;

c.    The old adage that there is no such thing as a free lunch does not apply to the "3Com Power of $Zero™ Solution";

d.    3Com has selected Capital 4, Inc., (or the "Power of $Zero™ Partnership") to provide telephone and internet services under the "3Com Power of $Zero™ Solution";

e.    By Defendant signing the "3Com Power of $Zero™ Customer Agreement" Capital 4, Inc., (or the "Power of $Zero™ Partnership") becomes responsible for providing all telephone and internet services at the business location;

32

f.    If Defendant signs the "3Com Power of $Zero™ Customer Agreement," Capital 4, Inc., (or the "Power of $Zero™ Partnership") will financially discharge all existing obligations of Defendant for any contract, lease or agreement for telephone equipment or services, and internet services;

g.    Capital 4, Inc., (or the "Power of $Zero™ Partnership"), will provide the type and quality of services which are equal to or better than those already used by Defendant;

h.    Defendant agrees to pay Capital 4, Inc., (or the "Power of $Zero™ Partnership") a monthly payment as set forth on Schedule A for all telephone and internet services, and that monthly payment may be assigned by Capital 4, Inc., (or the "Power of $Zero™ Partnership") to the holder of Defendant's "Funding Agreement";

i.    The "Funding Agreement" is separate and distinct from the "3Com Power of $Zero™ Customer Agreement," which is an agreement between Defendant and Capital 4 Financial Services;

j.    Capital 4 Financial Services is a program of De Lage Landen Financial Services;

k.    Therefore, the "Power of $Zero™ Partnership" consists of 3Com Corporation, Capital 4, Inc., and De Lage Landen Financial Services;

l.    Capital 4, Inc., (or the "Power of $Zero™ Partnership") "use[s] the Funding Agreement to financially leverage the difference in costs between what [the customer] pay[s] for Public Access Services [described as all telephone and internet services], and what it costs [Capital 4, Inc., (or the "Power of $Zero™

33

Partnership")] to provided those same services";

m.    There is only one payment to make each month—not two; there is not a separate payment under the "3Com Power of $Zero™ Customer Agreement" and the "Funding Agreement";

n.    Defendant's monthly payment will not change;

o.    The "3Com Power of $Zero™ Customer Agreement" can be canceled by Defendant at any time;

p.    If the "3Com Power of $Zero™ Customer Agreement" has been canceled for good cause, Capital 4, Inc., (or the "Power of $Zero™ Partnership") will pay Defendant's monthly payments coming due "to any third-party funding source which has advanced funds under a Funding Agreement";

q.    If Defendant elects to take the all cash bonus, and has telephone equipment which is currently encumbered, Capital 4, Inc., (or the "Power of $Zero™ Partnership") will pay-off the encumbrance on that equipment so that it can be used as collateral;

r.    The $Zero™ Cost Warranty, provided through TWS, as part of the cost of the "Power of $Zero" program, would make certain that Defendant and each class member would never be without telecommunications services because, if Capital 4, Inc., were to become insolvent, TWS would assume the obligations of Capital 4, Inc., to administer and deliver the telecommunications services to Defendant and each class member, as long as the payments were made under the Funding Agreement;

34

s.      Each month, Capital 4 Financial Services will remit a statement for the monthly payment coming due under the "3Com Power of $Zero™ Customer Agreement";

t.      Capital 4, Inc., "has a history [as of 2005] that spans 20 years";

u.      "The '3Com Power of $Zero™ Solution,' [was] launched *in partnership with the 3Com Corporation ..."*;

v.      The offices of Capital 4, Inc., are located in Houston, Texas, and the agreement shall be "governed by, construed and enforced in accordance with, and subject to, the laws of the State of Texas";

w.      The parties agree to the exclusive jurisdiction of Harris County, Texas, for any and all suits; and,

x.      The contract was subject to acceptance by Capital 4, Inc., and the "Power of $Zero™ Partnership" of the Funding Agreement which was subject to credit approval.

87.    Subsequent to signing the written offer made by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership," Capital 4, Inc., on behalf of itself and as agent for the "Power of $Zero™ Partnership" transmitted by mail, fax, or attachment to email, from the Commonwealth of Pennsylvania to Defendant in the Commonwealth of Massachusetts, a "Power of $Zero Credit Application" having Capital 4, Inc., and a logo consistently used by Capital 4, Inc., prominently displayed on the form, with a request made to Defendant to complete the form and return it to Capital 4, Inc., by fax, to a fax number in the 713 area code.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

88.     At all times material hereto, the 713 area code has been and is for the Houston, Texas, area.

89.     A true and correct copy of the "Power of $Zero Credit Application" is attached hereto as Defendant's Exhibit 10, and by reference, is made a part hereof.

90.     Defendant completed the credit application and returned it to Capital 4, Inc., at the fax number noted on Defendant's Exhibit 10.

91.     Subsequent to signing the written offer made by Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership," and after submission of the completed "Power of $Zero Credit Application," Capital 4, Inc., on behalf of itself and as agent for the "Power of $Zero™ Partnership" transmitted by mail, fax, or attachment to email, from the Commonwealth of Pennsylvania to Defendant in the Commonwealth of Massachusetts, the Funding Agreement, which indicated that it was from Capital 4 Financial Services, and it was a program of De Lage Landen Financial Services.

92.     On or about August 16, 2005, Defendant signed the Funding Agreement, and returned it to Capital 4, Inc., and the "Power of $Zero™ Partnership."

93.     On or about October 12, 2005, De Lage Landen, on behalf of itself and the "Power of $Zero™ Partnership," countersigned the Funding Agreement, and returned a signed copy from its offices in the Commonwealth of Pennsylvania to Defendant in its offices in the Commonwealth of Massachusetts, by mail, fax, or attachment to email (*i.e.*, by mail or wire).

94.     A true and correct copy of the funding agreement is attached hereto as pages 7 and 8 of Defendant's Exhibit 1.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

95.    Each Contract, including Defendant's, contains unfair, unreasonable, and unconscionable language that would render it void, including misrepresentations that the "lessee" is waiving all rights and remedies under Article 2A of the Uniform Commercial Code ("UCC Art. 2A"). Such a waiver is unfair, unreasonable, and unconscionable because the Contract is not subject to the "hell and high water clause" of UCC Art. 2A. It is neither a finance lease or a lease. 13 Pa.C.S.A. § 2A103(a).

96.    The contract (Defendant's Exhibit 1) is not a finance lease under Article 2A of the Uniform Commercial Code because Defendant is informed, believes and therefore alleges that:

a.    The predominate feature of the contract is for services, not equipment;

b.    Capital 4, Inc., selected and supplied the telephone equipment to its consumers.

c.    Defendant supplied the equipment to its consumers from its existing inventory of such devices and did not acquire devices in connection with the individual contracts entered into with the consumers, including Defendant.

d.    Prior to signing the contracts, the consumers, including Defendant did not receive a copy of the contract by which Plaintiff acquired the equipment that was the subject of the contract.

e.    It was not a condition of the effectiveness of the contracts that the consumers, including Defendant, approve the contracts by which Plaintiff acquired the equipment or the right to possess and use said devices.

f.    Prior to signing the contracts, the consumers, including Defendant, did not receive a statement designating the promises and warranties, and any disclaimers

37

of warranties, limitations or modifications of remedies, or liquidated damages, provided to Plaintiff or Capital 4, Inc., by the supplier of the equipment as part of the contract by which Plaintiff had acquired them.

g.   Prior to the consumers, including Defendant, signing the contracts, Plaintiff and Capital 4, Inc., did not inform the consumers in writing of the identity of the person supplying the equipment to Plaintiff; did not inform the consumers in writing that the consumers are entitled to the promises and warranties provided to Plaintiff by the supplier of the equipment in connection with the contract by which Plaintiff acquired the equipment; or that the consumers may communicate with the supplier of the equipment and receive an accurate and complete record of the goods supplied and a complete statement of the promises and warranties, including any disclaimers and limitations of them or of remedies.

97.   Plaintiff, which holds itself out to the public in general and Defendant in particular, to be a telecommunication equipment leasing expert, determined, or should have determined, before filing suit that the maximum cost of the equipment was far less than invoiced by Capital 4, Inc.

98.   By filing suit, and seeking to recover the full monthly payment for 60 months, Plaintiff is attempting to recover the actual cost of the equipment at an interest rate exceeding 50%.

## Pennsylvania

99.   Under Pennsylvania statutory law, any attempt to collect a debt with interest exceeding 36% is criminal usury.

100.    One who successfully defends the collection of a debt which violates Pennsylvania's usury statutes is entitled to recover a reasonable attorneys' fee.

## Texas

101.    Under Texas statutory law, any attempt to collect a debt with interest exceeding 36% is usury.

102.    One who successfully defends the collection of a debt which violates Texas' usury statutes is entitled to recover a reasonable attorneys' fee.

## Both States

103.    Under the law of both states, one can not enforce an illegal contract.

104.    A contract which requires payment of a usurious rate of interest is illegal.

## $127,055.36 Obtained by Capital 4, Inc.

105.    On September 20, 2005, Defendant sent an invoice by either mail, fax or attachment to email (*i.e.*, by either mail or wire), to De Lage Landen for $127,055.36 for the telephone equipment itemized (although the unit cost is not itemized) thereon, which it was selling to De Lage Landen, plus "60 Months Deferred Maintenance Paid Monthly for 60 months: $691.16." Defendant was unaware of the existence of the invoice at the time, and first discovered it after Plaintiff filed suit,

106.    A true and correct copy of said invoice is attached hereto as Defendant's Exhibit 11, and by reference, is made a part hereof.

107.    Upon knowledge, information and belief, Defendant alleges that De Lage Landen paid the sum of $127,055.36 to Capital 4, Inc., who received it on behalf of itself and the

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

"Power of $Zero™ Partnership," on or about October 12, 2005, as noted on the face of Defendant's Exhibit 11.

108.   On or about October 12, 2005, Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership," or Plaintiff, using the identity of Capital 4 Financial Services, a Program of De Lage Landen Financial Services, on behalf of itself and the "Power of $Zero™ Partnership," by either mail, fax or attachment to email (*i.e.*, by either mail or wire) transmitted to Defendant a letter dated October 12, 2005, addressing insurance coverage for the telephone system installed in Defendant's place of business.

109.   The insurance letter advised Defendant to add "Capital 4 Financial Services" as a named insured, and sole loss payee, of any policy insuring against loss to the telephone system.

110.   At all times material hereto, Capital 4 Financial Services is the assumed name, as that term is used in the legal lexicon of the State of Texas, for Capital 4, Inc.

111.   Capital 4 Financial Services has never been a registered assumed or fictitious name of De Lage Landen Financial Services, Inc.

112.   A true and correct copy of the insurance letter is attached hereto as Defendant's Exhibit 12, and by reference, is made a part hereof.

## Invoicing for Services Supported Fraudulent Identity

113.   After installation of the telephone system, and initialization of telecommunication services, Defendant received monthly statements from Capital 4, Inc., through the mail, itemizing services rendered, always beginning with "Power of $Zero™ Program" with a charge of $3,606.65, and adjustments thereto, with a tear-off voucher at the top of the statement with instructions to "Please detach and return this portion with your payment

40

payable to CAPITAL 4, INC.  Please put your account number on your payment."

114.    The telephone service statements began in January, 2006, with a proration of services from November 13 through November 30, 2005, although detailed phone service shows calls starting on October 17, 2005.

115.    A true and correct copy of the telephone services statement for January, 2006, is attached hereto as Defendant's Exhibit 13, and by reference, is made a part hereof.

116.    Similar statements continued monthly until September 25, 2007.

117.    Listed under the "Power of $Zero Program Benefits" on Defendant's Exhibit 13, are:

    a.    3Com System *Contribution* $121,240;

    b.    72 Months Full Maintenance Warr[anty] Parts & Labor;

    c.    Payment Protection Insurance; and,

    d.    Power of $Zero Internet Service - Realix 1.5.

[Emphasis added.]

## 3Com Assumes the Obligations of Capital 4, Inc. under the "Power of $Zero Program"

## License Agreement

118.    On November 10, 2006, Plaintiff entered into a contract with 3Com Corporation, which they entitled "License Agreement," which was unknown to Defendant at the time, and first discovered by Defendant after Plaintiff filed suit, under which:

    a.    3Com paid Capital 4, Inc., $5,000,000 in advanced licensing fees for the right to make the "Power of $Zero™ Program" its own, including rebranding it as the "3Com Power of $Zero™ Program";

41

b.    3Com became entitled to the income generated from the "Power of $Zero" program, less the licensing fees to be paid to Capital 4, Inc.;

c.    3Com had to approve every disbursement made by De Lage Landen and any other funding source before any such disbursement, relying upon what the parties identified as a Valued added reseller Reconciliation Report[8];

d.    Defines Net Usable "BMRR[9]" as

Net Usable BMRR is defined as the Customer's total monthly payment obligation under the POZ™ Customer Agreement (also noted in the Schedule A attached to the POZ™ Customer Agreement), less the following:

a) The monthly cost of purchasing an existing vendor services contract (the existing vendor contract buyout, amortized over the term of the Poz™ Customer Agreement).

b) The monthly cost of purchasing an existing lease contract (the existing lease buyout, amortized over the term of the POZ™ Customer Agreement).

c) Any straight "pass-through" expenses (e.g. non-provisionable dial tone elements as determined at the time that Customer executes the Customer Agreement).

d) Equipment Shortfall payments as defined in the POZ Documentation.

e) Any additional element of the Customer's total monthly payment obligation under the POZ™ Customer Agreement for which there is no available margin, and, consequently, no allocation to Customer or 3Com valued added reseller (as

---

[8]"The VAR Reconciliation Report represents a funding allocation statement that identifies the Fee to the 3Com Valued added reseller, the Cash Payment to Customer, the Licensor's Fee, and any other disbursements that are to be made from the Monetized Funds. This VAR Reconciliation Report must be approved by 3Com for each transaction and becomes the basis for funding disbursement instructions to any funding source prior to the release of any funds."  Defendant's Exhibit 14, p. 4, ¶ 1.13.

[9]"BMRR" stands for Net Usable **Billed Monthly Recurring Revenue**.  Defendant's Exhibit 14, p. 4, ¶ 1.16.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

determined at the time that Customer executes the Customer Agreement).

e.      Payment of all licensing fees to Capital 4, Inc., shall be made directly from the funding source, which during this period was De Lage Landen, upon the funding source's receipt of disbursement instructions by 3Com;

f.      3Com was to negotiate a funding source for future sales; and,

g.      Gave Capital 4, Inc., the State of Texas as its exclusive territory as a 3Com value added reseller to sell the "3Com Power of $Zero™" program.

119.    A true and correct copy of the License Agreement is attached hereto as Defendant's Exhibit 14, and by reference, is made a part hereof.

## Operations Agreement

120.    On November 10, 2006, Plaintiff entered into a contract with 3Com Corporation, which they entitled "Operations Agreement," which was unknown to Defendant at the time, and first discovered by Defendant after Plaintiff filed suit, under which:

a.      Capital 4, Inc., assigned to 3Com the benefits and obligations of Capital 4, Inc., in and to the existing "Power of $Zero" programs previously sold;

b.      Capital 4, Inc., is identified as a "support *partner*" of 3Com after 3Com takes over control of the "3Com Power of $Zero™" program pursuant to the License Agreement;

c.      3Com agrees to pay Capital 4, Inc., $150,000 per month to provide "Back Office Services" as defined therein;

d.      On May 1, 2007, the Back Office Services fee will be increased to be 150% of the direct and indirect overhead incurred by Capital 4, Inc., in providing Back

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Office Services;

e.    Capital 4, Inc., agrees not to take any action which would reasonably lead others to conclude that Capital 4, Inc., was affiliated with 3Com Corporation or the "3Com Power of $Zero™" program except in its capacity as a "3Com Power of $Zero™" value added reseller;

f.    In the event that Capital 4, Inc., is unable to honor its obligations under then existing "Power of $Zero™ Customer Agreements," that 3Com would assume and pay for all telephone and internet services required to be provided by Capital 4, Inc., to the existing "Power of $Zero" customers, specifically:

> 3Com shall assume all of the obligations of any and all Public Access Assets Service agreements entered into by Capital 4 in connection with 3Com Power of $Zero Customer Agreements. 3Com shall satisfy payment of such obligations with the Residual Funds associated with Capital 4's POZ portfolio; provided, however, that the Total 3Com Exposure, as identified in the 3Com Report, shall remain Capital 4's obligation to 3Com and 3Com shall be entitled to withhold from the Licensor's Fees an amount sufficient to satisfy the deficit, if any, on a monthly basis, equal to the Net Contract Value of each 3Com Power of $Zero Customer Agreement divided by the number of months remaining for each such agreement (the "Hold Back"). Notwithstanding the foregoing, the Hold Back shall not exceed fifty (50%) percent of the Licensor's Fees for any given month, net of any prepayment facility allocation as contemplated in the License Agreement. Capital 4 may elect to satisfy the Total 3Com Exposure (if a deficit) through a mutually acceptable alternate proposal.

Defendant's Exhibit 3, p. 12, ¶ 4.3 (hereafter "Go Dark Agreement").

121.   Defendant is a third-party beneficiary of the Operations Agreement, particularly § 4.3 thereof, the "Go Dark Agreement."

122.   On or about August 7, 2007, after 3Com claims to have learned of the dire financial

44

condition of Capital 4, Inc., resulting in telecommunications services providers being unpaid and continuation of their services in jeopardy, 3Com and Capital 4, Inc., modified the Operations Agreement, and the Go Dark Agreement provisions of it, by a document they entitled "First Contract Addendum," a copy of which is attached hereto as Defendant's Exhibit 19, and by reference, is made a part hereof.

123. Said modification of the Go Dark Agreement still provided that 3Com would pay the telecommunications services providers so that the telephone and internet services provided to the customers, including Defendant and each class member, would not be interrupted.

124. Defendant was and is a third party beneficiary of said contract, as modified.

## $600,000 Loaned to Capital 4, Inc., by 3Com Corporation

125. After signing the First Contract Addendum (Defendant's Exhibit 19), beginning August 6, 2007, and continuing through August 16, 2007, 3Com Corporation infused cash into Capital 4, Inc., in the form of unsecured "loans" whose proceeds were to be used by Capital 4, Inc., to "pay the dial-tone connection fees it owes to third party providers on behalf of its customers."

126. True and correct copies of the Promissory Notes are attached hereto as Defendant's Exhibit 15, and by reference, is made a part hereof.

127. On August 20, 2007, 3Com invoked the Go Dark provisions of Defendant's Exhibit 19, but failed and refused to pay the telecommunications services providers, thereby jeopardizing the continuation of telephone and internet services to Defendant.

45

## Capital 4, Inc., Stops Providing Service: Contracts Implicitly Canceled "For Good Cause"

128.    On September 25, 2007, Capital 4, Inc., informed its customers, including Defendant, that Capital 4, Inc., on behalf of itself and the "Power of $Zero™ Partnership" would no longer meet its obligations under the contract, Defendant's Exhibit 1.

129.    A true and correct copy of the September 25, 2007, letter is attached hereto as Defendant's Exhibit 16, and by reference, is made a part hereof.

130.    The termination letter, Defendant's Exhibit 16, effectively canceled Defendant's obligations under the contract, Defendant's Exhibit 1, "for good cause"—telephone services would no longer be provided by Capital 4, Inc., or the "Power of $Zero™ Partnership."

131.    Because the business of Defendant was at jeopardy if it lost telephone and internet services, Defendant immediately began the task of finding a new telecommunications services provider.

132.    Defendant now pays a higher monthly amount for the same telecommunications services which were the obligation of Capital 4, Inc., and the "Power of $Zero™ Partnership" to provide to Defendant under Defendant's Exhibit 1, and will continue to pay a higher monthly amount throughout the years covered by Defendant's Exhibit 1.

## 3Com Failed to Provide Telecommunications and Internet Services

133.    3Com failed to pay for the telecommunications and internet services which were formerly the obligation of Capital 4, Inc., under Defendant's Exhibit 1.

134.    Accordingly, Defendant's telecommunications services ceased to be provided by Capital

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

4, Inc., or its successors or assigns.

135.   The termination letter, Defendant's Exhibit 16, and the failure of 3Com to provide telecommunications and internet services, effectively canceled Defendant's obligations under the contract, Defendant's Exhibit 1, "for good cause"—telephone services would no longer be provided by Capital 4, Inc., or the "Power of $Zero™ Partnership."

## 3Com Corporation Sues Capital 4, Inc.

136.   3Com Corporation has sued Capital 4, Inc., in a twelve count complaint seeking myriad remedies from money damages to injunctive relief.

137.   The suit is *3Com Corporation v. Capital 4, Inc.,* Number 07-CIV-8707 (JSR) (S.D.N.Y.).

138.   Capital 4, Inc., has counterclaimed for money damages.

139.   In said suit, 3Com alleges:

a.     that under the Strategic Alliance Agreement (Defendant's Exhibit 5) and the Rules of Engagement Addendum (Defendant's Exhibit 7) "3Com undertook to participate more actively in the Power of $Zero program by assisting Capital 4[, Inc.,] to market the program and to establish relationships with other resellers of 3Com products ...";

b.     that after entering into Defendant's Exhibits 5 and 7, and before entering into the agreements which supplanted Defendant's Exhibits 5 and 7, specifically the License Agreement (Defendant's Exhibit 14) and the Operations Agreement (Defendant's Exhibit 3) 3Com was advised by Capital 4, Inc., that it was losing $300,000 per month on the Power of $Zero program;

47

c.    That "3Com gave Capital 4[, Inc.,] funds for th[e] specific purpose and directed Capital 4[, Inc.,] to use the funds" to pay the buyout costs for certain 3Com Power of $Zero customers' leases of existing equipment;

d.    That 3Com and Capital 4, Inc., had a long-standing relationship of trust and confidence (which allegation is admitted by Capital 4, Inc., in its answer); and,

e.    That Capital 4, Inc., was guilty of numerous fraudulent misrepresentations to gain financial advantages.

140.    In said counterclaim, Capital 4, Inc., alleges that:

a.    "Under the Power of $Zero model, Capital 4 entered into long-term contracts with customers under which Capital 4 agreed to provide Public Access Services [defined as all telecommunications services] to a customer at essentially the same price that the customer was paying for its existing telecommunications services (the "Customer Service Agreement").  In addition, the customer was offered the option of leasing new 3Com equipment (the "Equipment Option") and/or receiving a cash rebate (the "Cash Rebate Option") *at no additional cost.*" [Emphasis added.] (Counterclaim, pp. 21-22, ¶ 8.)

b.    "Recognizing the potential commercial benefits to 3Com of the Power of $Zero program, and in order to induce Capital 4 to rely solely upon 3Com in further developing and rolling-out the Power of $Zero program, 3Com represented to Capital 4 that it would *partner* with Capital 4 to further develop and grow the Power of $Zero program."  (Counterclaim, p. 24, ¶ 16.)

c.    "In furtherance of its *partnership* with Capital 4 ... 3Com and Capital 4 entered

48

into the Strategic Alliance Agreement. ..."  (Counterclaim, p. 24, ¶ 17.)

    d.    In various allegations, that there was a partnership between Capital 4, Inc., and 3Com Corporation (For instance, Counterclaim, pp. 24-25, ¶¶ 20, 22.)

    e.    Prior to March 21, 2006, 3Com was interested in expanding its relationship with Capital 4, Inc., to eventually take full control of all aspects of the Power of $Zero program, and on March 21, 2006, entered into a Letter of Intent as the first step toward that goal.

    f.    The date when 3Com was to take full control was April 1, 2007.

    g.    That 3Com refused to honor its obligations under the Go Dark Agreement, even though 3Com had previously purported to invoke the provision.

    h.    That 3Com made fraudulent misrepresentations to Capital 4, Inc., to gain a financial advantage.

## De Lage Landen Financial Services Assumes Billing

141.    In October, 2007, Plaintiff assumed the billing for the now non-existent telecommunications services, and "reduced the Lease Payments" by $691.16 per payment, which Plaintiff describes in the complaint as a "pass-through" payment.

142.    This is the same amount reflected on Defendant's Exhibit 11 as "60 Months Deferred Maintenance Paid Monthly for 60 months: $691.16."

143.    In billing for the non-existent telecommunications services, Plaintiff placed all such invoices in the United States mail, beginning on or about November 22, 2007, and continuing through the date of filing suit, on a monthly basis.

144.    The first two such invoices contained the branding of "Capital 4 Financial Services, a

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

Program of De Lage Landen Financial Services."

145.    True and correct copies of the invoices are attached hereto as Defendant's Exhibit 17,

and by reference, are made a part hereof.

146.    Beginning with the invoice of January 23, 2008, Plaintiff dropped "Capital 4 Financial

Services, a Program of De Lage Landen Financial Services" from its invoices, and billed

in its own name.

147.    True and correct copies of two such invoices are attached hereto as Defendant's Exhibit

18, and by reference, are made a part hereof.

## Additional Predicate Acts for RICO Counts

148.    The "Power of $Zero™ Partnership" consisting of Plaintiff, 3Com Corporation, and

Capital 4, Inc., committed similar RICO predicate acts of mail and wire fraud in the sale

of the "3Com Power of $Zero™" program to the following businesses, having the

following addresses, at or about the time listed next to each:

| | |
|---|---|
| Bergman Schraier & Co., PC<br>9666 Olive Boulevard, Suite 710<br>St. Louis, MO  63132 | 06/02/2005 and 05/07/2005 |
| Bohn & Johnson<br>616 W. 26th Street<br>Kansas City, MO  64108 | 12/16/2005 and 12/21/2005 |
| Comport Network Services And Solutions,<br>LLC<br>6301 Southwest Boulevard, Suite 102<br>Fort Worth, TX  76132 | 07/15/2005 and 07/25/2005 |
| Cornerstone Land Surveying, Inc.<br>2708 Barrett Meadows Court<br>St. Louis, MO  63122 | 05/02/2005 and 05/02/2005 |

50

| | |
|---|---|
| Danner's, Inc.<br>7130 Navigation<br>Houston, TX  77011 | 08/23/2005 |
| David Havens Contracting Company<br>10405 Baur Boulevard, Suite G<br>Olivette, MO  63132 | 05/24/2005 and 05/21/2005 |
| Evans Ewan & Brady Insurance Agency,<br>Inc.<br>2404 Williams Dr<br>Georgetown, TX  78628 | 08/26/2005 and 08/26/2005 |
| Global Granite And Marble LLC<br>10330 Page Industrial Court<br>St. Louis, MO  63132 | 07/29/2005 and 07/29/2005 |
| Goldstein-Schwartz, Inc.<br>2500 Schuetz Road<br>Hazelwood, MO  63043 | 07/01/2005 and 09/22/2005 |
| Grace Products Corp.<br>1771 International Parkway, Suite 111<br>Richardson, TX  75081 | 07/08/2005 and 07/11/2005 |
| J. Berg & Associates, Inc.<br>12395 Olive Blvd, Ste 201<br>St. Louis, MO  63141 | 08/12/2005 and 08/12/2005 |
| North Central Communications, Inc.<br>16775 Addison Rd, Suite 420<br>Addison, TX  75001 | 04/01/2005 and 04/18/2005 |
| Rasa Floors, LP<br>1441 Patton, Ste. 101<br>Carrollton, TX  75007 | 12/05/2005 and 12/06/2005 |
| Salon Kendall, LP<br>25230 Borough Park Drive<br>Woodlands, TX  77380 | 07/10/2005 and 07/10/2005 |
| Sorrels, Udashen & Anton<br>2301 Ceder Springs, Suite 400<br>Dallas, TX  75201 | 07/22/2005 and 07/22/2005 |

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

| | |
|---|---|
| Temsco, Inc.<br>107 Hillside Drive<br>Lewisville, TX  75057 | 06/01/2005 and 07/06/2005 |
| Texas Network Of Youth Services, Inc.<br>2525 Wallingwood, Suite 1503<br>Austin, TX  78746 | 06/22/2005 and 07/05/2005 |
| Zepplin, Inc. D/b/a All Import Auto Parts<br>11277 East NW Hwy, Suite 100<br>Dallas, TX  75238 | 04/28/2005 and 05/13/2005 |

## Class Action Allegations

149.    Defendant seeks certification of the following class:

a.      All people or entities who entered into a contract under the "Power of $Zero,"

program, or the "3Com Power of $Zero™" program with Capital 4, Inc., 3Com

Corporation, or the "Power of $Zero™ Partnership."

150.    The class is so numerous that joinder of all members is impracticable.

151.    Defendant has knowledge, information and belief, and therefore alleges, that there are

at least 100 and may be as many as 5,000 potential class members.

152.    There are questions of law or fact common to the class.

153.    The claims or defenses of the representative parties are typical of the claims or defenses

of the class.

154.    Defendant will fairly and adequately protect the interests of the class.

155.    Prosecuting separate actions by or against individual class members would create a risk

of:

a.      inconsistent or varying adjudications with respect to individual class members

that would establish incompatible standards of conduct for the party opposing

52

the class; or

b.     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

156.   The questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

157.   Defendant is represented by counsel who represents approximately 25 of those who would qualify as class members.

158.   The putative class members have no interest in individually controlling the prosecution or defense of separate actions.

159.   Defendant's counsel has already expended 350 hours concerning the controversy already begun by or against class members.

160.   While Defendant's counsel believes that the federal district court in Houston, Texas, is the proper forum for all suits by De Lage Landen against Defendant, and all class members, in light of a forum selection clause contained in the totality of the "3Com Power of $Zero™" contracts, Defendant's counsel is also aware that Defendant's co-counsel did not contest jurisdiction, and filed a counterclaim invoking the court's jurisdiction.   Under those circumstances, Defendant believes that concentrating the litigation of the claims in this particular forum is desirable.

161.   The likely difficulties in managing this case as a class action are minimal.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

## Attorneys' Fees Claim

162.    Defendant has retained the undersigned attorneys to represent it in this action, and is obligated to pay said attorneys a reasonable fee for their services.

163.    Defendant seeks recovery of attorneys' fees from Plaintiff, 3Com Corporation and Capital 4, Inc.

## Pennsylvania

164.    Under Pennsylvania statutory law, a party may recover attorneys' fees "because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S.A. § 2503(9).

165.    Plaintiff filing suit under the facts of this case is the epitome of being arbitrary, vexatious and in bad faith.

## Texas

166.    Under Texas law, the prevailing party in any contract based litigation is entitled to recover attorneys' fees. V.T.C.A., Civil Practice & Remedies Code § 38.001.

## Supreme Court

167.    The federal courts have inherent authority to award attorneys' fees against a party which has litigated in bad faith, abused the litigation process, or violated court orders.

168.    Plaintiff filing suit under the facts of this case is the epitome of being in bad faith.

# Affirmative Defenses

Defendant, Capital 4, Inc., by and through its undersigned attorneys, sets forth its affirmative defenses to the complaint, and states:

54

169.    ***First Defense: Failure to State a Cause of Action***.

    a.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

    b.    Plaintiff's complaint fails to state a claim for relief.

170.    ***Second Defense: Plaintiff First Breached Contract it Seeks to Enforce***.

    a.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

    b.    Defendant first breached the contract it seeks to enforce.

171.    ***Third Defense: Damages Caused by Plaintiff's Own Negligence or Intentional Acts.***

    a.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

    b.    Plaintiff's damages were caused by Plaintiff's own negligence or intentional acts.

172.    ***Fourth Defense: Damages Caused by Negligence or Intentional Acts of Others over whom Defendant had no control.***

    a.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

    b.    Plaintiff's damages were caused by the negligence or intentional acts of others over whom Defendant had no control.

173.    ***Fifth Defense: Unclean Hands***

    a.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

      b.     Plaintiff has unclean hands.

174.   **_Sixth Defense: Waiver._**

      a.     Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

      b.     Plaintiff waived any and all claims it might have against Defendant.

175.   **_Seventh Defense: Laches._**

      a.     Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

      b.     Plaintiff is guilty of laches.

      c.     Defendant changed its position to its detriment in reliance upon Plaintiff's forbearance of its legal rights.

176.   **_Eighth Defense: Estoppel._**

      a.     Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

      b.     Plaintiff is estopped to assert that it was damaged by Defendant's conduct.

177.   **_Ninth Defense: Failure to Mitigate Damages._**

      a.     Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

      b.     Plaintiff has failed to mitigate its damages.

178.   **_Tenth Defense: Unlawful and therefore, unenforceable, contract_**

      a.     Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

b.    The contract between the parties was, at all times material hereto, unlawful, and therefore, unenforceable.

# Amended and Class Action Counterclaim

Defendant, on behalf of itself and all putative class members, sues Plaintiff, 3Com Corporation, and Capital 4, Inc., and alleges:

# Jurisdiction and Venue

179.   This court has jurisdiction over the subject matter hereto by virtue of the Complaint filed by Plaintiff alleging diversity jurisdiction under 28 U.S.C. § 1332, and has federal question jurisdiction under 18 U.S.C. § 1694 (the federal Racketeer Influenced and Corrupt Organization Act).

180.   This court has *in personnam* jurisdiction over Plaintiff by virtue of the Complaint filed by Plaintiff in this matter.

181.   In connection with filing this pleading, Defendant will seek leave to have a summons issued and served upon Third Party Defendants and Additional Counterclaim Defendants 3Com Corporation and Capital 4, Inc.

182.   Upon service of said summonses, this court will have *in personnam* jurisdiction over said parties.

183.   Venue is proper in this court by virtue of the fact that the Complaint originally filed in this matter alleges venue and Defendant did not originally object thereto by challenging venue.

57

# Count I
# Indemnification—Third Party Defendant Capital 4, Inc.

184.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

185.    This is an action for money damages against Third Party Defendant Capital 4, Inc., in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

186.    To the extent that Defendant and each class member will be contractually liable to pay money to Plaintiff, then Third Party Defendant Capital 4, Inc., is contractually obligated under Defendant's Exhibit 1, to indemnify and hold Defendant and each class harmless against any such liability.

187.    To date, Third Party Defendant Capital 4, Inc., has failed and refused to pay Plaintiff as required by Defendant's Exhibit 1, thereby breaching said contract.

188.    Defendant and each class have been damaged as a direct and proximate result of the breach by Third Party Defendant Capital 4, Inc., in an amount exceeding this court's minimum financial jurisdiction.

189.    Additionally, as an item of special damage, Defendant and each class have incurred and will continue to incur attorneys' fees in the defense of Plaintiff's complaint, for which Defendant and each class are entitled to a money judgment against Third Party Defendant Capital 4, Inc.

Wherefore, Defendant, on behalf of itself and all putative class members, demands a money judgment against Third Party Defendant Capital 4, Inc., for indemnification against any and all sums found due from Defendant and all class members, to Plaintiff, including the

58

amount of attorneys' fees and costs incurred by Defendant and all class members in the defense

of this suit. Further, Defendant, on behalf of itself and all putative class members, requests that

this court grant it such further relief as this court deems just.

## Count II
## Indemnification—Third Party Defendant 3Com Corporation

190. Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

191. This is an action for money damages against Third Party Defendant 3Com Corporation in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

192. To the extent that Defendant and all class members will be contractually liable to pay money to Plaintiff, then Third Party Defendant 3Com Corporation is contractually obligated under Defendant's Exhibit 1, as assumed by Third Party Defendant 3Com Corporation in Defendant's Exhibits 15 and 20, to indemnify and hold Defendant and all class members harmless against any such liability.

193. To date, Third Party Defendant 3Com Corporation has failed and refused to pay Plaintiff as required by Defendant's Exhibit 1, thereby breaching said contract.

194. Defendant and each class member have been damaged as a direct and proximate result of the breach by Third Party Defendant 3Com Corporation in an amount exceeding this court's minimum financial jurisdiction.

195. Additionally, as an item of special damage, Defendant and each class member have incurred and will continue to incur attorneys' fees in the defense of Plaintiff's

59

complaint, for which Defendant is entitled to a money judgment against Third Party

Defendant 3Com Corporation.

Wherefore, Defendant, on behalf of itself and all putative class members, demands a

money judgment against Third Party Defendant 3Com Corporation for indemnification against

any and all sums found to be due from Defendant and each class member to Plaintiff, including

the amount of attorneys' fees and costs incurred by Defendant and each class member in the

defense of this suit.  Further, Defendant requests that this court grant it such further relief as this

court deems just.

# Count III
# Breach of Contract: Capital 4, Inc.

196.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said

        allegations were set forth hereinafter.

197.    This is an action for money damages against Capital 4, Inc., in an amount exceeding

        $75,000, plus costs, interest and attorneys' fees.

198.    Capital 4, Inc., breached the contract between the parties, Defendant's Exhibit 1.

199.    Defendant and each class member were damaged as a direct and proximate result of said

        breach.

200.    Defendant and each class member will continue to incur damage throughout the life of

        Defendant's Exhibit 1 as a direct and proximate result of said breach.

Wherefore, Defendant, on behalf of itself and all putative class members, demands

money judgment against Capital 4, Inc., plus costs, interest and attorneys' fees, and such further

relief as this court deems just.

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

# Count IV
# Breach of Contract: 3Com Corporation

201.   Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

202.   This is an action for money damages against 3Com Corporation in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

203.   3Com Corporation breached the contract between Defendant and Capital 4, Inc., Defendant's Exhibit 1, which was assumed by 3Com Corporation.

204.   Defendant and each class member were damaged as a direct and proximate result of said breach.

205.   Defendant and each class member will continue to incur damage throughout the life of Defendant's Exhibit 1 as a direct and proximate result of said breach.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against 3Com Corporation plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count V
# Breach of Third Party Beneficiary Contract: 3Com Corporation

206.   Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

207.   This is an action for money damages against 3Com Corporation in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

61

208.   Defendant and each class member are third party beneficiaries of the Operations Agreement, specifically the Go Dark Agreement, (Defendant's Exhibit 3) between 3Com Corporation and Capital 4, Inc.

209.   3Com Corporation breached the Operations Agreement, specifically the Go Dark Agreement, between 3Com Corporation and Capital 4, Inc.

210.   Defendant and each class member were damaged as a direct and proximate result of said breach.

211.   Defendant and each class member will continue to incur damage throughout the life of Defendant's Exhibit 1 as a direct and proximate result of said breach.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against 3Com Corporation plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count VI
# Breach of Second Third Party Beneficiary Contract: 3Com Corporation

212.   Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

213.   This is an action for money damages against 3Com Corporation in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

214.   Defendant and each class member are third party beneficiaries of the First Contract Addendum, specifically the amended Go Dark Agreement, (Defendant's Exhibit 19) between 3Com Corporation and Capital 4, Inc.

62

215.    3Com Corporation breached the First Contract Addendum, specifically the Go Dark Agreement, between 3Com Corporation and Capital 4, Inc.

216.    Defendant and each class member were damaged as a direct and proximate result of said breach.

217.    Defendant and each class member will continue to incur damage throughout the life of Defendant's Exhibit 1 as a direct and proximate result of said breach.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against 3Com Corporation plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count VII
# Fraudulent Misrepresentations: Capital 4, Inc.

218.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

219.    This is an action for money damages against Capital 4, Inc., in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

220.    Capital 4, Inc., made certain representations to Defendant, more particularly set forth in ¶¶ 34, 55, 57, 70, 77, 81, 82, 86, 91, 107, and 113 through 117, hereof.

221.    Said representations were false when they were made by Capital 4, Inc.

222.    The falsity of the representations was known to Capital 4, Inc., at the time it made them, or it made them under circumstances where they should have known of the falsity thereof.

223.    Capital 4, Inc., intended that Defendant and each class member rely upon said

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

representations.

224.    Defendant and each class member reasonably relied upon the representations to the financial detriment of Defendant and each class member.

225.    Defendant and each class member have been damaged as a result of said reliance upon the fraudulent misrepresentations made by Capital 4, Inc.

226.    As an item of special damage, Defendant and each class member have incurred attorneys' fees in defending this case brought by Plaintiff solely, proximately and directly as a consequence of the fraudulent misrepresentations made by Capital 4, Inc., to Defendant and each class member.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against Capital 4, Inc., plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count VIII
# Fraudulent Misrepresentations: De Lage Landen

227.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

228.    This is an action for money damages against De Lage Landen in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

229.    De Lage Landen made certain representations to Defendant and each class member, more particularly set forth in ¶¶ 86, 91, 93, 108, 113 through 117, 144 and 145, hereof.

230.    Said representations were false when they were made by De Lage Landen.

231.    The falsity of the representations was known to De Lage Landen at the time it made

64

them, or it made them under circumstances where they should have known of the falsity thereof.

232. De Lage Landen intended that Defendant and each class member rely upon said representations.

233. Defendant and each class member reasonably relied upon the representations to the financial detriment of Defendant and each class member.

234. Defendant and each class member has been damaged as a result of said reliance upon the fraudulent misrepresentations made by De Lage Landen.

235. As an item of special damage, Defendant and each class member have incurred attorneys' fees in defending this case brought by Plaintiff solely, proximately and directly as a consequence of the fraudulent misrepresentations made by De Lage Landen to Defendant and each class member.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against De Lage Landen plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count IX
# Conspiracy to Commit Fraud: De Lage Landen and Capital 4, Inc.

236. Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

237. This is an action for money damages against Capital 4, Inc., and De Lage Landen Financial Services, Inc., in an amount exceeding $75,000, plus costs, interest and

**Gossett & Gossett, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

attorneys' fees, sounding in the tort of conspiracy to commit fraud.

238.    Capital 4, Inc., and De Lage Landen, knowingly and intentionally conspired together with the specific intent to defraud Defendant and each class member by making the following fraudulent misrepresentations to Defendant and each class member: ¶¶ 86, 91, 108 and 113 through 117.

239.    Said representations were false when they were made by De Lage Landen and Capital 4, Inc.

240.    The falsity of the representations was known to De Lage Landen and Capital 4, Inc., at the time they were made, or made them under circumstances where they should have known of the falsity thereof.

241.    De Lage Landen and Capital 4, Inc., intended that Defendant and each class member rely upon said representations.

242.    Defendant and each class member reasonably relied upon the representations to the financial detriment of Defendant and each class member.

243.    Defendant and each class member has been damaged as a result of said reliance upon the fraudulent misrepresentations made by De Lage Landen and Capital 4, Inc.

244.    As an item of special damage, Defendant and each class member have incurred attorneys' fees in defending this case brought by Plaintiff solely, proximately and directly as a consequence of the fraudulent misrepresentations made by De Lage Landen and Capital 4, Inc. to Defendant and each class member.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against De Lage Landen and Capital 4, Inc., plus costs, interest and attorneys'

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

fees, and such further relief as this court deems just.

# Count X
# Conspiracy to Commit Fraud: 3Com Corporation and Capital 4, Inc.

245. Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

246. This is an action for money damages against Capital 4, Inc., and 3Com Corporation, in an amount exceeding $75,000, plus costs, interest and attorneys' fees, sounding in the tort of conspiracy to commit fraud.

247. Capital 4, Inc., and 3Com Corporation, knowingly and intentionally conspired together with the specific intent to defraud Defendant and each class member by making the following fraudulent misrepresentations to Defendant: ¶¶ 86, 91, 108, and 113 through 117.

248. Said representations were false when they were made by 3Com Corporation and Capital 4, Inc.

249. The falsity of the representations was known to 3Com Corporation and Capital 4, Inc., at the time they were made, or made them under circumstances where they should have known of the falsity thereof.

250. 3Com Corporation and Capital 4, Inc., intended that Defendant and each class member rely upon said representations.

251. Defendant and each class member reasonably relied upon the representations to the financial detriment of Defendant and each class member.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

252.  Defendant and each class member has been damaged as a result of said reliance upon the fraudulent misrepresentations made by 3Com Corporation and Capital 4, Inc.

253.  As an item of special damage, Defendant and each class member have incurred attorneys' fees in defending this case brought by Plaintiff solely, proximately and directly as a consequence of the fraudulent misrepresentations made by 3Com Corporation and Capital 4, Inc. to Defendant.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against 3Com Corporation and Capital 4, Inc., plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count XI
# Violation of Pennsylvania Consumer Protection Law

254.  Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

255.  This is an action for money damages against Capital 4, Inc., 3Com Corporation, and De Lage Landen Financial Services, Inc., in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

256.  This is an action for relief under particular Pennsylvania Statutes, collectively referred to as Pennsylvania Consumer Protection Law ("CPL"), contained in 73 P.S. § 201-1, *et seq*.

257.  By their actions alleged above, Capital 4, Inc., 3Com Corporation, and De Lage Landen have violated the Pennsylvania CPL in that they fell within the definition of unfair methods of competition and unfair or deceptive acts or practices as defined by the CPL,

68

including but not limited to § 201-2(4)(i), (ii), (iii), (v), (vii), (ix), (xi) and (xxi).

258.  In numerous instances, in connection with the selling and financing of its telecommunication package, Capital 4, Inc., 3Com Corporation, and De Lage Landen, represented, expressly or by implication, directly or indirectly:

a.  That Capital 4, Inc., 3Com Corporation, and De Lage Landen offered and treated the applications, forms and rental agreements each consumer signed as integral parts of Defendants' contract and commitment to provide telecommunication services in exchange for the consumers' payments.

b.  That payment on the agreement, Defendant's Exhibit 1, would result in the consumer receiving the promised discounted telecommunication services for a long term.

c.  That the equipment listed in the rental agreement would be provided for free.

d.  That if the consumers' service were interrupted or terminated, Capital 4, Inc., would pay all money required to be paid by the "Funding Agreement."

259.  Defendant is informed, believes and therefore alleges, that in truth and in fact:

a.  Capital 4, Inc., 3Com Corporation, and De Lage Landen did not treat the applications, forms and rental agreements each consumer signed as integral parts of its contract and commitment to provide telecommunication services in exchange for consumers' payments.

b.  Rather, Capital 4, Inc., 3Com Corporation, and De Lage Landen treated the rental agreement as a separate hardware financing document so that they could sell the rental agreement as if it were subject to Article 2A of the Uniform

69

Commercial Code and receive the rental income up front regardless of whether they actually delivered the promised telecommunication services.

c.  Payment on the rental agreement would not and did not result in the consumer receiving the promised discounted telecommunication service for a long term.

d.  The equipment listed in the rental agreement was not provided for free.

e.  The acts and practices set forth above of Capital 4, Inc., 3Com Corporation, and De Lage Landen, constitute violations of §201-3 of the Consumer Protection Law in that they fall within the definition of unfair methods of competition and unfair or deceptive acts or practices as defined by the Consumer Protection Law including, but not limited to, §201-2(4)(i), (ii), (iii), (v), (vii), (ix), (xi) and (xxi).

260.  Defendant is informed, believes and therefore alleges, that in connection with the selling and financing of its telecommunication package, Capital 4, Inc., 3Com Corporation, and De Lage Landen expressly or by implication, directly or indirectly, represented that they would provide substantially discounted telecommunication services for a long term, however, they failed to disclose:

a.  That they had no long-term commitment from any service provider for the services that it was promising to provide the consumers.

b.  That the equipment covered by the rental agreement was not being provided for free.

c.  That the rental agreement purported to make the consumer's obligation to pay absolute and unrelated to the terms, conditions, or performance of any other agreement, including the agreement to provide telecommunication services.

70

d.    That the rental agreement purported to require, or have the effect of requiring, that the consumers waive all defenses that they may have including, but not limited to, fraud in inducement of the contract.

e.    That any disputes concerning the rental agreement could be resolved in a forum distant from the consumer's location.

f.    That third-party finance companies such as De Lage Landen, would insist on full payment on the rental agreements regardless of whether Capital 4, Inc., 3Com Corporation, or De Lage Landen, provided the promised telecommunication services.

261.    The acts and practices set forth above of Capital 4, Inc., 3Com Corporation, and De Lage Landen constitute violations of §201-3 of the Consumer Protection Law in that they fall within the definition of unfair methods of competition and unfair or deceptive acts or practices as defined by the Consumer Protection Law including, but not limited to, §201-2(4)(i), (ii), (iii), (v), (vii), (ix), (xi) and (xxi).

262.    Defendant is informed, believes and therefore alleges, that Capital 4, Inc., and 3Com Corporation, provided others (i.e., third-party finance companies including De Lage Landen) with the means and instrumentalities necessary for the commission of unfair methods of competition and unfair or deceptive acts or practices by furnishing third-party finance companies with rental agreements that may allow the finance companies to:

a.    Misrepresent that consumers owe money regardless of whether the promised telecommunication services or equipment were ever provided.

71

b.    Pursue collection activity and file lawsuits for the collection of full payment on

rental agreements in distant forums.

263.    The acts and practices set forth above of  Capital 4, Inc., 3Com Corporation, and De

Lage Landen, constitute violations of §201-3 of the Consumer Protection Law in that

they fall within the definition of unfair methods of competition and unfair or deceptive

acts or practices as defined by the Consumer Protection Law including, but not limited

to, §201-2(4)(xxi).

264.    Defendant and each class member have suffered an ascertainable loss in its payments

of the illegal and fraudulently induced equipment rental agreement and in the improper

debt or lien of the illegal and fraudulently induced equipment rental agreement.

265.    As a result of the violations of the Pennsylvania CPL by  Capital 4, Inc., 3Com

Corporation, and De Lage Landen, Defendant and each class member have retained the

services of the undersigned attorneys, and has agreed to pay said attorneys a reasonable

fee for their services.

WHEREFORE, Defendant, on behalf of itself and all putative class members, requests

that this court award money damages in favor of Defendant and against  Capital 4, Inc., 3Com,

and De Lage Landen, jointly and severally, for violation of the Pennsylvania CPL, including

prejudgment and post-judgment interest on said sums, costs and attorneys' fees.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

# Count XII
# Violation of Texas Consumer Protection Law

266.   Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

267.   This is an action for money damages against Capital 4, Inc., 3Com Corporation, and De Lage Landen Financial Services, Inc., in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

268.   This is an action for relief under particular Texas Statutes, collectively referred to as Texas Deceptive Trade Practices and Consumer Protection, V.C.T.A., Bus. & Comm. Code §§ 17.41 *et seq.*

269.   Defendant does not have assets of $25 million or more, nor is it owned or controlled by a corporation or entity with assets of $25 million or more.

270.   The conduct of Capital 4, Inc., 3Com, and De Lage Landen, as more particularly alleged above, violates the Texas Deceptive Trade Practices and Consumer Protection, V.C.T.A., Bus. & Comm. Code §§ 17.41 *et seq.*

271.   Defendant and each class member have been damaged as a direct and proximate result of the violation by Capital 4, Inc., 3Com, and De Lage Landen, of the Texas Deceptive Trade Practices and Consumer Protection, V.C.T.A., Bus. & Comm. Code §§ 17.41 *et seq.*

272.   All conditions precedent to be performed by Defendant prior to the bringing of an action under the Texas Deceptive Trade Practices and Consumer Protection, V.C.T.A., Bus. & Comm. Code §§ 17.41 *et seq.*, have either been performed by Defendant, or because

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Defendant has had to file this action as a mandatory counterclaim prior to the expiration of 60 days from the making of a demand under said act, Defendant had insufficient time to perform said condition precedent.

273.   However, the fulfillment of the demand condition would have been futile. Some of the class members made such demand upon 3Com Corporation who rejected the demand as insufficient.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against Capital 4, Inc., 3Com, and De Lage Landen, jointly and severally, for all damages incurred by Defendant and each class member as a direct and proximate result of their violation of said act, plus costs, interest and attorneys' fees, and requests that this court grant it such further relief as this court deems just.

# Count XIII
# Federal RICO

274.   Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

275.   This is an action for money damages against Capital 4, Inc., 3Com Corporation, and De Lage Landen Financial Services, Inc.,, in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

276.   This is an action for money damages under the federal Racketeer Influenced and Corrupt Organization Act, (federal RICO) 18 U.S.C.A. §§ 1961 *et seq.,* against Capital 4, Inc., 3Com Corporation and De Lage Landen Financial Services, Inc.

277.   At all relevant times, Capital 4, Inc., 3Com Corporation and De Lage Landen Financial

74

Services, Inc., were "persons" within the meaning of 18 U.S.C.A. §§ 1961(3) and 1962(c).

278. At all relevant times, Capital 4, Inc., 3Com Corporation and De Lage Landen Financial Services, Inc., acted together and in concert, thereby constituting a group of persons associated together in fact within the meaning of 18 U.S.C.A. §§ 1961(3) and 1962(c) for the common purpose of carrying out the unlawful and manipulative scheme described above.

279. The association-in-fact and the conspiracy functioned as a continuing unit in carrying out this unlawful scheme.

280. The association-in-fact between Capital 4, Inc., 3Com Corporation and De Lage Landen Financial Services, Inc., ("Enterprise") constitutes an "enterprise" within the meaning of 18 U.S.C.A. 1961(4).

281. The Enterprise functioned as a continuing unit, commencing not later than February 7, 2005, after execution of the Strategic Alliance Agreement (Defendant's Exhibit 5) between Capital 4, Inc., and 3Com Corporation, and after execution of the master program agreement (Defendant's Exhibit 6) between Capital 4, Inc., and De Lage Landen, and continuing through the execution of the last "3Com Power of $Zero™" program agreement.

282. By its nature, the wrongful conduct of the Enterprise is open-ended and will continue through the final contract payment absent this litigation.

283. Capital 4, Inc., 3Com and De Lage Landen, each gave substantial assistance to the Enterprise as a whole and to the unlawful activities and scheme through which its affairs

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

were conducted as more particularly set forth above.

284.    In furtherance of the affairs of the Enterprise, Capital 4, Inc., 3Com and De Lage Landen, each committed a pattern of two or more violations of wire fraud and mail fraud as proscribed by 18 U.S.C.A. 1341 and 1343, including, without limitation, fraudulent activity as defined by 18 U.S.C.A. 1346.

285.    Specifically, Capital 4, Inc., 3Com and De Lage Landen, repeatedly sent documents, payment statements and/or invoices among themselves and/or to Defendant and the class members by telephone facsimile in interstate commerce and through the mails in furtherance of the Enterprise and of the unlawful scheme, such communications transmitted by wire and/or mail include standard marketing materials, the Contracts including the terms and conditions maintained at the 3Com/Capital 4 web site, invoices, statements of payment, demands for payment, and the documents memorializing the underlying obligations.

286.    Such telephone calls and facsimile transmissions in interstate commerce and use of the mails occurred on a regular and repeated basis between and among Capital 4, Inc., 3Com and De Lage Landen, all of which occurred within the past three years.

287.    Capital 4, Inc., 3Com and De Lage Landen, engaged in acts of wire and mail fraud for the purpose of furthering the policy of the Enterprise imposing upon, attempting to collect and/or collecting the monthly payments from Defendant and others similarly situated.

288.    Capital 4, Inc., 3Com and De Lage Landen, received income derived, directly or indirectly, from the pattern of racketeering activity described above and/or they have

76

used or invested, directly or indirectly, a part of the income, or the proceeds of the income, in the acquisition of an interest in, or the operation of the Enterprise, which is engaged in or the activities of which affect trade or commerce, in violation of 18 U.S.C.A. 1962(b).

289. As an intended, necessary and foreseeable consequence of the foregoing transactions and communications Defendant and other customers similarly situated were and continue to be damaged in their business and property by reason of the violation of 18 U.S.C.A. 1962.

290. As an example of the damages incurred by Defendant, it has made payments to De Lage Landen which it otherwise would not have been obligated to make.

291. As another example of the damages incurred by Defendant is that it may be required to pay amounts under the equipment rental agreement and to pay an alternative telecommunication provider for services which, in essence, amounts to a doubling of costs to Defendant and all those similarly situated.

292. As described above, Capital 4, Inc., 3Com and De Lage Landen, participated in the direction, operation, or management of the Enterprise.

293. They each played a vital, directive, important and instrumental role in the Enterprise.

294. They knowingly implemented decisions and policies of the Enterprise, and their active participation was vital, directive, important and instrumental to the achievement of the Enterprise's primary goal of creating the Contracts and payments required thereunder.

295. Capital 4, Inc., 3Com and De Lage Landen, were employed by or associated with the Enterprise and conducted or participated in the conduct of the affairs of the Enterprise

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

through a pattern of racketeering activity, in violation of 18 U.S.C.A. 1962(c).

296.    The Enterprise operates for profit and Capital 4, Inc., 3Com and De Lage Landen, received payments as the result of the scheme and the collection of these monthly payments.

297.    In violation of 18 U.S.C.A. 1962(d), Capital 4, Inc., 3Com and De Lage Landen, conspired to conduct or to participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C.A. 1962(a) and (b).

WHEREFORE, Defendant, on behalf of itself and all putative class members, respectfully requests that the Court:

a.    enter money judgment in favor of Defendant, on behalf of itself and all putative class members, on this Count against Capital 4, Inc., 3Com and De Lage Landen;

b.    award Defendant, on behalf of itself and all putative class members, treble damages as against them;

c.    award to Defendant, on behalf of itself and all putative class members, and against Capital 4, Inc., 3Com and De Lage Landen, attorneys' fees, filing fees and the costs of prosecuting this action;

d.    award to Defendant, on behalf of itself and all putative class members, and against Capital 4, Inc., 3Com and De Lage Landen, the costs of defending any action brought to enforce the equipment rental agreement, including counsel fees; and

e.    award to Defendant, on behalf of itself and all putative class members, and

78

against Capital 4, Inc., 3Com and De Lage Landen, such other equitable relief as deemed appropriate by the Court.

# Count XIV
# Recision

298. Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

299. This is an action for recision of a written contract and other relief.

300. By virtue of the actions and inactions described in the foregoing paragraphs of this Complaint, De Lage Landen has been and would continue to be unjustly enriched in an amount equal to the monthly payments already made and to be made as required by the contract, Defendant's Exhibit 1, because such payments arise from the purported lease of equipment which was to be provided to Defendant free of charge, which De Lage Landen knew or should have known was fraudulently, knowingly and unjustifiably represented as performing a function different than that of an equipment rental agreement.

301. The actions of De Lage Landen, in concert with those of Capital 4, Inc., and 3Com, in inducing Defendant, and the class members, to contract for and to lease the telecommunications equipment, which De Lage Landen knew or should have known were fraudulent, is outrageous and unconscionable conduct.

302. The cancellation of the contract, Defendant's Exhibit 1, will return the parties to the position they were in before the fraud perpetrated by Capital 4, Inc., 3Com and De Lage Landen, as alleged above.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

WHEREFORE, Defendant, on behalf of itself and all putative class members, respectfully requests that the Court:

    a.       enter judgment in favor of Defendant, on behalf of itself and all putative class members, on this Count;

    b.       award to Defendant, on behalf of itself and all putative class members, and against Capital 4, Inc., 3Com and De Lage Landen, the remedy of recision of the contracts, Defendant's Exhibit 1 and all those like said exhibit; and,

    c.       award to Defendant, on behalf of itself and all putative class members, and against Capital 4, Inc., 3Com and De Lage Landen, such other equitable relief as deemed appropriate by the Court.

# Count XV
# Usury: Texas

303.    Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

304.    This is an action for money damages in excess of $75,000.

305.    By virtue of the actions described in the foregoing paragraphs of this Complaint, De Lage Landen has violated the Texas statutes which prohibit the collection of usurious interest.

306.    Defendant and each class member have been damaged as a direct and proximate result of said violation.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against De Lage Landen for all damages incurred by Defendant as a direct and

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

proximate result of the violation of said act or acts, including treble damages, plus costs, interest and attorneys' fees, and requests that this court grant it such further relief as this court deems just.

# Count XVI
# Criminal Usury: Pennsylvania

307.   Defendant adopts the allegations contained in ¶¶ 1 through 168 as though said allegations were set forth hereinafter.

308.   This is an action for money damages in excess of $75,000.

309.   By virtue of the actions described in the foregoing paragraphs of this Complaint, De Lage Landen has violated the Pennsylvania statutes which prohibit the collection of usurious interest.

310.   Defendant and each class member have been damaged as a direct and proximate result of said violation.

Wherefore, Defendant, on behalf of itself and all putative class members, demands money judgment against De Lage Landen for all damages incurred by Defendant as a direct and proximate result of the violation of said act or acts, plus costs, interest and attorneys' fees, and requests that this court grant it such further relief as this court deems just.

# Demand for Jury Trial

Defendant, Viewpoint Computer Animation, Inc., demands trial by jury of all issues so triable.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

# Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically and is available for viewing and downloading from the ECF system, this 14<u>th</u> day of July, 2008, and a copy was served on James W. Hennessy, Esq., of the law firm of Dilworth Paxson LLP, Attorney for Plaintiff, De Lage Landen Financial Services, Inc., 3200 Mellon Bank Center, 1735 Market Street, Philadelphia, PA 19103, through the ECF system.

**Gossett & Gossett, P.A.**
Co-Counsel for Defendant, Viewpoint Computer
Animation, Inc.
4700 Sheridan St., Building I
Hollywood, FL 33021
(954) 983-2828 • (954) 212-0439 Fax
rongossett@gossettlaw.com
Fla. Bar No. 210811


By: /s/ *Ronald P. Gossett*
Ronald P. Gossett (RG6930)
For the Firm

RPG/ms

D:\Clients\3Com\Viewpoint Computer\Pleadings\Complaint and Answer\Amended Answer, Affirmative Defenses, and Amended Counterclaim.wpd